# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| NED SIMERLEIN, individually and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br><br>v.<br><br>TOYOTA MOTOR CORPORATION, TOYOTA MOTOR NORTH AMERICA, INC., TOYOTA MOTOR SALES, USA, INC., TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA, INC., and TOYOTA MOTOR MANUFACTURING, INDIANA, INC.,<br><br>          Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Ned Simerlein brings this class action on behalf of himself and all others similarly situated against defendants Toyota Motor Corporation, Toyota Motor North America, Inc., Toyota Motor Sales, USA, Inc., Toyota Motor Engineering & Manufacturing North America, Inc. and Toyota Motor Manufacturing, Indiana, Inc. (collectively, "Defendants" or "Toyota").   Based on personal knowledge as to himself, and on information and belief based on the investigation of counsel, including counsel's review of consumer complaints available on the database of the National Highway Transportation Safety Administration ("NHTSA") and other publicly available information, as to all other matters, Plaintiff alleges as follows:

## I.      INTRODUCTION

1.      On or about December 23, 2016, as required by the National Traffic and Motor Vehicle Safety Act,[1] Toyota issued an interim safety recall notice ("Safety Recall Notice" or "Safety Recall")[2] for model year 2011 through 2016 Toyota Sienna Minivans with power sliding doors ("Class Vehicles").[3]  In the Safety Recall Notice, Toyota admitted there is a dangerous defect in the rear passenger power sliding doors of the Class Vehicles because the power doors can unexpectedly and independently open while the vehicle is in motion:

> This notice is sent to you in accordance with the requirements of the National Traffic and Motor Vehicle Safety Act. ***Toyota has decided that a defect, which relates to motor vehicle safety, exists in certain 2011 – 2016 Model Year Sienna Vehicles.***
>
> *         *         *         *
>
> In the involved vehicles, there is a possibility that if the sliding door opening operation is impeded, the sliding door motor circuit could be overloaded, opening the fuse for the motor. If this occurs when

---

[1] 49 U.S.C. § 30118(c) (the "Safety Act").
[2] The Safety Recall Notice is attached hereto as Exhibit A.
[3] All Sienna minivans manufactured by Toyota at any time, whether or not Class Vehicles, are sometimes referenced herein as "Sienna Minivans."

the door latch is in an unlatched position, ***the door could open while driving, increasing the risk of injury to a vehicle occupant***.

(Emphasis supplied).  Approximately 744,000 Sienna Minivans are covered by the Safety Recall.

2.     Toyota has thus conceded that the defective power sliding doors in the Class Vehicles ("Defective Doors") present an immediate risk of physical injury when used in their intended manner, and that the vehicles in which they are installed are inherently dangerous when used for their ordinary purpose. According to an article about the Safety Recall in Fortune Magazine, Toyota has stated it "would like to refrain from commenting whether there were any injuries or crashes as a result of the safety flaw."[4]

3.     In fact, Toyota has known that the power sliding doors in its Sienna Minivans, which it consistently marketed as safe, convenient family vehicles, were dangerously defective since long before it issued the Safety Recall Notice, and, indeed, since before it manufactured, marketed and sold the Class Vehicles.  Throughout the relevant period, Toyota knew there were hundreds, if not thousands, of consumer complaints about the Defective Doors in its Sienna Minivans, including that the doors would suddenly fly open while the vehicle was in motion or would independently close or jam, which, in many instances, resulted in injury to children sitting in the rear passenger seats.

4.     As detailed in paragraphs 49-57, 67-79, and 85-87, beginning no later than 2007, consumers lodged numerous complaints with NHTSA specifically about the Defective Doors opening while they were driving Sienna Minivans, often with their children in the rear passenger seats:

　　　　a.   … After activating the close button on the side or with the remote, the doors close and then re-open by them selves repeatedly. **On several occasions**

---

[4] *See* "Toyota Is Recalling More Vehicles—And This Time It Has Nothing To Do With Airbags," Fortune Magazine, Nov. 22, 2016, available at  http://fortune.com/2016/11/22/toyota-sienna-sliding-door-recall (last visited June 11, 2017).

      **we had closed the door and driven off and the door would open by it self.**[5]

   b.  **While driving … door slide open on my 11 year old son** … My daughter frantically grabbed her brother (whom was buckled) thank God. Until I was able to pull over to safety….[6]

   c.  "… with a van full of 3 children, age 8 and under … [p]ouring down rain, the door decides to malfunction, and would not close electrically or manually. **I had to drive home w/ the door open**. The problem has since been ongoing and now we just don't use the door";[7]

   d.  "… despite the electric doors being turned off, **while my husband was driving with all 4 of our babies the door opened and got stuck**."[8]

5.     In addition, as detailed in paragraphs 49, 102-123, and 119-35, beginning no later than 2007, consumers also reported to NHTSA instances of the Defective Doors closing independently, including instances of the Defective Doors actually closing on their children's arms, hands, and fingers:

   a.  "The sliding door was opening . . ., but opened only halfway before slamming shut very quickly. … [and] [m]y daughter had started getting into the car, **so the door slammed shut on her finger and actually latched closed with her finger stuck inside**";[9]

   b.  "The sliding door **independently closed on the child's arm**";[10]

   c.  "The door did not release automatically and only released when he used his other hand to push the "door open" button. Unfortunately he suffered a fracture of his 4th right metacarpal**.** We are very concerned about the close proximity of the door mechanism and the seat belt, and also about the lack of a safety mechanism for automatic sensing/release."[11]

---

[5] NHTSA database, NHTSA ID No. 10212525, Post Date 12/21/2007.  All emphasis in NHTSA quotes herein is supplied.  All typographical errors were in original complaint postings.  On the NHTSA website, all consumer complaints are posted in all capital letters.  They have been changed into standard sentence capitalization here for readability.
[6] NHTSA database, NHTSA ID No. 10938424, Post Date 12/10/2016.
[7] NHTSA database, NHTSA ID No. 10816998, Post Date 12/30/2015.
[8] NHTSA database, NHTSA ID No. 10283000, Post Date 09/06/2009.
[9] NHTSA database, NHTSA ID No. 10554193, Post Date 11/30/2013.
[10] NHTSA database, NHTSA ID No. 10513006, Post Date 05/21/2013.
[11] NHTSA database, NHTSA ID No. 08/20/2012 Post Date 03/07/2012.

6.      Despite its knowledge of the safety hazard posed by the Defective Doors, Toyota did not notify customers of the defect or timely recall its Sienna Minivans.  Instead, in order to reap profits, Toyota continued to manufacture, market, sell, lease and warrant its Sienna Minivans without disclosing that the power sliding doors were inherently defective, dangerous and created a grave risk of bodily harm.

7.      Toyota's sale of its Sienna Minivans with the dangerous Defective Doors is particularly egregious because Toyota marketed these vehicles primarily to families with children. Toyota promoted the Sienna Minivans as safe and convenient, and charged a premium for the power sliding door feature. Parents buy or lease Sienna Minivans precisely because they have power sliding doors, which enable them to safely load their children in the rear passenger seats when, for example, they have one young child in each arm or are carrying groceries with their children in tow. Toyota's marketing for the Sienna Minivans is replete with assurances about their safety, which is of paramount concern to parents. A family minivan with power sliding doors that can autonomously open while parents are driving their children, or that can close independently or jam, is intrinsically unsafe, and renders Toyota's marketing of the Sienna Minivans as safe patently untrue.

8.      In the Safety Recall Notice, Toyota admitted it did not have a "fix" for the dangerous Defective Doors and would send a second notification when a remedy was available. Toyota "suggest[ed]" that, in the interim, drivers disable the power sliding door system – the key feature of the Sienna Minivan and the reason Plaintiff and other parents drive them – if they wanted to avoid the possibility that they would open of their own accord while the vehicle was on the road. More than six months later, Toyota still has not notified owners/lessees of the Class Vehicles that it has a remedy for the Defective Doors. Toyota has thus put consumers in the position of having

- 4 -

to choose between driving their Sienna Minivans with dangerously defective sliding doors or, in order to keep occupants safe, disabling the power doors for which they paid a premium.  In addition, regardless of whether Toyota can eventually come up with a fix, the Safety Recall has decreased the intrinsic and resale value of the Class Vehicles.

9.     Toyota's knowing sale of the Class Vehicles with dangerous Defective Doors, its decades long concealment of the grave risks associated with these doors and its, touting the safety and convenience of Sienna Minivans in order to increase sales and profits despite this knowledge, shocks the conscience.  Its belated issuance of the Safety Recall without a fix, which still has not materialized, has put hundreds of thousands if not millions of people – the majority of whom are children – at risk, and is unconscionable.

10.     Plaintiff seeks redress for Toyota's misconduct.  Plaintiff, on behalf of himself and the Classes (defined below), asserts claims for Toyota's violations of the Connecticut Unfair Trade Practices Act, Connecticut General Statutes § 42-110a, *et seq.* ("CUTPA") and materially identical state consumer protection statutes,  breach of express and implied warranties, including under Connecticut law and the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*, and unjust enrichment. Plaintiff seeks compensation for economic losses, restitution and punitive damages. Plaintiff does not allege claims for personal injury.

## II.     JURISDICTION AND VENUE

11.     Jurisdiction is proper in this Court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because Plaintiff and members of the proposed Classes are citizens of states different from Toyota's home states, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

12.     Jurisdiction is also proper in this Court pursuant to 28 U.S.C. § 1331, because Plaintiff's Claims under the Magnusson Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*, arise under

federal law, and this Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

13.     This Court has jurisdiction over Plaintiff because he resides in this jurisdiction.

14.     This Court has jurisdiction over Toyota because it conducts substantial business in this District and some of the actions giving rise to this Complaint took place in this District and/or caused injury to property in this state; and products, materials, or things processed, serviced, or manufactured by Toyota anywhere were used or consumed in this State in the ordinary course of commerce, trade, or use.  Toyota is one of the largest manufacturers and sellers of automotive vehicles in the world.  Defendants have, at all relevant times, conducted and continue to conduct, business in Connecticut, and every other state in the country.

15.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to these claims occurred in this District, Toyota has caused harm to Plaintiff and other Class members residing in this District, and Toyota is a resident of this District under 28 U.S.C. § 1391(c)(2) because it is subject to personal jurisdiction in this District.  Also, venue is proper in this district pursuant to 18 U.S.C. § 1965.

### III.     THE PARTIES

**A.     Plaintiff**

16.     Plaintiff Ned Simerlein resides in Cheshire, New Haven County, Connecticut, with his wife and two daughters.  His daughters are aged, as of the filing of this action, 3 years and 11 months respectively.  Plaintiff owns a 2013 Toyota Sienna XLE with power rear sliding doors, which he purchased in or around September 30, 2016 from a Toyota dealership.  At the time of his purchase, Toyota, through its dealership, informed Plaintiff that it had thoroughly inspected his vehicle and that the vehicle's condition met all applicable standards and was fit for its purpose.

17.     Prior to purchasing his 2013 Toyota Sienna, Plaintiff conducted internet research about different models of family vehicles.  He was expressly interested in purchasing an SUV or minivan with power sliding doors for the convenience and assistance they would provide to him and his wife in loading their young children and cargo.

18.     Plaintiff was aware of Toyota's decades-long marketing message of safety which is one of the reasons he looked closely at the Toyota Sienna which had power sliding doors.  His research included a careful review of Toyota's website, including claims about the safety and convenience of the Sienna Minivans.

19.     Safety was the top concern of Plaintiff and his wife in choosing their new vehicle and is what led them to opt for the Sienna.  When Plaintiff purchased the Sienna, he believed that it was one of the safest vehicles available and was top of the line.  He purchased the vehicle believing he and wife and children would be safer in it than they would be in a car not specifically marketed as a safe family vehicle.

20.     In December 2017, Plaintiff received the Safety Recall Notice from Toyota, informing him of the defective power sliding doors.  Plaintiff is extremely concerned about the risk that his rear passenger doors could open independently while he or his wife are driving their Sienna Minivan and the harm it can cause to their children.

21.     In addition, since purchasing his vehicle, on multiple occasions, he and his wife have found that the power sliding doors do not automatically open when the handle is pulled, as they are supposed to.

22.     Plaintiff did not receive the benefit of his bargain.  He purchased a vehicle that is of a lesser standard, grade, and quality than represented, and he did not receive a vehicle that met ordinary and reasonable consumer expectations regarding safe and reliable operation.  The

Defective Doors have significantly diminished the intrinsic and resale value of Plaintiff's Sienna. Plaintiff's and all other Class Vehicles have been stigmatized as a result of being equipped with the Defective Doors and the publicity of the safety recall.

23.     The Defective Doors create a dangerous condition that gives rise to a clear, substantial, and unreasonable danger of death or personal injury to Plaintiff and his family.

24.     Plaintiff would not have purchased his Class Vehicle or would not have paid as much for it as he did if he had known of the Defective Doors.

**B.     The Toyota Defendants**

25.     Defendant Toyota Motor Corporation ("TMC") is a Japanese corporation located at 1 Toyota-Cho, Toyota City, Aichi Prefecture, 471-8571, Japan.  TMC is the parent corporation of Toyota Motor Sales, U.S.A., Inc. TMC, through its various entities, designs, manufactures, markets, distributes and sells Toyota automobiles in Connecticut, and every other state in the United States.

26.     Defendant Toyota Motor North America, Inc. ("TMNA") is incorporated in California, with its primary address at 19001 South Western Avenue, Torrance, CA 90501. TMNA is a holding company of Toyota Motor Corporation of sales and manufacturing subsidiaries in the United States.

27.     Defendant Toyota Motor Sales, U.S.A., Inc. ("TMS") is incorporated and headquartered in the State of California, with its primary address at 19001 South Western Avenue, Torrance, CA 90501. TMS is the United States sales and marketing division for Toyota Motor Corporation, which oversees sales and other operations across the United States. TMS distributes Sienna Minivans and sells them through a network of dealerships that are the agents of TMS. Money received from the purchase of a Toyota vehicle from a dealership flows from the dealer to TMS.  TMS issues the express repair warranties for the Class Vehicles.

28.     Defendant Toyota Motor Engineering & Manufacturing North America, Inc. ("TEMA") is incorporated in Kentucky and has its headquarters at 25 Atlantic Avenue, Erlanger, Kentucky 41018. TEMA is responsible for Toyota's engineering design and development, research and manufacturing activities in the United States, Mexico, and Canada.

29.     Defendant Toyota Motor Manufacturing, Indiana, Inc. ("TMMI") is incorporated in Indiana, and has its primary address at 4000 Tulip Tree Drive, Princeton, IN 47670-4000. Defendant TMMI manufactures Sienna Minivans.

## IV.     FACTUAL ALLEGATIONS

30.     Toyota is the world's second largest manufacturer of automotive vehicles and sells its vehicles across the United States through a network of over 1,200 dealers, including in Connecticut.  Toyota has branded itself as the maker of safe vehicles and has spent millions of dollars on extensive marketing and advertising campaigns to cement the association of the image of safety with its products.

### A.     Sienna Minivans

31.     Toyota has designed, manufactured, marketed and sold Toyota Sienna Minivans since approximately 1998.  At all times it has uniformly branded these vehicles as safe, reliable and convenient family minivans.

32.     Since it first started selling them in 1998, Toyota has offered power sliding rear passenger doors in its Sienna Minivans. Power sliding doors with jam protection were standard in all Sienna models (the LE, XLE, and Limited) between 2011 and 2016 other than the most basic model (in 2011-2012, simply called the "Sienna," and in 2012-2016, called the "Sienna L").[12] Thus, Toyota charged, and consumers paid, a premium for this feature.

---

[12] In 2012, in the LE model the doors were optional, as part of a package.

33.     In its brochure for model year 2011 Sienna Minivans, Toyota described the power sliding doors as follows:

> The all-new Sienna's available dual power sliding side doors open wider, so it's easier to step in and out, or load and unload cargo. Operating the doors is easy using a button on the remote keyless entry or available Smart Key fobs, the interior or exterior door handles, or switches on the overhead console and interior center pillar.

34.     Similarly, in its brochures for model year 2012, 2013 and 2014 Sienna Minivans, Toyota stated:

> Getting people or cargo into or out of Sienna is easy. The available dual power sliding side doors are operated with a button on the remote keyless entry or available Smart Key fobs, with switches on the overhead console and interior center pillar, or by pulling either of the door handles. … Both the sliding doors and the liftgate offer jam protection.

35.     "Jam protection" is designed to sense when anything is in the path of the power door and prevent the door from closing on it. The brochures for all Class Vehicles, from the 2011 through the 2016 Sienna Minivans, referenced the models' "[d]ual power sliding side doors with jam protection."

36.     These power sliding doors, which can be operated by remote control, are aimed at parents with small children and others with a lot of cargo and full hands as well as consumers who have physical difficulty opening and closing a heavy door.  The power sliding doors are a key feature of the Sienna Minivan and consumers paid extra for the safety and convenience of the feature.  Consumers are damaged when a manufacturer's statements about the power sliding door feature turn out to be false.

### B.     The Safety Recall

37.     Automobile manufacturers are required to make filings with NHTSA, the federal agency charged with regulating safety standards in the automotive industry, in a number of

situations, including when they discover a dangerous defect in a vehicle, when they conduct a recall, and when they issue a service bulletin about a defect regardless of whether there is a recall.

38.     On November 22, 2016, Toyota filed documents with NHTSA announcing that it would recall the Class Vehicles, including a Defect Information Report stating:

> The subject vehicles are equipped with power sliding doors which contain motors to open or close the door based upon certain inputs. There is a possibility that, under certain limited conditions which impede the opening of the door, such as when the door becomes frozen with ice, the sliding door motor could stall when the door is operated. If the motor stalls, high current in the door motor circuit could be generated, operating the fuse for the door motor. If the fuse is operated with the sliding door latch mechanism in an unlatched position, the door could open while driving, increasing the risk of injury to a vehicle occupant.

39.     Toyota made this belated announcement only after receiving, by its own admission, 399 reports of the condition, including nine from its own dealers and field technicians. As detailed below, in addition to the direct complaints to Toyota of the doors opening independently, the NHTSA database is replete with complaints, representative samples of which are quoted in this complaint, about consumers having experienced the doors opening on their own, as well as the doors closing unexpectedly, becoming jammed or otherwise malfunctioning, and thereby creating a safety hazard to drivers, passengers, and other vehicles on the road.

40.     While Toyota's Defect Information Report only states that problems in the operation of the motors for the power doors could cause the doors to open, the same or similar problems could also cause the door to jam or close unexpectedly.  Numerous consumers have reported their doors closing without warning, or jamming, and being told by Toyota dealers that the power door motor was broken.  In some instances, Toyota replaced the motors driving the power sliding doors.

41. The following consumer complaints lodged with NHTSA show that the unintended opening *and* closing of the sliding doors are both related to the motors controlling the power doors:

a. The passenger side power sliding door fails to remain closed even while the locks are engaged. The back latch of the door fails to keep the door closed while driving, sometimes the door slides into the full open position while driving. The first failure occurred after two years and 35,000 miles of ownership and has recurred after 5 years and 92,000 miles. The **motor** and door latch **was initially replaced**. Toyota Corporation and dealership says the vehicle is now out of warranty and repair costs are estimated at $1,100 - $1,800…. [13]

b. …While driving 25 mph, the left front passenger door **motor seized**, the cable snapped and the door flew open. The door would not close…[i.e. was jammed.][14]

c. **…**If I try to open using remote control or switches then **it will try to open but close immediately** and make beeping sounds. … Toyota finally replaced power sliding door **motors** for both left and right side to address the issue.[15]

d. … the driver's rear sliding **door shut on me** while I was getting **a small child out of a car seat-**I did not touch the button or door handle. After the same thing happened 4-5 more time I took the 2011 Sienna van back to the dealer and told them that I would not take the vehicle back until the problem was fixed. **The dealer replaced the motors in both sliding doors.** The problems has continued and **after research have found that this is a common complaint regarding the sliding doors on the Sienna vans.**[16]

e. The power sliding door would **close automatically** without activation. When attempting to open the door at times, the door would **fail to open properly**. The contact received notification of NHTSA campaign number: 16v858000 (structure) [the Safety Recall], however, the part for the recall repair was unavailable. … The manufacturer was made aware of the failure. ….[17]

f. … when we pressed to button to close them, the doors came **partly closed, then opened back up, then tried to close, then**

---

[13] NHTSA database, NHTSA ID No. 10422273, Post Date 08/27/11.
[14] NHTSA database, NHTSA ID No. 0359463, Post Date 10/06/2010.
[15] NHTSA database, NHTSA ID No. 10392924, Post Date 03/25/2011.
[16] NHTSA database, NHTSA ID No. 10496430, Post Date 02/05/2013.
[17] NHTSA database, NHTSA ID No. 10969490, Post Date 3/30/2017

> tried to open. … Took the van to dealer. **They said it was the motor and replaced it.** … And when I called the dealer, they never mentioned the recent recall. … I called Toyota, they said that I would eventually get something in the mail.[18]

42.     Thus, Toyota recognized that the problem of the doors closing on their own, like the door opening problem, was linked to the operation of the motor controlling the power doors. Indeed, as stated below, in the Defect Information Report that precipitated the Safety Recall, Toyota indicates that reports of difficulty in proper closing of the sliding door related to operated door motor fuses, finding that the "sliding door motor could stall when the door is operated" which could ultimately result in the "door…open[ing] while driving, increasing the risk of injury to a vehicle occupant."

43.     Toyota did not mention this dangerous condition in the Safety Recall Notice so it could avoid disclosing to consumers – including potential future customers – that the doors could close unexpectedly and cause children's hands and fingers to be caught in the doors, become jammed, or otherwise malfunction, posing danger and inconvenience to vehicle owners.

44.     In addition to the extreme danger of the sliding doors opening on the road, Plaintiff and the members of the Classes are unknowingly putting their children and themselves at risk of injury because of these of these additional dangers known only to Toyota.

## V.     CONSUMERS REPORT INCIDENTS OF POWER SLIDING DOORS OPENING WHEN THE VEHICLE WAS IN MOTION SINCE AT LEAST 2007

45.     Vehicle manufacturers like Toyota monitor NHTSA and other databases for consumer complaints as part of their ongoing obligation to uncover and report potential safety-related defects. Accordingly, Toyota knew, or should have known, of the many complaints lodged with NHTSA about the specific safety hazard that is the subject of the Safety Recall.  In fact, in

---

[18] NHTSA database, NHTSA ID No. 10939776, Post Date 1/4/2017.

the Defect Information Report, Toyota admitted to receiving nearly 400 direct reports of this dangerous condition, and numerous complaints on the NHTSA website state that Toyota was informed of the defect.

### A.      Pre-Class Period Door Openings

46.      At all times from no later than 2007 onward, Toyota knew the power sliding doors in its Sienna Minivans were dangerously defective and could independently open while the vehicle was being driven.

47.      On information and belief, vehicle manufacturers like Toyota, in addition to monitoring NHTSA, monitor automotive complaint boards on the internet for marketing purposes, among other things.

48.      The Consumer Affairs website includes a report from a consumer about the doors on both 2004 and 2007 Sienna Minivans opening while in motion:

> I have owned 2 Toyota Siennas (2004 & 2007). I need a new car at present, but will not be getting a third Sienna. I loved the look and utility of my first Sienna so much, that I ignored my instincts and believed the salesman who assured me that the problems I had with my 2004 had been fixed by 2007. They had not.
>
> …
>
> Of my many problems, the one that has caused the most trouble with both the 2004 and 2007 is problems with the side doors. Both the manual and electric side doors on both vans have been nightmares. Keep in mind that everything I tell you next, occurred with BOTH the 2004 and the 2007 vans I owned. The doors (both auto and man.) have been stuck shut requiring expensive service due to having to remove door from car and completely tear it apart and reassemble in order to fix. At other times the doors, both auto and manual, have failed to close. I drove around for 3 or 4 months with a strap holding one of the back doors shut. **The first time it happened just after picking my boys up from school. My son had to take off his belt to keep the door shut till we could get home. It wouldn't even latch in the open position giving us the option of driving down**

> **the road with the door open. It just kept sliding and banging back and forth with every turn, bump, or acceleration**.[19]

(Emphasis supplied.)

49.     A complaint filed with NHTSA on December 21, 2007 concerning a 2004 Sienna

Minivan similarly reported:

> … After activating the close button on the side or with the remote, the doors close and then re-open by them selves repeatedly. **On several occasions we had closed the door and driven off and the door would open by it self. [20]**

50.     Similarly,  a complaint filed with NHTSA on July 31, 2009 reported:

> The contact owns a 2004 Toyota Sienna. … Recently, **while attempting to stop the vehicle, the rear passenger side door opened**. … She took the vehicle back to the dealer and they stated that **the door motor failed**, and that the door was an inch off the door track. The estimated cost of repair was $1,800. ….[21]

51.     On September 6, 2009, a parent who drove a 2006 Sienna Minivan filed a complaint

with NHTSA expressing dire concern about the safety of her four young children:

> Our sliding door stopped working about a year ago. This morning, **despite the electric doors being turned off, while my husband was driving with all 4 of our babies the door opened and got stuck**. My husband can't open or close the door. [22]

52.     A complaint filed with NHTSA on December 6, 2009 concerning a 2006 Sienna

Minivan referenced the serious safety hazard posed by the Defective Doors:

> The door would become unlatched and open slightly in transit…**This is a major safety issue for Toyota, but they did not want to hear about it or do anything about it**…I find it very upsetting that this door unlatches by itself without any prior warning. [23]

---

[19] Available at https://www.consumeraffairs.com/automotive/toyota-sienna.html?page=2, last visited June 20, 2017.
[20] NHTSA database, NHTSA ID No. 10212525, Post Date 12/21/2007.
[21] NHTSA database, NHTSA ID No. 10278954, Post Date 07/31/2009.
[22] NHTSA database, NHTSA ID No. 10283000, Post Date 09/06/2009.
[23] NHTSA database, NHTSA ID No. 10294659, Post Date 12/6/2009.

53.     A complaint filed with NHTSA on January 7, 2010 concerning a 2004 Sienna Minivan similarly reported:

> 2004 Toyota Sienna automatic passenger side sliding door stopped working and wouldn't shut. **This door also came open without warning, presenting a safety hazard to children riding in car**. [24]

54.     A complaint filed with NHTSA on June 14, 2010 concerning a 2005 Sienna Minivan reported:

> … While driving at speeds of 20 mph, the contact heard a beeping sound indicating that the driver side sliding door was opened. **The door independently opened while the vehicle was in motion**. The vehicle was taken to the dealer who attempted to close the door when he noticed that the latch had broken. … [25]

55.     A complaint filed with NHTSA on October 6, 2010 concerning a 2006 Sienna Minivan stated:

> The contact owns a 2006 Toyota Sienna. **While driving 25 mph, the left front passenger door motor seized, the cable snapped and the door flew open.** The door would not close. The vehicle was taken to an authorized dealer where the motor and cable were replaced at the contact's expense. **The contact called the manufacturer** who stated that there were no recalls....[26]

56.     A complaint filed with NHTSA on December 21, 2010 concerning a 2006 Sienna Minivan reported:

> **While starting forward after loading grandson in driver side second row of seats drivers side sliding door opened half way ….** I stopped and attempted to close door automatically. **Door would not close but remained half open**. Tried manual operation to no avail. … **If door had opened at speed on highway it would have caused great danger as my grandson was sitting next to door**. **Called customer service at Toyota to complain. ….**[27]

---

[24] NHTSA database, NHTSA ID No. 10298576, Post Date 01/07/2010.
[25] NHTSA database, NHTSA ID No. 10336699, Post Date 06/16/2010.
[26] NHTSA database, NHTSA ID No. 10359463, Post Date 10/06/2010.
[27] NHTSA database, NHTSA ID No. 10371892, Post Date 12/21/2010.

57.     Yet another complaint filed with NHTSA on May 23, 2011 about a 2008 Sienna Minivan reported that "**[t]he sliding door opened when the car was moving**, then failed to be able to close by power or manually." [28]

58.     As set forth herein, between 2007 and 2010, there were also numerous complaints prior to the Class Period about the doors independently closing or jamming.

## VI.     TOYOTA STARTS "INVESTIGATING" IN JANUARY 2014 YET CONTINUES TO SELL SIENNA MINIVANS WITH THE DANGEROUSLY DEFECTIVE DOORS

59.     According to the Defect Information Report it filed with NHTSA on November 22, 2016, in January 2014, Toyota began to look into the defect that gave rise to the Safety Recall.  Its purported investigation was slow and anemic, and, unbelievably, Toyota continued to sell the Class Vehicles despite knowing the Defective Doors could fly open while the vehicles were in motion, or independently close or jam.

### A.     The First Two Years of Toyota's Investigation

60.     The Defect Information Report states Toyota began investigating the condition when a dealer notified it of the following event:[29]

> Toyota received a dealer report from the U.S. market indicating that the left side sliding door would not close properly in a 2014 Sienna. During the inspection of the vehicle by the dealer technician, it was found that the fuse for the sliding door motor had operated. It was also confirmed that the door cable was not attached to the latch mechanism in the front lock assembly and that the cable end was bent. The sliding door front lock assembly was returned to the supplier for investigation; it was found that the latch mechanism functioned normally when the cable end was set back into place and there was no dimensional abnormality of the cable which could lead to the cable detachment. Toyota also confirmed the current production condition of the cable installation process and found no

---

[28] NHTSA database, NHTSA ID No. 10402357, Post Date 05/23/2011.
[29] Available at https://static.NHTSA.gov/odi/rcl/2016/RMISC-16V858-6717.pdf.

abnormalities. Toyota concluded that this report was an isolated case
and decided to monitor the field.

61.     As detailed in paragraphs 46-57, 67, 102-06, 108-13, and 119-24, by January 2014,

Toyota knew there had already been numerous complaints of the power sliding doors opening on

the road and closing, including on children's hands.

62.     Between February 2014 and mid-April 2015, Toyota reported it received additional

reports from its dealers and a field technician:

> Between February, 2014 and mid-April, 2015, Toyota received an
> additional three dealer reports and one Field Technical Report from
> the U.S. market indicating that a sliding door would not close/latch
> properly and that the fuse for the sliding door motor had operated.
> An inspection of these vehicles and investigation of the recovered
> parts found binding in the rear lock mechanism of some vehicles
> possibly caused by corrosion/debris in the rear lock. However, no
> specific trend was identified at the time, and Toyota continued its
> investigation and monitoring of the field.[30]

63.     From May 2015 through April 2016, Toyota continued to dawdle in its

investigation, if it was investigating at all.  According to the chronology of events in the Defect

Information Report:

> **In November, 2015, Toyota received three Field Technical
> Reports from the U.S. market indicating that the left side sliding
> door would not latch. Two of the three reports also indicated
> that the left side sliding door opened while driving.** Toyota
> inspected the vehicles and confirmed that the fuse for the sliding
> door motor had operated; however, no corrosion was observed in the
> rear lock assembly of these vehicles. One of the three reports
> indicated that the operation of the fuse occurred at low temperatures.
> To understand the phenomenon's potential relationship to
> temperature and investigate the cause of the operated fuse, Toyota
> collected the lock assemblies, slide door motors, and wire harness
> from two of three inspected vehicles mentioned above.
>
> **In parallel with vehicle and part investigation efforts, between
> December, 2015 and April, 2016, Toyota continued to
> sporadically receive Field Technical Reports and warranty**

---

[30] *Id.*

**claims**, and analyzed those that related to operation of the sliding door motor fuse. It was found that complaints of difficulty in proper closing of the sliding door related to an operated door motor fuse increased during the winter season and were concentrated in cold climate areas. Based on this analysis, and in order to duplicate the scenario of the operated fuse, Toyota conducted a series of duplication tests specifically focused on seasonality factors.

64.     The November 22, 2016 Defect Information Report states Toyota "continued to investigate" between May and November 2016, ultimately concluding that:

> [T]he sliding door motor could stall when the door is operated, which could generate high current in the door motor circuit and result in the operation of the fuse for the door motor. If the fuse is operated with the sliding door latch mechanism in an unlatched position, **the door may not close properly if opened, and in limited circumstances, could open while driving**.

65.     During this period, Toyota did not disclose the existence of the defects and, instead, egregiously allowed drivers, the majority of whom transported their children in their vehicles, to be unknowingly exposed to the extreme safety hazard posed by the Defective Doors.

66.     In the Defect Information Report, Toyota acknowledged the mass of warranty and dealer/technician reports it had received of the condition:

> As of November 8, 2016, based on a diligent review of records, Toyota's best engineering judgment is that there are **9 Toyota Field Technical Reports (including one unverified report) and 390 unverified warranty claims** that have been received from U.S. sources that relate to this condition and which were considered in the decision to submit this report.  Multiple counts of the same incident are counted separately.

**B.     During the Investigation, Consumers Continue To Report Their Power Doors Suddenly Open While Driving**

67.     A complaint filed with NHTSA on May 30, 2013 concerning a 2011 Sienna Minivan described the extreme risk the condition presented to children:

> **… while I was driving down the road the door started sliding open. My kids were safely fastened in their seatbelts but the**

**latch and safety latches both failed and this could have resulted in an accident or injury. …** [31]

68.    A complaint filed with NHTSA on June 13, 2014 concerning a 2012 Sienna

Minivan stated:

> … there were 3 instances when the **door would automatically open without human intervention but while we were driving down the highway with children in the rear seats.** *Toyota agrees this is a major safety issue* but will only split the $1,200 bill with us. Based on the fact they are willing to help pay for the repair out of warranty proves **they are aware of the issue yet fail to issue a recall and put are willing to risk lives especially children's lives to save face.**[32]

69.    On February 17, 2015, a complaint filed with NHTSA concerning a 2011 Sienna

Minivan noted that because there was no assurance that the power doors would stay closed, the

vehicle was unsafe to transport anyone:

> Sliding power doors work intermittently and have needed to be forced open or closed on occasion. [In one instance], the door began to open, and then stopped after only opening an inch. The door ajar alarm began sounding. I pulled the door open packed my little one up in his car seat and went to shut the door. The door would not latch to stay closed and the door would move freely without the use of the door handle. **The vehicle is now unsafe to transport anyone in as door can not be closed** … My husband had to tie the door shut in order to take the vehicle to the dealer where the expected repair part was $937.00. **I thought buying Toyota was buying quality but, I guess they don't make them like they used to**. ….[33]

70.    A complaint filed with NHTSA on March 13, 2015 concerning a 2012 Sienna

Minivan detailed yet another extraordinarily dangerous event:

> … **While driving approximately 40 mph, the rear driver side sliding door suddenly opened. While attempting to shut the door, the door could not be secured**. *The vehicle was taken to the dealer* who diagnosed that the cause of the failure was **due to a**

---

[31] NHTSA database, NHTSA ID No. 10514321, Post Date 05/30/2013.
[32] NHTSA database, NHTSA ID No. 10598023, Post Date 06/13/2014.
[33] NHTSA database, 10683888, NHTSA ID No., Post Date 02/17/2015.

faulty door motor and faulty door latch. ***The manufacturer was notified of the failure***. ….[34]

71.     A December 30, 2015 complaint to NHTSA about a 2011 Sienna Minivan reported:

> Sliding door opened as usual, **with a van full of 3 children, age 8 and under**. Pouring down rain, **the door decides to malfunction, and would not close electrically or manually. I had to drive home w/ the door open**. The problem has since been ongoing and now we just don't use the door.[35]

72.     On January 15, 2016, the driver of a 2012 Sienna Minivan reported "… **the door would slide open and closed while I was driving it and would not stay closed**....." [36]

73.     A complaint filed with NHTSA on March 8, 2016 concerning a 2012 Sienna Minivan stated:

> **As I have driven on the highway, on three separate occasions, my rear sliding doors have spontaneously opened on their own**. After it happened the first time, **we turned off the automatic door feature and it still happened another two times**. When we took it into the dealership **we were informed that this was a "known issue with 2007-2011 Toyota Sienna's but that Toyota has not acknowledged an issue yet with 2012 Sienna's"**. We were also told it would cost over $5000 for a partial fix. **When I called Toyota Corporation their response was "what do you want us to do about it?"**[37]

74.     Between May and November 2016, the last phase of Toyota's purported investigation, Toyota continued to leave its consumers exposed to great harm.  For example, a March 30, 2017 complaint filed with NHTSA about a 2012 Sienna Minivan whose doors began to open beginning in May 2016, reported:

> … **The contact stated that while parking or driving at various speeds, the power sliding door would open without warning**. The vehicle was taken to an independent mechanic and a dealer where no diagnoses was performed due to a recall. **The contact mentioned**

---

[34] NHTSA database, NHTSA ID No. 10694119, Post Date 03/13/2015.
[35] NHTSA database, NHTSA ID No. 10816998, Post Date 12/30/2015.
[36] NHTSA database, NHTSA ID No. 10820438, Post Date 01/15/2016
[37] NHTSA database, NHTSA ID No. 1084030, Post Date 03/08/2016.

***that the failure has occurred on several occasions***. The contact received notification of NHTSA campaign number: 16v858000 (structure) however, the part to do the repair was unavailable. ***The contact stated that the manufacturer exceeded a reasonable amount of time for the recall repair. The manufacturer was notified of the failure***. ….[38]

75.     Similarly, a complaint filed with NHTSA on June 23, 2016 about a June 13, 2016 incident in a 2011 Sienna Minivan stated:

> … **While driving 25 mph, the driver side sliding door opened while the vehicle was in motion**. The vehicle was taken to the dealer where it was diagnosed that the sliding door motor failed and needed to be replaced. ….[39]

76.     A complaint filed with NHTSA on August 24, 2016 about an incident occurring that day in a 2013 Sienna Minivan expressed the consumer's view that the door defect rendered her minivan unusable:

> **Power doors stopped working and are stuck open. They stick open with my kids in the back and I was driving home**. I've owned this car for 44 days. Mo[to]r just quit door is stuck halfway. Thank god we got home safe!!! Less then 90000 miles and **the car is unusable**. ….[40]

77.     Another complaint, filed with NHTSA on September 22, 2016 about an incident that occurred on September 21, 2016 in a 2012 Sienna Minivan, stated:

> **Passenger door - motor lock assembly failure where passenger door will not shut and flies open when driving**. … **door flew open after I shut it and drove the vehicle. I then stopped to shut door and door would not close at all**.[41]

---

[38] NHTSA database, NHTSA ID No. 10969484, Post Date 3/30/2017.
[39] NHTSA database, NHTSA ID No. 10876281, Post Date 06/23/2016.
[40] NHTSA database, NHTSA ID No. 10898271, Post Date 08/24/2016.
[41] NHTSA database, NHTSA ID No. 10908710, Post Date 09/22/2016.

78.     A complaint filed with NHTSA on October 19, 2016 about an event that occurred on September 12, 2016 in a 2013 Sienna Minivan stated that "**… [w]hile driving approximately 45 mph, the rear driver's side sliding door opened without warning**. …"[42]

79.     And consistent with this pattern of dangerous events, a complaint filed with NHTSA on January 4, 2017 about an incident that first occurred on November 14, 2016 in a 2015 Sienna Minivan states:

> … when we pressed to button to close them, the doors came **partly closed, then opened back up, then tried to close, then tried to open**. Regardless of what we did, the door would not operate correctly. … *Took the van to dealer. They said it was the motor and replaced it.* That was 11-14-2016. Now 1-4-2017, the doors are not working properly again. And when I called the dealer, they never mentioned the recent recall. … I called Toyota, they said that I would eventually get something in the mail. It is hard to believe that a manufacturer would be so irresponsible about major safety issues**. Once I looked online, I found that the sliding door problem has been going on for years. How is it legal for a company to purposely continue to endanger people's lives?**[43]

80.     According to the Defect Information Report, Toyota made the decision to recall the Class Vehicles on November 17, 2016.  Toyota did not, however, immediately notify consumers of the dangerous condition.  Instead, between at least November 17, 2016 and December 23, 2016, when it began sending out the Safety Recall Notices, it continued to allow Sienna Minivan drivers to unknowingly expose themselves and their children to the potentially fatal risk of the power doors suddenly opening while the vehicle is in motion.

81.     A complaint filed with NHTSA concerning a 2014 Sienna Minivan reported a potentially life-threatening even that occurred on November 24, 2016:

> **While driving … door slide open on my 11 year old son … My daughter frantically grabbed her brother (whom was buckled) thank God. Until I was able to pull over to safety.** I broke down

---

[42] NHTSA database, NHTSA ID No. 10917369, Post Date 10/19/2016.
[43] NHTSA database, NHTSA ID No. 10939776, Post Date 1/4/2017.

into tears knowing my husband and I paid $43,298.43 to provide a safe "home away from home" for my family of 6….[44]

82.   Likewise, a complaint filed with NHTSA about an incident in a 2011 Sienna Minivan on December 10, 2016 stated:

> While driving at various speeds, **the rear passenger side sliding door independently opened without warning**.   The contact received notification of NHTSA Campaign Numbers 16v858000 (Structure) [the Safety Recall] and …[the Takata recall].  However, the parts to do the repairs were unavailable.  .[45]

83.   As set forth in paragraphs 125-35 below, between January 2014 and November 2016, there were also numerous complaints filed with NHTSA about the power sliding doors closing on their own and jamming.

## VII.   TOYOTA FINALLY ISSUES THE SAFETY RECALL BUT CANNOT CORRECT THE DANGEROUS DEFECT

84.   Beginning on approximately December 23, 2016, Toyota finally sent out interim Safety Recall Notices to owners and lessees of the Class Vehicles.[46]  As stated above, the Safety Recall Notices only disclosed the risk that the power sliding doors could open while driving, but not the additional known risks of injuries and safety hazards caused by the doors closing or becoming jammed.  Toyota admitted it had no remedy for the dangerous condition and, as of June 2017, six months later, there is still no remedy. Thus, Plaintiff and members of the Classes continue to drive Class Vehicles with Defective Doors that pose a safety hazard.

### A.   Consumers Continue To Report Incidents After The Safety Recall

85.   Because Toyota still cannot fix the Defective Doors, consumers continue to be in danger when they use the power sliding doors and Class Vehicles in their intended manner.

---

[44] NHTSA database, NHTSA ID No. 10938424, Post Date 12/10/2016.
[45] NHTSA database, NHTSA ID No. 10929427, Post Date 12/01/2016.
[46] According to the brief press release Toyota issued on the recall, notifying customers was to be completed by mid-January 2017.

86.     For example, a complaint filed with NHTSA on April 4, 2017 about an incident on March 21, 2017 concerning a 2014 Sienna Minivan reported:

> … the ***rear passenger sliding door opened independently***. Once the button was pressed to close the door, the door attempted to close, but did not. The contact received notification of NHTSA campaign number: 16v858000 (structure); however, the parts to do the repair were unavailable. The manufacturer exceeded a reasonable amount of time for the recall repair. The manufacturer was notified of the issue. ***The contact was notified that the manufacturer considered the failure collateral damage and it was more cost effective for the contact to drive the vehicle***. ….[47]

87.     A complaint filed on June 7, 2017 about an incident occurring on June 2, 2017, concerning a 2012 Sienna Minivan stated:

> Passenger side sliding door failed.  **While driving at low speeds the door independently opened and caused the motor to fail.**  The contact was unable to close the door.  The vehicle was taken to the dealer … where it was diagnosed that the motor and linkages needed to be preplaced.  The contact referenced NHTSA Campaign Number 16V858000 [the Safety Recall]. [48]

88.     By delaying or being unable to provide a fix for the power sliding doors it admits are defective and dangerous, Toyota continues to expose consumers to a safety hazard and to deny them the use of a feature for which they paid a premium.

89.     Moreover, despite not yet having remedied the defects in the power sliding doors, beginning in 2016, Toyota began marketing and selling 2017 Sienna Minivans, which also have power sliding rear passenger doors.  Toyota markets these vehicles as safe, convenient family vehicles.  Toyota is either knowingly misleading consumers of 2017 Sienna Minivans and putting them at risk, or the 2017 Toyotas have motors for the power doors that function properly which Toyota is not installing in the Class Vehicle doors.

---

[47] NHTSA database, NHTSA ID No. 10970442, Post Date 4/4/2017.
[48] NHTSA database, NHTSA ID No. 10993672, Post Date 6/7/2017.

**B.    Toyota's "Suggestion" that Consumers
         Disable the Power Doors Is Not a Solution**

90.    Disabling the power sliding doors as Toyota suggests in the Safety Recall Notice is not a solution because, as consumers have reported, even if the power doors are disabled, they continue to malfunction.  Several consumers have reported having the doors *again* independently open while the vehicle is moving even after they turn off the door power system in response to an unintended opening event.  Thus, Toyota's suggestion to turn off the door power system may not actually keep the doors from opening while the vehicle is in motion.

91.    Demonstrating that turning off the automatic door feature does not resolve the problem, a complaint filed with NHTSA about a 2012 Sienna Minivan reports:

> As I have driven on the highway, on three separate occasions, my rear sliding doors have spontaneously opened on their own. **After it happened the first time, we turned off the automatic door feature and it still happened another two times**.[49]

92.    Likewise, a complaint filed with NHTSA on December 27, 2016 concerning a 2011 Sienna Minivan states:

> Sliding doors opened while driving, **turned off automatic and used manual opening, door will not latch closed now while using manual operation, lights interior now stay on.** Rear door and side sliding now indicate on screen open from time to time while driving now.[50]

93.    In addition, a complaint filed with NHTSA on March 9, 2017 concerning a 2013 Sienna Minivan states:

> … **the door would not latch when manually closed. The door had to be tied shut in order to drive the vehicle to the Toyota dealer since there was no other way to fasten it**. The dealer *reported they knew this was part of a Toyota recall but they had no documentation on how to fix it from Toyota* so they just replaced the entire motor assembly. **Toyota has known about this problem**

---

[49] NHTSA database, NHTSA ID No. 10840430, Post Date 03/08/2016.
[50] NHTSA database, NHTSA ID No. 10937749, Post Date 12/27/2016.

**and has done nothing about it. It is a dangerous situation that has to be fixed before someone falls out of a moving vehicle. The door closes and appears latched until you drive and then it flies open.**[51]

94.    Another significant problem with Toyota's interim suggestion that people disable their power door systems is that some Class Vehicle owners/lessees have reported extreme difficulty in opening or closing their sliding doors manually.

95.    For example, a complaint filed with NHTSA on May 22, 2017 about a 2014 Sienna Minivan states:

> The contact owns a 2014 Toyota Sienna. The contact received notification of NHTSA campaign number: 16v858000 (latches/locks/ linkages) [the Safety Recall]. The parts to do the repair were unavailable. … **The contact mentioned because the doors were so heavy and she had to open and close them manually, she was currently experiencing shoulder issues.** The contact stated that the manufacturer exceeded a reasonable amount of time for the recall repair. The manufacturer stated that they did not have a remedy and the contact would receive a letter when the parts and remedy were available. ….[52]

96.    Similarly, a complaint filed with NHTSA on March 9, 2017 concerning a 2011 Sienna Minivan states:

> **Left sliding door won't open electronically or manually.** Right sliding door is making a clunking noise when opening electronically. …. **Been back to dealer 4 times since for the doors not working properly**. I had to pay $244. …**I'm not using the left door now during the winter because I can't be sure the door will close.**[53]

97.    A complaint filed with NHTSA about a 2016 Sienna Minivan states:

---

[51] NHTSA database, NHTSA ID No. 10959832, Post Date 03/09/2017.
[52] NHTSA database, NHTSA ID No. 10990907, Post Date 5/22/2017.
[53] NHTSA database, NHTSA ID No. 10959825, Post Date 03/09/2017.

> The sliding passenger doors stopped working and **you could not open them manually**. Passengers side door stopped working 8/3/15 and the drivers side door stopped working 5/3/16.[54]

98.   Consumers paid a substantial premium for the power sliding door feature, and the availability of that feature was a material factor in their decision to purchase Sienna Minivans. Disabling the power sliding doors as Toyota suggests deprives them of the use of a feature for which they paid a premium, and the benefit of their bargain.  It leaves them with power sliding doors that are not operational, much less fit for their ordinary purpose.

99.   Moreover, the fact of the Safety Recall has decreased the intrinsic and resale value of the Class Vehicles. Owners of Class Vehicles are currently unlikely to be able to sell their vehicles.  As one consumer reported on May 26, 2017, after she experienced the door of her 2014 Class Vehicle sliding open next to her son, she "[w]as told by service manager that it was 'illegal for us to sell our car.'"[55]

100.   Moreover, in Toyota's instruction letter to its dealers regarding sale in connection with the Safety Recall, Toyota stated:

> … 49 Code of Federal Regulations §577.13 requires us to provide the following advisory: It is a violation of Federal law for a dealer to deliver a new motor vehicle or any new or used item of motor vehicle equipment (including a tire) covered by this notification under a sale or lease until the defect or noncompliance is remedied.
>
> Pre-Owned Vehicles in Dealer Inventory
>
> Toyota typically requests that dealers NOT deliver any pre-owned vehicles in dealer inventory that are covered by a Safety Recall unless the defect has been remedied. In this case, until remedy parts are available, delivery of a pre-owned vehicle is acceptable if disclosed to the customer that the vehicle is involved in this Safety Recall and that the remedy is currently being prepared by Toyota.

---

[54] NHTSA database, NHTSA ID No. 10862854, Post Date 05/03/2016.
[55] NHTSA database, NHTSA ID No., 10991818, Post Date 5/26/2017.

101.   In short, Toyota has not and apparently cannot correct the dangerous Defective Doors in the Class Vehicles.  Toyota has not offered loaner cars for people to drive while the danger is ongoing.

## VIII.   TOYOTA ALSO KNEW THE POWER DOORS WERE A SAFETY HAZARD BECAUSE THEY COULD CLOSE UNEXPECTEDLY AND JAM

### A.   During the Class Period, Consumers Report That the Sliding Doors Close on Their Children's Hands and Arms

102.   In addition to the reports of Class Vehicle doors opening independently during the relevant period, consumers reported extremely dangerous incidents of their children's hands and arms getting caught in the power sliding doors despite the presence of jam protection.

103.   A complaint filed with NHTSA on August 11, 2011 about a 2011 Sienna Minivan reported that the power sliding doors independently closed on a toddler's hand:

> …I was about to get my 3 month old son out of the driver side power door. My 2 1/2yr old daughter pushed the power door button to close her door after getting out of the vehicle and was holding onto the van to gain her ground, **at which time the power sliding door closed entirely on her right hand! It did not open with the door sensor as we were told it would do if anything was in the path of the door closing.** When I frantically tried to pull open the door from the inside, and push the power door button, **the door would not open and she just kept screaming from the other side**. … **When you are told the power doors and windows are on a sensor they need to actually function 100%, not only for a large object like a body obstructing the door/window, but also children's hands- after all this is a family vehicle that I was under the impression was built on safety!**[56]

104.   A complaint filed with NHTSA on August 20, 2012 about a 2011 Sienna Minivan reported a child's finger being broken by a closing door:

> My 12 year old son reached back for the seat belt for the middle row seat behind the **passenger while the automatic door was closing. His hand became trapped between the door and frame as the automatic door shut. The door did not release automatically and**

---

[56] NHTSA database, NHTSA ID No. 10418523, Post Date 08/11/2011.

**only released when he used his other hand to push the "door open" button**. **Unfortunately he suffered a fracture of his 4th right metacarpal.** We are very concerned about the close proximity of the door mechanism and the seat belt, and also about the lack of a safety mechanism for automatic sensing/release.[57]

105. A complaint filed with NHTSA on May 21, 2013 about a 2012 Sienna Minivan reported the power door closing independently on a child's arm:

> The contact owns a 2012 Toyota Sienna. **The contact stated that a child passenger was injured from the automatic rear sliding door. The sliding door independently closed on the child's arm.** The vehicle was taken to a dealer for diagnosis however, because an injury occurred the contact was informed that the manufacturer would contact her about the failure. The vehicle was not repaired. The failure and current mileage was 23,535.[58]

106. A complaint filed with NHTSA on November 30, 2013 about a 2013 Sienna Minivan reported a door unintentionally closing on a child's finger:

> The sliding door was opening (via keychain button), **but opened only halfway before slamming shut very quickly.** It was like it thought it hit something in by the back tire, but there was nothing there. My daughter had started getting into the car, **so the door slammed shut on her finger and actually latched closed with her finger stuck inside.** The door hasn't worked since. This "safety feature" backfired.[59]

107. A complaint filed with NHTSA on April 29, 2016 about a 2015 Sienna Minivan reported a bruised hip:

> I … pushed the button above me on the console. **At that point the door started to close on him. It did not stop closing and was pressing him into the door frame.** … I expected that the door would automatically sense a blockage, stop and open back. **He was only ok because he was strong enough to press back, but his hip was very bruised. …The electrical or sensing system in this door is faulty.**[60]

---

[57] NHTSA database, NHTSA ID No. 10471641, Post Date 03/07/2012.
[58] NHTSA database, NHTSA ID No. 10513006, Post Date 05/21/2013.
[59] NHTSA database, NHTSA ID No. 10554193, Post Date 11/30/2013.
[60] NHTSA database, NHTSA ID No. 10862153, Post Date 04/29/2016.

**B.      Reports of the Sliding Doors Closing Independently Began Soon After Toyota Rolled Out Model Year 2011 Sienna Minivans**

108.    Consumers reported problems in the operation of the power sliding doors in the

2011 Sienna Minivans as early as January 19, 2011:

> …. the driver and passenger automatic sliding doors would fail intermittently. **The driver side sliding door would often close independently while the contact was standing in the doorway**. The vehicle was inspected by a dealer ….[61]

109.    Another complaint filed with NHTSA on January 27, 2011 about a 2011 Sienna

Minivan stated:

> **Driver side power sliding door on 2011 Toyota Sienna repeatedly (but intermittently) jams upon opening -- happened almost immediately after purchased**. …[A] previous Toyota technical service bulletins related to the Sienna power sliding door problems (BO010-01). **I was told that until enough people complain, Toyota won't recognize that there is a problem and won't do anything about it. ….** [62]

110.    Yet another complaint filed with NHTSA on March 25, 2011 about a 2011 Sienna

Minivan, stated:

> **My new 2011 Toyota Sienna LE automatic power sliding door on the driver side stopped working. …** If I try to open using remote control or switches then **it will try to open but close immediately** and make beeping sounds. I took the vehicle to the local Toyota dealer couple of times but they simply said there is no problem. … ***Toyota refused to fix the issue promptly until we filed for arbitration to replace the car or refund vehicle purchase price. Toyota finally replaced power sliding door motors*** for both left and right side to address the issue.[63]

111.    Another complaint filed with NHTSA on April 10, 2011 about a 2011 Sienna

Minivan expressed frustration because the vehicle was purchased specifically for its power doors:

---

[61] NHTSA database, NHTSA ID No. 10377190, Post Date 01/19/2011, UPDATED 03/29/11, UPDATED 05/02/11.
[62] NHTSA database, NHTSA ID No. 10379344, Post Date 01/27/2011.
[63] NHTSA database, NHTSA ID No. 10392924, Post Date 03/25/2011.

Purchased 2011 Sienna LE van in October 2010**. Almost immediately the power sliding doors intermittently open an inch or less & alarm sounds. You can't open or close door at this point**. You have to man-handle it to close. **Even turning off the power door with the switch does not help**. Took it to the dealer & **they said Toyota Corp. knows about it but no idea how to repair**..... Only option is to shut off the power doors & use manually. **I bought this model because of the power sliding doors!** [64]

112.    Another complaint filed with NHTSA on April 13, 2011 about a 2011 Sienna Minivan reported:

…The contact noticed that the **rear sliding door remained stuck in an open position intermittently**. The failure occurred while using the manual operation or power assist button. The vehicle was taken to the dealer on five occasions and they were unable to duplicate the failure. **A complaint was filed with the manufacturer and they advised the contact that a remedy would be available in March 2011; however, when the vehicle was taken to the dealer to be repaired** the dealer informed the contact that the part was not available. …[65]

**C.    The 2011 Lawsuit**

113.    In June 2011, two Sienna Minivan owners brought a putative class action against Toyota in the United States District Court for the District of New Jersey alleging the sliding doors in 2004-2007 Sienna Minivans were defective.[66]  This existence of this lawsuit is incontrovertible proof that Toyota was aware of defects in its sliding doors as of June 30, 2011.  Plaintiffs alleged the 2004-2007 models contained defects in the material, manufacturing and/or workmanship of the sliding doors that caused them to fail to open and close properly. They alleged the failures with respect to opening and closing were most often caused by one or more of the following factors: failure of the sliding doors' assembly, including failure of the door pulleys and/or cables; failure

---

[64] NHTSA database, NHTSA ID No. 10395399, Post Date 04/10/2011.
[65] NHTSA database, NHTSA ID No. 10395795, Post Date 04/13/2011.
[66] *Wiseberg v. Toyota Motor Corporation, et al.*, D. N.J, 2:11-cv-03776.

of the door touch sensors; failure of the controllers or controller assembly; defective attachment of the sliding doors; and/or, in models with motorized doors, failure of the motor which opens and closes the doors.

114.    After a motion to dismiss and a motion for reconsideration, the court ruled plaintiffs could proceed with a consumer protection claim and a breach of express warranty claim.  On January 7, 2013, Plaintiffs voluntarily dismissed the lawsuit. No class was certified and no notice was ever sent to members of the putative class.

115.    Despite Toyota's undeniable knowledge in 2011 of defects with the power doors in the 2004-2007 Sienna Minivans, including the failure of the motor driving the power doors, Toyota continued to manufacture, market and sell Sienna Minivans with Defective Doors throughout the Class Period.

**D.    The 2012 Warranty Extension**

116.    On April 19, 2012, Toyota announced a warranty enhancement vastly extending the warranties for the rear sliding door latch assemblies and power sliding door cable assemblies in the sliding doors of Sienna Minivans manufactured between 2004-2010:

> Toyota has received reports of customer concerns regarding rear sliding doors that gradually become difficult to open or close in certain 2004-2010 model year Sienna vehicles.
>
> Although the Rear Sliding Door Latch Assemblies and the Power Sliding Door Cable Assembly are covered by Toyota's New Vehicle Limited Warranty for 3 years or 36,000 miles (whichever occurs first), Toyota is announcing a Customer Support Program (CSP) which will extend the warranty coverage for the following:
>
> 1) Rear Sliding Door Latch Assemblies - For certain 2004-2010MY Sienna vehicles equipped with a Manual or Power Sliding Door, the warranty coverage for the Rear Sliding Door Latch Assemblies will be extended to 9 years from the date-of-first-use or 120,000 miles (whichever occurs first).

> 2) Power Sliding Door Cable Assembly - For certain 2004-2007MY Sienna vehicles equipped with a Power Sliding Door, the warranty coverage for the Power Sliding Door Cable Assembly will be extended to 9 years from the date-of-first-use or 120,000 miles (whichever occurs first).

117.    Toyota was careful to brand this as a "warranty enhancement" rather than a recall to conceal from owners/lessees and potential purchasers the known safety risks in the sliding doors of Sienna Minivans.  Moreover, the warranty enhancement announcement is deceptive because it only states that opening or closing the doors might become "difficult."  It omits the fact, known to Toyota, that the doors could independently open while the vehicle is in motion.  It also omits the host of other known dangerous defects in the power sliding doors that consumers reported.

118.    Moreover, by putting in place an extended warranty, Toyota was able to cover repairs for vehicles only *after* the doors actually malfunctioned. Thus, consumers had to continue to use their Sienna Minivans until something potentially dangerous happened before they could have their sliding doors repaired.

**E.    Consumers Continue to Report Incidents of Door Malfunctions**

119.    Despite Toyota's acknowledgment of problems in its 2004-2010 Sienna Minivan power doors, it continued to include dangerous Defective Doors in the subsequent models of Sienna Minivans that it manufactured.

120.    For example, a complaint filed with NHTSA on October 27, 2011 about  a 2011 Sienna Minivan reported:

> **…** related to the rear doors, we have repeatedly experienced the problem reported by others of **the power doors jamming in a partially open position** and having to be slowly pushed closed manually (with great resistance), before they will function again normally in either power or manual mode. **This could be a safety concern that could impede the ability to exit the vehicle in an emergency**.

121.   A complaint filed with NHTSA on October 10, 2011 about a 2011 Sienna Minivan

reported:

> **Driver side power door is not opening on its own. With very few miles the door refused to open and close on its own power**. … Dealer blamed customer for problem as the car was "too dusty". … **The passenger power door is now starting to fail**. It was never disclosed to customer that car cannot be driven on gravel or dusty roads. The customer must drive on gravel roads daily so the van is now all but useless for its intended purpose. Additionally the **lack of the driver side sliding door to open is a safety concern for rear seat passengers. If the passenger door were to become damaged in an accident the rear occupants would be unable to safely exit the vehicle**.[67]

122.   A complaint filed with NHTSA on March 7, 2012 concerning a 2011 Sienna

Minivan stated:

> The contact owns a 2011 Toyota Sienna**.** The contact stated the driver's side **automatic sliding door jammed and failed to release open until body force was applied to the door. The failure occurred fifty times.** The vehicle was taken to an authorized dealer twice and they were unable to duplicate the malfunction. The contact planned to notify the manufacturer of the defect. ….[68]

123.   A complaint filed with NHTSA on February 5, 2013 concerning a  2011 Sienna

Minivan detailed the consumer's experience with a door closing on her repeatedly and her feeling

that the vehicle was "not worth the hassle":

> During the test drive and inspection of 2011 Toyota Sienna v**an the driver's side rear sliding door would close without touching the button or handle**. The dealer (rep) told me that he had pressed the close button too many times and that's why it shut during the inspection of the vehicle. After taking the vehicle home the driver's rear sliding door shut on me **while I was getting a small child out of a car seat-I did not touch the button or door handle. After the same thing happened 4-5 more time I took the 2011 Sienna van back to the dealer** and told them that I would not take the vehicle back until the problem was fixed. **The dealer replaced the motors in both sliding doors. The problems has continued and after**

---

[67] NHTSA database, NHTSA ID No. 10429366, Post Date 10/10/2011
[68] NHTSA database, NHTSA ID No. 10450680, Post Date 03/07/2012.

**research have found that this is a common complaint regarding the sliding doors on the Sienna vans**. Between tire problems and door problems it's not worth the time or hassle.[69]

124.     A complaint filed with NHTSA on August 2, 2013 reports that the sliding door on

a 2011 Sienna Minivan crushed a MacBook:

> **(Toyota, Sienna 2011) passenger automatic sliding door anti-jam sensor failed. Object (MacBook) was placed in door pocket compartment**. Door switch was pressed and door began opening. Macbook did not completely clear the doors path completely and door began crushing it. I could hear something wasn't right and saw the door bend the laptop and park in the fully open position. You could clearly see and hear the door had met an obstacle and was struggling, but just pressed through it. **Door made no attempt to stop or reverse**. The MacBook was damaged. The whole machine was bent by the door and I can no longer fit a cd in the optical slot because it is now curved rather than flat. These doors are strong enough be bend metal! The "anti-jam" system failed. **After seeing that, I really think that these doors have to capability to seriously injure someone**.[70]

125.     Similarly, a complaint filed with NHTSA on April 15, 2014 concerning a 2011

Sienna Minivan stated:

> Within one week of purchase, the driver side, **power assist sliding door failed to open completely**. After initially opening six inches it would only move four inches in either direction by pulling the exterior handle. Only with multiple pulls/jerks could the door be fully opened or closed. This problem would manifest unpredictably, most often with the driver side power door, but once with the passenger side. Otherwise the doors functioned properly about eighty percent of the time. This failure appears to involve a safety feature which prevents the door from advancing when sufficient resistance is met. In all cases of failure no mechanism for resistance was found. **My fear is that the safety feature may also fail when it needs to perform properly, to prevent an arm or leg from being crushed.**[71]

---

[69] NHTSA database, NHTSA ID No. 10496430, Post Date 02/05/2013.
[70] NHTSA database, NHTSA ID No. 10533323, Post Date 08/02/2013.
[71] NHTSA database, NHTSA ID No. 10582792, Post Date 04/15/2014.

126.   Likewise, a complaint filed with NHTSA on August 18, 2014 concerning a 2012 Sienna Minivan stated:

> **Driver's side rear sliding door will not latch shut when closing door either manually of electrically.** When closing front latches engage of sliding door but subsequent rear latching does not engage upon end of closing cycle. One can hear rear of sliding door locking mechanism actuator whine when attempting final close cycle. After the van's failure to cycle the door shut at rear, then also at rear a diagnostic sounds a long beep warning sound afterwards. Removing negative to see if this would reset the door in some way only served to cancel **all electronic commands to the door to open or close useless from any button (fob, overhead control console button, manual door handle opening or open/close buttons)**. Passenger (right) sliding door unaffected.[72]

127.   A complaint filed with NHTSA on December 4, 2014 concerning a 2011 Sienna Minivan stated:

> **The wheels on the driver side sliding door broke causing it to stop working and shattering the back window of my van. My child was sitting by the window that shattered**. We were very lucky she was not injured by the glass.[73]

128.   A complaint filed with NHTSA on February 27, 2015 concerning a 2013 Sienna Minivan stated:

> After driving the vehicle to the gas station and filling up with gas, the van would not restart. … **In an attempt to open the drivers side rear, unlocked sliding power door, it would not open**. My wife was unable to open the door to get our 18 month old out of a cold car. …When the van was finally jump started and brought to the dealer, they replaced the battery, and just shrugged off the fact that the door wouldn't open when the battery is dead. **This is a huge safety concern for us**. If we happen to be in an accident and the battery gets disconnected, we would not be able to quickly and safely remove our child from the van.[74]

---

[72] NHTSA database, NHTSA ID No. 10626109, Post Date 12/04/2014.
[73] NHTSA database, NHTSA ID No. 10662214, Post Date 04/15/2014.
[74] NHTSA database, NHTSA ID No. 10691010, Post Date 02/27/2015

129.     A complaint filed with NHTSA on September 14, 2015 concerning a 2011 Sienna

Minivan stated:

> **Pressed button to open power slider (with child inside waiting to exit vehicle). With door halfway open, cable snapped and door froze. The cable was exposed to the inside of the passenger compartment when this occurred. Door is now inoperable (even manually) after being "diagnosed" with "broken cable" by dealership. Dealership and** *Toyota were sent complaint in writing*.[75]

130.     A complaint filed with NHTSA on October 21, 2015 concerning a 2011 Sienna

Minivan stated:

> **The rear passenger door cable snapped completely cut in half and the door does not function**. The car was parked when this happened as I was unloading.[76]

131.     A complaint filed with NHTSA on November 9, 2015 concerning a 2011 Sienna

Minivan stated:

> The power sliding door stopped working. **Upon close notice, it looks like the cable is broken. I am surprised to see this issue on my 2011 model Sienna XLE all wheel drive. It looks like there was a recall related to this issue in the previous generation as shown** in this link. http://media.fixed-ops.com/toy_campaigns/csp-zts.pdf. It seems like the extended warranty covers models from 2007 to 2010... **But my car is a 2011 year model purchased during 2010**.[77]

132.     A complaint filed with NHTSA on March 17, 2016 concerning a 2011 Sienna

Minivan stated:

> **The sliding door intermittently closes about 2/3 of the way, beeps, and then opens again. It probably happens 3/4 of the time. It currently has no issue opening.**[78]

---

[75] NHTSA database, NHTSA ID No. 10763891, Post Date 09/15/2015.
[76] NHTSA database, NHTSA ID No. 10785063, Post Date 10/21/2015
[77] NHTSA database, NHTSA ID No. 10789418, Post Date 11/09/2015
[78] NHTSA database, NHTSA ID No.10850313, Post Date 03/17/2016.

133. A complaint filed with NHTSA on May 3, 2016 concerning a 2016 Sienna Minivan stated:

> The sliding passenger doors stopped working and you could not open them manually. Passengers side door stopped working 8/3/15 and the drivers side door stopped working 5/3/16.[79]

134. A complaint filed with NHTSA on May 17, 2016 concerning a 2015 Sienna Minivan stated:

> Power sliding door does not open or close when using any of the electrical buttons in the vehicle as well as on the key fob[80]

135. Another complaint, filed with NHTSA on October 29, 2016 concerning a 2013 Sienna Minivan stated:

> **Both power sliding door have failed due to the cable assembly. One door the cable snapped. The other door the cable got stuck.**[81]

### IX.   TOYOTA'S PRE-CLASS PERIOD TECHNICAL SERVICE BULLETINS ABOUT THE SLIDING DOORS

136. Technical Service Bulletins are communications that automobile manufacturers make to their dealerships and repair technicians when they become aware of several occurrences of an unanticipated problem. They provide information about diagnosis and instruction for repair. Pursuant to the implementing regulations for the TREAD Act, at 49 CFR 573.6, when a manufacturer issues a Technical Service Bulletin, it must file it with NHTSA.

137. Toyota issued Technical Service Bulletins about the power sliding doors in its Sienna Minivans as early as 2004. On April 19, 2004, Toyota issued Technical Service Bulletin T-SB-EL004-04, which stated, "[i]n some instances, customers with 2004 model year Sienna

---

[79] NHTSA database, NHTSA ID No. 10862854, Post Date 05/03/2016.
[80] NHTSA database, NHTSA ID No. 10865527, Post Date 05/17/2016.
[81] NHTSA database, NHTSA ID No. 10919991, Post Date 10/29/2016.

vehicles may experience power sliding door inoperative conditions." Although this notice indicated that new parts were being made available to make the doors more durable, it is clear that no attempt was actually made to make Toyota Sienna doors free from defect.

138.   On December 6, 2006, Toyota issued another service bulletin about Sienna automatic doors, T-SB BO027-06.  This bulletin set forth a summary of repair suggestions for sliding doors on 1998 through 2003 Sienna vehicles. ***It listed 17 types of problems known to arise with respect to the functionality of the Sienna's sliding doors***.  It included 12 reasons for problems under the heading "Door Does Not Close/Open Properly in Power Mode: Door Does NOT Move, Door Closes But Re-opens [and/or] Door Moves Part Way."  Still, Toyota did not take steps to ensure that the doors in its subsequent models were safe and functional.

139.   In 2007, Toyota issued another Service Bulletin, T-SB EL0011-07, titled, "Power Back Door & Power Sliding Door Difficult to Close."  This Bulletin concerned Model Years 2004 – 2007. Again, although this bulletin indicated that new parts were being made to repair this defect, Toyota Sienna power doors continued to be defective on a widespread basis.

140.   On March 13, 2009, with T-SB-0085-09, Toyota updated its 2004 bulletin about the problem that certain "Sienna vehicles may experience power sliding door inoperative conditions," EL004-04, to indicate that same problem described in that bulletin ***existed in 2005-2007 models***.  The update noted that repairs were only covered within the first of 3 years or 36,000 miles, which meant that none of the 2005-2007 models newly disclosed to be defective were covered.  In this TSB, Toyota omitted that "power sliding door inoperative conditions" included the doors coming open independently.  *See supra*, paragraph 137.  On October 4, 2010, Toyota issued T-SB-0280-10, concerning a problem described as "Some 2004 – 2010 Sienna vehicles may exhibit a condition where one or both sliding doors do not open or close smoothly."  Yet again,

despite describing a repair (for which it would only cover the cost of repair to in-warranty vehicles), Toyota failed to fully fix its door problems in either older models or new models going forward.

141.    On May 24, 2011, Toyota issued a service bulletin to its dealers and service technicians about 2011 Sienna Minivans, T-SB-0044-11:

> Some 2011 model year Sienna vehicles may exhibit an abnormal power slide door operation. This bulletin contains field fix information for the following conditions:
>
> • Driver or passenger side power sliding door opens partially…

142.    This bulletin did not disclose that the problem with the doors included that they could open while the vehicle was in motion, although, as set forth below, many consumers reported that occurring.  Indeed, a host of such complaints were reported to NHTSA and on other websites. And yet again, Toyota deceptively concealed that the problem with its doors was not just that they would not close or open smoothly, but that it had received a large number of reports of them coming open independently while a vehicle in which they were installed was on the road.  It also did not report the many reports of people's limbs being crushed by the doors.  Toyota attempted to minimize the extent of its problem through this concealment.  Had Toyota disclosed the true dangerous nature of the problems with the doors, NHTSA might have begun an investigation and prevented the exposure of hundreds of thousands of customers to risk.

143.    On November 14, 2013, Toyota filed yet another Technical Service Bulletin, T-SB-0170-13, about Sienna doors.  In this one, Toyota stated that "certain 2011 Models may exhibit a condition in which the power sliding doors or power hatch are inoperative from the overhead console switch or require excessive pressure on the overhead console switch to operate."  It did not address any of the many other consumer issues that had been reported about these doors.

144.   It was not until November 22, 2016 that Toyota finally disclosed the door opening problem in the Defect Information Report.  Even then, Toyota omitted the other well-documented problems with the doors listed above.

## X.   TOYOTA FALSELY MARKETED THE CLASS VEHICLES AS SAFE AND CONVENIENT FAMILY VEHICLES

145.   In late 2010, after Toyota's image and sales were damaged by complaints about unintended acceleration, its top executives "decided to revamp its marketing message and shift the focus to safety in a big way."[82] As detailed in an article in Advertising Age titled, "Toyota to Push Safety in Upcoming Ad Blitz":

> Toyota Motor Sales U.S.A.'s overall sales fell 34% in August and are down 1% for the year -- it's the only major manufacturer with a decline for 2010. *Executives admit that consumers have doubts about the safety and quality of Toyota vehicles, so the automaker is planning an advertising blitz to counter that perception*.
>
> For years, Toyota's brand message has been based on quality, durability and reliability, with a dash of value thrown in at the tagline. *But with both Toyota loyalists and possible converts now skeptical of that message, the automaker is putting safety first*.
>
> "What we're dealing with is a perception issue, and brand perceptions are not brand realities," said Bob Carter, Toyota Division general manager. "*If a customer has removed us from their consideration list, it was because of a perception of Toyota safety*."
>
> …
>
> Mr. Carter said the safety theme will continue in Toyota's brand advertising until consumer attitudes change.
>
> …
>
> Said Mr. Fay [the Toyota Marketing VP in charge of the campaign] of the coming ad campaign: "We need to make an emotional connection with people who own

---

[82] Mark Rechtin, "Toyota to Push Safety in Upcoming Ad Blitz," September 6, 2010, AdvertisingAge. Available at http://adage.com/article/news/advertising-toyota-push-safety-upcoming-ad-blitz/145729/ (last visited June 20, 2017), referencing statement made by top Toyota executives to Automotive News.

or are considering our product. We need to address the concerns of the customer, based on what we've been through this year."

He said the safety campaign should run well into 2011.

"This is not a short-term thing where we run an execution or two," Mr. Fay said. "We still have QDR. We just have to assure customers that's the case."[83]

146.    In connection with this campaign, Toyota introduced a video commercial with voiceover that stated: "Everyone deserves to be safe. That's why every Toyota now comes with the Star Safety System, standard.  … We always think of safety, even in the concept design of our vehicles … we know there's nothing more important to you than your safety."[84]

147.    It was also in connection with this new campaign that, in January 2011, Toyota added a link on the home page of its website to a section called "Toyota Safety" which brought the web user to a page about Toyota's many safety features, beginning with a video showing the text "Everyone deserves to be safe.  Which is why Toyota is doing even more to enhance our cars' safety and technology."[85]  It also included a statement that "[a]t Toyota, we're currently investing one million dollars an hour to enhance the safety and technology of our vehicles."[86]

148.    Toyota has kept this safety message prominent in its marketing, including on its website, to this day.

149.    Now, Toyota is one of the ten biggest advertising spenders in the United States.[87] During 2015 alone Toyota spent 435 billion Japanese yen, or 1.6% of its revenues, on advertising

---

[83] *Id.*  (Emphasis supplied.)
[84] Available at https://www.youtube.com/watch?v=a_vaFypz8xk, last visited June 11, 2017.
[85] Available at https://web.archive.org/web/20110103143210/http://www.toyota.com:80/safety/, last visited June 11, 2017.
[86] *Id.*
[87] Market Realist, "A Must-Read Overview of Toyota Motor Corporation," Part 5.  Available at http://marketrealist.com/2016/05/understanding-toyotas-marketing-strategy/ (last visited June 20, 2017).

and sales promotions, primarily focusing on traditional advertising methods, including print and electronic media.[88]

150.    For example, as of the time of the filing of this complaint, Toyota's main website touts the safety features of all of its vehicles, saying to potential customers:

> Let's go places, safely.
>
> Why were 12 Toyota vehicles named "Top Safety Picks" by the Insurance Institute for Highway Safety in 2016?  Because we design them with the knowledge that safety is more than features – it's the lives of the people who drive our cars.  For us, the journey towards a safe road never ends.  This belief, along with our collaborative research efforts, drives us to create advancements and innovations in safety that have helped (and continue to help) prevent crashes and protect people.

A screen shot of this portion of the website is below.[89]



_____

[88] http://marketrealist.com/2016/05/understanding-toyotas-marketing-strategy/
[89] https://www.toyota.com/usa/safety/

151.    This part of Toyota's website also provides a vast array of information about the purported safety mechanisms the company offers.  It does not, however, mention the dangerous Defective Doors on the Sienna Minivans.

152.    The page on Toyota's main website describing the company's leadership further repeats its safety theme.  It states, "We build cars and trucks that help you and your family go places reliably and safely."

153.    In addition to its representations about Toyota vehicles generally, Toyota has centered its marketing on the Class Vehicles directly on their safety, reliability, and family friendliness.  Examples of Toyota's safety and reliability representations, from 2011 through the present, include the following.

154.    The brochures for the Class Vehicles are filled with page upon page of features represented as promoting safety, and Toyota's website is loaded with similar representations.  In the brochures for example, Toyota claims that "[a]t Toyota, safety is one of our top priorities," and touts the Sienna's "Star Safety System" which includes six features represented as designed to prevent collision.[90]  Such pages of the brochures also state: "At Toyota, safety is one of our top priorities. That's why we equipped Sienna with an array of active safety systems, to help keep you out of harm's way, and passive safety systems, to help protect you should a collision occur."[91]

155.    The brochures further state that:

> Our commitment to your family's well-being doesn't end with the active safety features found in the Star Safety System.™ Should a collision occur, Sienna's comprehensive set of seven standard airbags can help protect occupants in all three rows of seating. Sienna also offers a multitude of features, like available rain-sensing

---

[90] *See, e.g.*, Brochure for 2013 Toyota Sienna at p. 12.
[91] *Id.*

wipers, that you might not associate with safety but that can help ensure your overall peace of mind."[92]

156.    The 2013 brochures also state (and other class year brochures contain similar language):

> SEATBELTS
>
> Sienna features a 3-point Emergency Locking Retractor (ELR) seatbelt for the driver's seat and Automatic/Emergency Locking Retractors (ALR/ELR) for all passenger belts.
>
> SIDE IMPACT DOOR BEAMS
>
> Within each of Sienna's four doors are steel beams designed to help protect the occupants in the event of a side-impact collision.
>
> LATCH
>
> LATCH (Lower Anchors and Tethers for CHildren)  provides an added measure of safety for smaller family members.  LATCH includes lower anchors and tethers on outboard second row seats and the center seat of the third row.
>
> safetyconnect®
>
> Via Toyota's 24/7 call center, available Safety Connect® offers subscribers helpful features such as Emergency Assistance, Stolen Vehicle Locator, Roadside Assistance and Automatic Collision Notification. Safety Connect® also offers the reliability of embedded cellular and GPS technology.
>
> PRE-COLLISION SYSTEM (PCS)
>
> This available system uses radar to determine if a frontal collision is imminent, alerts the driver with visual and audible warnings, and automatically applies the brakes to help slow the vehicle and help reduce the impact energy.

Below is an image of this page as copied from the 2013 brochure.

---

[92] *Id.* at 14.





157.    While the motorized sliding door is not expressly listed among the above safety features, a car with doors that can open randomly while the vehicle is in motion ***is not a safe car***. This is a factor that would be extremely significant to consumers who are motivated to purchase Sienna Minivans because of its purported safety.

158.    Toyota's website also similarly promotes the safety of its Sienna Minivans.  It currently includes multiple photographs and descriptions touting the safety systems of the current model, and, on information and belief, at the times each new model was being sold, contained similar information about that model.  The following is a screenshot of a portion of the current Toyota Sienna Safety page:[93]

---

[93] https://www.toyota.com/sienna/sienna-features/#!/peace-of-mind



159.    Moreover, in Toyota's brochures and on its website for the Sienna, even pages that do not directly address safety, are filled with images of happy parents and children underscoring the message of safety that Toyota intends to convey.  In addition Toyota's most significant recent commercial campaign specifically for the Sienna Minivans, introduced in 2012 and still running, has been for the "Swagger Wagon," and is aimed directly at parents who want family transportation that has "swagger."  While the vehicles are promoted as esthetically pleasing, it is clear that the characters in the commercial are first and foremost, parents.[94]  That the marketing is family oriented again carries with it implications of safety.

160.    Moreover, the mere fact of loading a car with airbags and anti-collision systems represents to potential purchasers that it is a particularly safe car, even if a consumer does not read

---

[94] *See*, *e.g.*, video available at https://www.youtube.com/watch?v=ql-N3F1FhW4

a brochure, visit the website, or review other advertising materials.  It is people looking for safe vehicles who seek to buy Sienna Minivans, and that is as Toyota intends.

161.    In short, Toyota's safety advertising and messaging is false, because cars with doors that may open independently while the vehicle is in motion, that may close independently or close on children's fingers despite purported jam protection, or that are subject to a range of other jamming, freezing and breaking malfunctions, are unsafe.

## XI.    TOLLING OF THE STATUTE OF LIMITATIONS

### A.    Continuing Act Tolling

162.    Over a period of six years, Toyota continuously marketed and sold the dangerously defective Class Vehicles to unsuspecting customers.  It continuously represented these vehicles as safe, convenient and family-friendly.  By making these false representations, it committed a continuing wrong sufficient to render inapplicable any statute of limitations that Toyota might seek to apply.  Indeed, the Transportation Recall Enhancement, Accountability and Documentation ("TREAD") Act of 2000, 49 U.S.C. § 30118, specifically provides that:

> (c) A manufacturer of a motor vehicle or replacement equipment *shall notify the* Secretary by certified mail or electronic mail, *and the owners*, purchasers, and dealers of the vehicle or equipment as provided in section 30119(d) of this section [49 U.S.C. § 30119(d)], *if the manufacturer*--

> (1) *learns the vehicle or equipment contains a defect* **and** *decides in good faith that the defect is related to motor vehicle safety*; **or**

> (2)  decides in good faith that the vehicle or equipment does not comply with an applicable motor vehicle safety standard prescribed under this chapter …

163.    Pursuant to the above law, manufacturers are required to report information regarding customer complaints and warranty claims to NHTSA, and federal law imposes criminal penalties against manufacturers who fail to disclose known safety defects. Toyota owed a

continuing duty to Plaintiff and Class members, to disclose to any risks to life and limb that its products pose.  It continually breached that duty.

164.    Moreover, Toyota breached its duties to consumers by selling defective vehicles on an ongoing basis, year after year.

165.    It would be entirely unreasonable of Toyota to take the position that it did not, in fact, learn of the defect and that it was related to motor vehicle safety as soon as, or almost immediately after, it started selling the Class Vehicles.   At a minimum, it would not be credible of Toyota to argue that it did not know of the defect and the safety problems it caused, within three years of when it started selling the Class Vehicles.

166.    Toyota's knowledge is demonstrated by the host of complaints made by customers. Indeed, Toyota's knowledge is demonstrated, for example, Toyota's knowledge is further evidenced by the fact that, in the NHTSA complaints, many consumers actually reported contacting the company directly about the unintended opening problem and about other dangerous problems with the vehicles.  For example, consumers have stated: "Called customer service at Toyota to complain";[95] "[a] complaint was filed with the manufacturer and they advised the contact that a remedy would be available in March 2011; however, when the vehicle was taken to the dealer to be repaired the dealer informed the contact that the part was not available"**;**[96] "[w]hile driving approximately 40 mph, the rear driver side sliding door suddenly opened. … [and] ***the manufacturer was notified of the failure***";[97] and "***When I called Toyota Corporation*** their response was 'what do you want us to do about it?'"[98]

---

[95] NHTSA database, NHTSA ID No. 10371892, Post Date 12/21/2010.
[96] NHTSA database, NHTSA ID No. 10395795, Post Date 04/13/2011.
[97] NHTSA database, NHTSA ID No. 10694119, Post Date 03/13/2015.
[98] NHTSA database, NHTSA ID No. 10840430, Post Date 03/08/2016.

167.     Others made clear that they contacted Toyota's dealers, who in turn would have contacted Toyota about the problems they presented.  For example consumer complaints to NHTSA have included statements that: "[r]ecently, while attempting to stop the vehicle, the rear passenger side door opened. … [and] [s]he took the vehicle back to the dealer …"[99]; "when the vehicle was taken to the dealer to be repaired the dealer informed the contact that the part was not available,"[100]; "The door independently opened while the vehicle was in motion ... [and] [t]he vehicle was taken to the dealer who attempted to close the door when he noticed that the latch had broken," [101]and "my husband had to tie the door shut in order to take the vehicle to the dealer."[102] On information and belief, dealers report consumer complaints back to Toyota.

168.     As such, no Class members' claims can be time barred.

**B.     Fraudulent Concealment Tolling**

169.     Toyota had a duty to disclose to Plaintiff and the Class members the class: the true quality and nature of the Class Vehicles; that the Class Vehicles had defective power sliding doors; and that the Defective Doors require repairs, pose a safety concern, and reduce the intrinsic and resale value of the vehicles.

170.     This duty arose, inter alia, under the TREAD Act, 49 U.S.C. § 30118.

171.     Upon information and belief, Toyota has known, since at least 2007, of the risk that the doors in its Sienna Minivans would open or close independently, and about other problems even before.  Prior to installing the Defective Doors in Class Vehicles, Toyota knew or should have known that the doors were defective based on consumer complaints and prior problems.

---

[99] NHTSA database, NHTSA ID No. 10278954, Post Date 07/31/2009.
[100] NHTSA database, NHTSA ID No. 10395795, Post Date 04/13/2011.
[101] NHTSA database, NHTSA ID No. 10336699, Post Date 06/16/2010.
[102] NHTSA database, NHTSA ID No. 10683888, Post Date 02/17/2015.

172.    Although Toyota has *now* acknowledged to safety regulators that the Sienna Minivans' doors are defective, for years, Toyota did not fully investigate this serious issue and instead concealed the problem.

173.    It is reasonable to infer that Toyota's purpose in concealing the Defective Doors was to avoid litigation from masses of consumers.  It concealed the Defect, hoping to avoid mass action, until the flood of reports of problems with the doors became so great that Toyota's fear of individual suits for personal injuries that could occur when Defective Doors came open while Class Vehicles were in motion outweighed its fear of being sued in a class action over the Defective Doors.

174.    Any applicable statute of limitations has been tolled by Toyota's knowledge, active concealment, and denial of the facts alleged herein, which behavior was ongoing.

## C.    Discovery Rule Tolling

175.    The tolling doctrine was designed specifically for cases like this, where pertinent facts were concealed from plaintiffs.  Thus, for the following reasons, any statutes of limitations that might have otherwise applied have been tolled by the discovery rule with respect to all claims.

176.    Even through the exercise of reasonable diligence, Plaintiff and other Class members could not have discovered, prior to Toyota's issuance of the Safety Recall Notice in late December 2016, that Toyota was concealing and misrepresenting defect in its sliding rear doors and the risk that was posed by that defect.

177.    Plaintiff and the other Class members could not have reasonably discovered, and could not have known of facts that would have caused a reasonable person to suspect, that Toyota intentionally failed to report material information within its knowledge about a dangerous defect to consumers worldwide.

178.    As such, no potentially relevant statute of limitations should be applied.

### D.    Estoppel

179.    Toyota was under a continuous duty, including under the TREAD Act, 49 U.S.C. § 30118, to disclose to Plaintiff and the other members of the Class to disclose the facts that it knew about the vulnerabilities of the power sliding doors installed in the Class Vehicles.

180.    Toyota knowingly, affirmatively, and actively concealed the true nature, quality, and character of the power sliding doors of the Class Vehicles.

181.    Although Toyota had a duty, at all relevant times, to disclose to Plaintiff and the Class members that it had engaged in the deception and wrongdoing described in this Complaint, Toyota chose to continue installing Defective Doors that could come open independently while the vehicles were in motion in the Class Vehicles over a six year period.

182.    Thus, Toyota is estopped from relying on any statutes of limitations in defense of this action.

## XII.    CLASS ACTION ALLEGATIONS

183.    Pursuant to Federal Rule of Civil Procedure 23, Plaintiff brings this action individually and on behalf the following classes of similarly situated persons:

**Multi-State Consumer Protection Class**

The Multi-State Consumer Protection Class shall consist of all persons who purchased or leased in, or purchased or leased while residing in, one of the following states one or more 2011 through 2016 model year Toyota Sienna vehicles with power sliding doors: Alaska, Arkansas, California, Connecticut, Delaware, the District of Columbia, Florida, Hawaii, Illinois, Massachusetts, Michigan, Missouri, New Jersey, New York, Rhode Island, Vermont, Washington, Wisconsin, and any additional states which the Court determines to have sufficiently similar law to Connecticut without creating manageability issues.

**Nationwide Class**

The Nationwide Class shall consist of all persons who purchased or leased, anywhere in the United States, one or more 2011 through 2016 model year Toyota Sienna vehicles with power sliding doors.

**Connecticut Class**

The Connecticut Class shall consist of all persons who purchased or leased in Connecticut, or purchased or leased while residing in Connecticut, one or more 2011 through 2016 model year Toyota Sienna vehicles with power sliding doors.

**Numerosity and Ascertainability - Fed. R. Civ. P. 23(a)(1)**

184.    This action satisfies the requirements of Fed. R. Civ. P. 23(a)(1).  In the Safety Recall Notice, Toyota indicated that more than 744,000 Class Vehicles are subject to the recall. Thousands of purchasers reside or purchased in Connecticut and each other state in the United States.  Individual joinder of all Class members is impracticable.

185.    Each of the Classes is ascertainable because its members can be readily identified using registration records, sales records, production records, and other information kept by Toyota, or third parties in the usual course of business and within its control.  Indeed, most of the Class members could be identified by review of the list of people to whom Toyota sent the Safety Recall Notice.  Plaintiff anticipates providing appropriate notice to each Class member, in compliance with Fed. R. Civ. P. 23(c)(1)(2)(A) and/or (B), to be approved by the Court after class certification, or pursuant to court order under Fed. R. Civ. P. 23(d).

**Commonality and Predominance - Fed. R. Civ. P. 23(a)(2) and 23(b)(3)**

186.    This action satisfies the requirements of Fed. R. Civ. P. 23(a)(2) and 23(b)(3) because it involves common questions of law and fact and because these common questions predominate over any questions affecting only individual Class members.  These common include, without limitation, the following:

a.   Whether the defective power sliding doors render the Class Vehicles defective;

b.   Whether the Class Vehicles have suffered a diminution of value as a result of Defective Doors;

c.   When Toyota first learned that the power sliding doors in the Class Vehicles were defective;

d.   Whether Toyota had a duty to disclose to consumers that the power sliding doors in Class Vehicles were defective prior to the Safety Recall and if so, when;

e.   Whether Toyota omitted and failed to disclose material facts about the Class Vehicles;

f.   Whether Toyota's conduct tolls any or all applicable limitations periods by acts of fraudulent concealment, application of the discovery rule, or equitable estoppel;

g.   Whether Toyota misrepresented the Class Vehicles as safe;

h.   Whether Toyota engaged in unfair, deceptive, unlawful and/or fraudulent acts or practices in trade or commerce by failing to disclose that the Class Vehicles were designed, manufactured, and sold with Defective Doors;

i.   Whether Toyota's conduct, as alleged herein, was likely to mislead a reasonable consumer;

j.   Whether Toyota's statements, concealments and omissions regarding the Class Vehicles were material, in that a reasonable consumer could consider them important in purchasing, selling, maintaining, or operating such vehicles;

k.   Whether the Class Vehicles were unfit for the ordinary purposes for which they were used, in violation of the implied warranty of merchantability;

l.   Whether Plaintiff and the Classes are entitled to a declaratory judgment stating that the power sliding doors in the Class Vehicles are defective and/or not merchantable;

m.   Whether Toyota's unlawful, unfair, and/or deceptive practices harmed Plaintiff and the Classes;

n.   Whether Toyota has been unjustly enriched by its conduct;

o.   Whether Plaintiff and the Classes are entitled to equitable relief, including, but not limited to, a preliminary and/or permanent injunction;

    p.    Whether the classes are entitled to punative damages, and, if so, the amount of damages that is appropriate to punish and deter Toyota and to vindicate statutory and public policy; and

    q.    How such penalties should be most equitably distributed among Class members.

**Typicality - Fed. R. Civ. P. 23(a)(3)**

187.    This action satisfies the requirements of Fed. R. Civ. P. 23(a)(3) because Plaintiff's claims are typical of the claims of the Class members, and arise from the same course of conduct by Toyota.  The relief Plaintiff seeks is typical of the relief sought for the absent Class members.

**Adequate Representation - Fed. R. Civ. P. 23(a)(4)**

188.    Plaintiff will fairly and adequately represent and protect the interests of the Classes. Plaintiff has retained counsel with substantial experience in prosecuting consumer class actions, including actions involving defective products.

189.    Plaintiff and his counsel are committed to vigorously prosecuting this action and have the financial resources to do so.  Neither Plaintiff nor his counsel has interests adverse to those of the Classes.

**Superiority - Fed. R. Civ. P. 23(b)(2) and 23(b)(3)**

190.    This action satisfies the requirements of Fed. R. Civ. P. 23(b)(2) because Toyota has acted and refused to act on grounds generally applicable to each Class, thereby making appropriate final injunctive and/or corresponding declaratory relief with respect to each Class as a whole.

191.    This action satisfies the requirements of Fed. R. Civ. P. 23(b)(3) because a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

192.    Because the damages suffered by each individual Class member may be relatively small in comparison to the expense of litigation, the expense and burden of individual litigation

would make it very difficult or impossible for individual Class members to redress the wrongs done to each of them individually, such that most or all Class members would have no rational economic interest in individually controlling the prosecution of specific actions, and the burden imposed on the judicial system by individual litigation by even a small fraction of the Class would be enormous, making class adjudication the superior alternative under Fed. R. Civ. P. 23(b)(3)(A).

193.   The conduct of this action as a class action presents far fewer management difficulties, far better conserves judicial resources and the parties' resources, and far more effectively protects the rights of each Class member than would piecemeal litigation.  Compared to the expense, burdens, inconsistencies, economic infeasibility, and inefficiencies of individualized litigation, the challenges of managing this action as a class action are substantially outweighed by the benefits to the legitimate interests of the parties, the court, and the public of class treatment in this court, making class adjudication superior to other alternatives, under Fed. R. Civ. P. 23(b)(3)(D).

194.   Plaintiff is not aware of any obstacles likely to be encountered in the management of this action that would preclude its maintenance as a class action.  Rule 23 provides the Court with authority and flexibility to maximize the efficiencies and benefits of the class mechanism and reduce management challenges.   The Court may, on motion of Plaintiff or on its own determination, certify nationwide, statewide and/or multi-state classes for claims sharing common legal questions; utilize the provisions of Rule 23(c)(4) to certify any particular claims, issues, or common questions of fact or law for class-wide adjudication; certify and adjudicate bellwether class claims; and utilize Rule 23(c)(5) to divide any Class into subclasses.

195.   Class members expressly disclaim any recovery in this action for physical injury resulting from the Defective Doors without waiving their right to bring such claims in other actions

or dismissing such claims. However, Plaintiff is informed and believes that injuries suffered in crashes and other catastrophic physical events that occur as a result of the Defective Doors implicate the Class Vehicles, constitute evidence supporting various claims, including diminution of value, and are continuing to occur because of Toyota's delays and inaction regarding the commencement and completion of recalls. The increased risk of injury from the Defective Doors serves as an independent justification for the relief sought by Plaintiff and the Classes.

## XIII. CLAIMS FOR RELIEF

### COUNT I

**Violations of Connecticut General Statutes § 42-110a, *et seq*.,
The Connecticut Unfair Trade Practices Act ("CUTPA"), and Materially Identical State Consumer Protection Statutes
(On behalf of the Consumer Protection Class)**

196.     Plaintiff repeats and realleges paragraphs 1 to 195 as if fully set forth herein.

197.     Plaintiff, a consumer of the Sienna Minivans, brings this action individually and on behalf of the Consumer Protection Class.

198.     The foregoing acts, conduct and omissions of Toyota constitute unfair, unconscionable, deceptive or unlawful acts or business practices in violation of at least the following state consumer protection statutes:[103]

    a.  **Alaska Unfair Trade Practices and Consumer Protection Act**, Alaska Stat. § 45.50.471, *et seq*.;

    b.  **Arkansas Deceptive Trade Practices Act**, Ark. Code Ann. § 4-88-101, *et seq*.;

    c.  **California Consumer Legal Remedies Act,** Cal. Civ. Code § 1750, *et seq*., **California Unfair Competition Law,** Cal. Bus. & Prof. Code § 17200, *et seq*.;

---

[103] There is no material conflict between these state consumer protection statutes and the Connecticut Unfair Trade Practices Act, Connecticut General Statutes § 42-110a, *et seq*. ("CUTPA") because these statutes, like CUTPA, (1) do not require plaintiffs to show that unnamed class members relied on the defendants' misrepresentations; (2) do not require plaintiffs to allege scienter; and (3) permit plaintiffs to seek relief for violations of the statute on a class-wide basis.

d.  **Connecticut Unfair Trade Practices Act**, Conn. Gen. Stat. § 42-110a, *et seq.*;

e.  **Delaware Consumer Fraud Act**, Del. Code Ann. tit. 6, § 2511, *et seq.*;

f.  **District of Columbia Consumer Protection Procedures Act,** D.C. Code § 28-3901, *et seq.*;

g.  **Florida Deceptive and Unfair Trade Practices Act,** Fla. Stat. § 501.201, *et seq.*;

h.  **Hawaii Unfair and Deceptive Practices Act**, Hawaii Rev. Stat. § 480-1, *et seq.*;

i.  **Illinois Consumer Fraud and Deceptive Business Practices Act**, 815 Ill. Comp. Stat. § 505/1, *et seq.*;

j.  **Massachusetts Regulation of Business Practices for Consumers' Protection Act**, Mass. Gen. Laws Ann. ch. 93A, § 1 *et seq.*;

k.  **Michigan Consumer Protection Act,** Mich. Comp. Laws § 445.901 *et seq.*;

l.  **Missouri Merchandising Practices Act**, Mo. Rev. Stat. § 407.010, *et seq.*;

m.  **New Jersey Consumer Fraud Act**, N.J. Stat. Ann. § 56:8-1, *et seq.*;

n.  **New York Deceptive Acts and Practices Act**, N.Y. Gen. Bus. Law § 349, *et seq.*;

o.  **Rhode Island Unfair Trade Practices and Consumer Protection Act**, R.I. Gen. Laws § 6-13.1-1, *et seq.*;

p.  **Vermont Consumer Fraud Act**, Vt. Stat. Ann. tit. 9, § 2451, *et seq.*;

q.  **Washington Consumer Protection Act**, Wash. Rev. Code § 19.86.010, *et seq.*; and

r.  **Wisconsin Consumer Act,** Wis. Stat. Ann. § 100.18, *et seq.*

199.   The Connecticut Unfair Trade Practices Act ("CUTPA") provides: "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Conn. Gen. Stat. § 42-110b(a).

200.   Toyota is a "person" within the meaning of CUTPA, Conn. Gen. Stat. § 42-110a(3). At all relevant times, Toyota was acting in the conduct of trade or commerce as it advertises,

distributes, markets and sells the Sienna Minivans to consumers within this and each of the states listed above.

201.    At all relevant times, Toyota was prohibited by CUTPA, Conn. Gen. Stat. § 42-110a *et seq.*, from engaging in unfair, deceptive and/or misleading acts and/or practices in the conduct of any trade or commerce.

202.    Based on any of the conduct alleged in this Complaint, Toyota engaged in unfair and deceptive acts or practices in violation of Conn. Gen. Stat. § 42-110b.  In the course of its business, Toyota failed to disclose and actively concealed the dangers and risks posed by the Defective Doors and otherwise engaged in activities with a tendency or capacity to deceive.

203.    Toyota also engaged in unlawful trade practices by employing deception, deceptive acts or practices, misrepresentations or omissions of material facts when it knowingly advertised the Class Vehicles as being "safe" and suitable for consumers despite Toyota's knowledge that the power sliding doors in the Class Vehicles were defective.  For at least a decade, Toyota was aware that the power sliding doors in its Class Vehicles were prone to independently opening while the vehicle was being driven, as well as otherwise independently opening and/or closing, or becoming jammed.  The Defective Doors endangered the safety of passengers, many of whom were young children.  Despite this knowledge, Toyota marketed the Class Vehicles as "safe" vehicles and did not disclose to Plaintiff and the Consumer Protection Class that the power sliding doors were dangerously defective until after December 22, 2016.

204.    Safety is a critical feature for many purchasers of automobiles, especially automobiles marketed towards families with young children, Thus, Toyota's misrepresentations that the Class Vehicles were "safe," and omissions and misleading statements about the Defective Doors were material to reasonable consumers.

205.    Toyota's acts and practices offend public policy as established by statute.  Toyota violated the Motor Vehicle Safety Act, 49 U.S.C. § 30101 *et seq*. (the "Safety Act"), by failing to promptly disclose the existence of the Defective Doors to NHTSA and to the owners, purchasers and dealers of Toyota Vehicles.  *See* 49 U.S.C. § 30118(c).  In addition, Toyota failed to notify NHTSA of the Defective Doors within 5 working days after it was determined to be related to motor vehicle safety, as required by the Transportation Recall Enhancement, Accountability, and Documentation ("TREAD") Act and its implementing regulations.  *See* 49 CFR § 573.6(a) & (b).

206.    Toyota's acts and practices were immoral, unfair, unscrupulous, oppressive and unethical, especially insofar as these acts and practices exploited the motivation of Plaintiff and the Consumer Protection Class to ensure the safety of themselves and their passengers, including their minor children, and then placed them in physical danger.

207.    Toyota's acts and practices caused substantial injury to Plaintiff and Class members because: (a) they would not have purchased the Class Vehicles, or would not have purchased them on the same terms, if the true facts concerning the Defective Doors had been known; and (b) they paid a price premium due to Toyota's marketing and selling of  the Class Vehicles as "safe."  Meanwhile, unbeknownst to them, serious injury can result from ordinary use of the Class Vehicles.  Consumers have thus overpaid for the Class Vehicles, could not have reasonably avoided such injury and such injury is not outweighed by any countervailing benefits to consumers or competition.

208.    Toyota's unfair and/or deceptive practices directly, foreseeably, and proximately caused Plaintiff and the Consumer Protection Class to suffer an ascertainable loss, including overpaying for the Class Vehicles, being deprived of the use of the Class Vehicles for which they paid a premium but which are not fit for their ordinary purpose, and losing resale value.

209. This class action is specifically permitted by Conn. Gen. Stat. § 42-110g(b).

210. As a result of Toyota's violation of CUTPA, Plaintiff and the other Class members should be awarded damages, including punitive damages, in an amount to be determined at trial.

## COUNT II
### Breach of Express Warranty
### (On behalf of the Connecticut Class)

211. Plaintiff repeats and realleges paragraphs 1 to 195 as if fully set forth herein.

212. Plaintiff brings this claim individually and on behalf of the members of the Connecticut Class.

213. Toyota expressly warranted that the Class Vehicles were of high quality, were safe, and would work properly. It expressly warranted that the power sliding doors would make loading and unloading children and cargo and people easy. It also expressly warranted that it would repair and/or replace defects in material and/or workmanship free of charge while the vehicle was within warranty.

214. Plaintiff and members of the Connecticut Class relied on these express warranties when choosing to purchase or lease their Class Vehicles.

215. Toyota has breached these warranties because the Class Vehicles are not of high quality, are not safe, and do not work properly, insofar as the Vehicles are equipped with Defective Doors.

216. In addition, Toyota and members of the Connecticut Class have entered into certain written warranties. The basic warranty "covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota," and lasts for 36 months or 36,000 miles. This warranty, by its terms, provides that "[w]arranty coverage is automatically transferred at no cost to subsequent vehicle owners." Toyota also offers extended warranties which consumers

can purchase.  Toyota is and at all times has been therefore required to repair defects in the power sliding doors on the Class Vehicles.

217.    Toyota has breached this express warranty because it has failed to remedy the Defective Doors.

218.    Plaintiff and the Connecticut Class members relied on the warranties above, both about the condition of the Class Vehicles and the availability of repair, in making their decisions to purchase or lease the Class Vehicles.  Plaintiff and the Connecticut Class members have fulfilled all of their obligations under any contract with Toyota or have otherwise been excused from doing so by the breach herein.

219.    As a direct and proximate result of Toyota's false and misleading representations and warranties, Plaintiff and the Connecticut Class members suffered significant damages as described herein.

220.    As the manufacturers, suppliers, and/or sellers of the Sienna Minivans, Toyota had actual knowledge of the Defective Doors and the breach of warranties.  It issued the Safety Recall concerning the Defective Doors, acknowledging they were unsafe, and it knew it had made warranties to the contrary. It sent the Safety Recall Notice directly to Plaintiff and the Connecticut Class members, demonstrating that it knows there are people against whom its warranties have been breached.  It also had actual knowledge of the Defective Doors and its breaches of warranties due to a host of consistent consumer complaints and reports from its own dealers and field technicians.

221.    As a result of Toyota's breach of its express warranties, Plaintiff and the Connecticut Class members have been damaged in an amount to be determined at trial.

## COUNT III

### Breach of Implied Warranty
### (On behalf of the Connecticut Class)

222.    Plaintiff repeats and realleges paragraphs 1 to 195 as if fully set forth herein.

223.    Plaintiff brings this claim individually and on behalf of the Connecticut Class.

224.    Toyota, as the designer, manufacturer, marketer, distributor, and/or seller of Sienna Minivans impliedly warranted that the Class Vehicles, including their power sliding doors, were fit for their intended purpose in that they would be safe vehicles with functional power sliding doors.

225.    Toyota breached the warranty implied in the contract for the sale/lease of the Class Vehicles in that the Class Vehicles could not pass without objection in the trade under the contract description, the goods were not of fair, average quality within the description, and the Class Vehicles were unfit for their intended and ordinary purpose in that their power sliding doors did not function properly and exposed Class members to a risk that they might open or close independently.  As a result, Plaintiff and the Connecticut Class members did not receive the goods as impliedly warranted by Toyota to be merchantable.

226.    Plaintiff and members of the Connecticut Class are the intended beneficiaries of Toyota's implied warranties.

227.    In reliance upon Toyota's skill and judgment and the implied warranties, Plaintiff and members of the Connecticut Class purchased or leased the Class Vehicles for use as safe transportation with power sliding doors that would make loading and unloading the vehicles safer and easier.

228.    The Class Vehicles were not altered by Plaintiff or the members of the Connecticut Class.  Any changes to the vehicles made by members of the Connecticut Class constituted expected and ordinary use of a minivan.

229.    The Class Vehicles were defective when they left the exclusive control of Toyota. The built-in power sliding doors at all times pose an unreasonable risk of failing, exposing the passengers to serious bodily harm.

230.    The Class Vehicles were defectively designed and/or manufactured and unfit for their intended purpose, and Class members did not receive the goods as warranted.

231.    As a direct and proximate cause of Toyota's breach of the implied warranty, Plaintiff and members of the Connecticut Class have been damaged in an amount to be determined at trial.

### COUNT IV

### Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq*.
### (On behalf of the Nationwide Class)

232.    Plaintiff repeats and realleges paragraphs 1 to 195 as if fully set forth herein.

233.    Plaintiff brings this claim individually and on behalf of the Nationwide Class.

234.    The sale of the Class Vehicles was subject to the provisions and regulations of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*

235.    Plaintiff and the other Class members are "consumers" as defined by the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

236.    Toyota is a "supplier" and "warrantor" as defined by the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

237.    The Class Vehicles are "consumer products" as defined in the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

238.   The express warranty provided by Toyota is a "written warranty" as defined in the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6).  The Class Vehicles' implied warranties are covered under 15 U.S.C. § 2301(7).

239.   Toyota breached these warranties by selling the Class Vehicles with the Defective Doors, and not disclosing their defective condition, and by providing Class Vehicles not in merchantable condition and not fit for the ordinary purpose for which vehicles are used.

240.   Privity is not required in this case because Plaintiff and the other Nationwide Class members are intended third-party beneficiaries of contracts between Toyota and its dealers; specifically, they are the intended beneficiaries of Toyota's implied warranties.  The dealers were not intended to be the ultimate consumers of the vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the ultimate consumers only.  Finally, privity is also not required because the Class Vehicles are dangerous instrumentalities due to the aforementioned defects and nonconformities.

241.   Requiring an informal dispute settlement procedure, or affording Toyota a reasonable opportunity to cure its breach of written warranties, is unnecessary and futile.  At the time of sale or lease of each Class Vehicle, Toyota knew, should have known, or was reckless in not knowing, of its misrepresentations concerning the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the power sliding doors were defective.  Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement – whether under the Magnuson-Moss Warranty Act or otherwise – that Plaintiff resort to an informal dispute resolution procedure and/or

afford Toyota a reasonable opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

242.    Plaintiff and the other members of the Nationwide Class would suffer economic hardship if they returned their vehicles but did not receive the return of all payments made by them.  Because Toyota is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiff and the other Class members have not re-accepted their Class Vehicles by retaining them.

243.    Plaintiff and the other Nationwide Class members have been damaged as a result of the wrongful conduct complained of herein.  Said conduct continues and the harm or risk of harm is ongoing.

244.    As a result of Toyota's violations of the Magnuson-Moss Warranty Act, Plaintiff and the other members of the Nationwide Class have been damaged in an amount to be determined at trial.

## COUNT V

### Unjust Enrichment
### (On behalf of the Nationwide Class)

245.    Plaintiff repeats and realleges paragraphs 1 to 195 as if fully set  forth herein.

246.    This claim is brought in the alternative to Plaintiff's warranty claims.

247.    Plaintiff brings this claim individually and on behalf of the Nationwide Class.

248.    As a result of Toyota's material deceptive advertising, marketing and sale of the Class Vehicles, Toyota was enriched at the expense of Plaintiff and the Nationwide Class through their purchase of the vehicles, because the vehicles were not "safe" and did not work properly despite Toyota's representations to the contrary.

249.     Toyota had knowledge of the benefit it incurred at the expense of Plaintiff and members of the Nationwide Class, because Toyota knew that the Class Vehicles did not perform or operate as advertised.

250.     Under the circumstances, it would be against equity and good conscience to permit Toyota to retain the ill-gotten benefits it received from Plaintiff and the Nationwide Class as the result of its deceptive marketing and advertising practices.  Thus, it would unjust and inequitable for Toyota to retain the benefit without restitution to Plaintiff and the Nationwide Class.

251.     Plaintiff and the Class members do not have an adequate remedy at law.

## XIV.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all other Class members, respectfully requests that the Court enter an Order:

a.      Certifying the proposed Classes, designating Plaintiff as the named representative of the Classes, designating the undersigned as Class Counsel, and making such further orders for the protection of Class members as the Court deems appropriate, under Federal Rule of Civil Procedure 23;

b.      Declaring that the power sliding doors in Class Vehicles are defective;

c.      Enjoining Toyota to desist from further deceptive distribution, sales, and lease practices with respect to the Class Vehicles, and such other injunctive relief that the Court deems just and proper;

d.      Awarding to Plaintiff and members of the proposed Classes compensatory, exemplary, and punitive remedies, damages and statutory penalties, including interest, in an amount to be proven at trial;

e.      Awarding Plaintiff and each member of the proposed Classes the return of the purchase price of his or her Class Vehicle, with interest from the time it was paid;

f.      Establishing a Toyota-funded program, using transparent, consistent, and reasonable protocols, under which out-of-pocket and loss-of-use expenses and damages claims associated with the Defective Doors in Plaintiff's and Class members' Class Vehicles, can be made and paid, such that Toyota, not the Class members, absorb the losses and expenses fairly traceable to the recall of the vehicles and correction of the Defective Doors;

g.      Declaring that Toyota must disgorge, for the benefit of Plaintiff and members of the Proposed Classes, all or part of the ill-gotten profits it received from the sale or lease of the Class Vehicles, or make full restitution to Plaintiff and Class members;

h.      Awarding attorneys' fees and costs, as allowed by law;

i.      Awarding prejudgment and post judgment interest, as provided by law;

j.      Providing leave to amend this Complaint to conform to the evidence produced at trial; and

k.      Such other relief as may be appropriate under the circumstances.

## XV.   DEMAND FOR JURY TRIAL

252.    Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a jury trial as to all issues triable by a jury.

Dated: June 30, 2017

Respectfully submitted,

THE PLAINTIFF
NED SIMERLEIN

By: /s/ David A. Slossberg

**HURWITZ SAGARIN SLOSSBERG
& KNUFF, LLC**
David A. Slossberg (ct13116)
Jeffrey P. Nichols (ct29547)
147 North Broad Street
Milford, CT 06460
Tel: 203-877-8000
Fax: 203-878-9800
dslossberg@hssklaw.com
jnichols@hssklaw.com

**WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP**
Demet Basar
Kate McGuire
Lydia Keaney Reynolds
270 Madison Ave.
New York, New York 10016
Tel.: (212) 545-4600
Fax: (212) 686-0114
basar@whafh.com
mcguire@whafh.com
reynolds@whafh.com