# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| NED SIMERLEIN, JAMES ECKHOFF, MARICEL LOPEZ, CRAIG KAISER, JOHN F. PRENDERGAST, RAYMOND and ROSARIO ALVAREZ, KAREN EASON, JENNIFER SOWERS, JENNIFER FRANKLIN, JORDAN AMRANI, CRYSTAL GILLESPIE, MELISSA STALKER, DILLEN STEEBY, PAULA McMILLIN, JOSEPH C. HARP Jr., and JAMES and MELISSA JUGO TINNEY, individually and on behalf of all others similarly situated, | Case No. 3:17-cv-01091-VAB |
| Plaintiffs, | |
| v. | |
| TOYOTA MOTOR CORPORATION, TOYOTA MOTOR NORTH AMERICA, INC., TOYOTA MOTOR SALES, USA, INC., TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA, INC., and TOYOTA MOTOR MANUFACTURING, INDIANA, INC., | |
| Defendants. | |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS TO THE CLASS REPRESENTATIVES

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .............................................................................................. ii

I.    INTRODUCTION .................................................................................................1

II.   BACKGROUND ...................................................................................................2

      A.    Procedural History ....................................................................................2

      B.    Informal and Confirmatory Discovery.......................................................5

      C.    Settlement .................................................................................................5

III.  ARGUMENT ........................................................................................................7

      A.    The Proposed Fee Request Is Fair and Reasonable. ...................................7

            1.    The Time and Labor Expended by Counsel ....................................9

            2.    The Magnitude and Complexities of the Litigation ......................10

            3.    The Risks of the Litigation ...........................................................11

            4.    The Quality of Representation .......................................................13

            5.    The Requested Fee in Relation to the Settlement ........................14

            6.    Reaction of the Class ...................................................................15

            7.    Public Policy Considerations .......................................................16

      B.    The Fee Request Is Reasonable when "Cross Checked" against Class
            Counsel's Lodestar.................................................................................17

      C.    The Court Should Grant Class Counsel's Request for Reimbursement of
            Expenses. ...............................................................................................19

      D.    The Court Should Approve the Requested Service Awards to the Class
            Representatives. ......................................................................................20

IV.   CONCLUSION....................................................................................................21

# TABLE OF AUTHORITIES

**Cases**                                                                   **Page(s)**

*Asare v. Change Grp. N.Y., Inc.*,
  2013 WL 6144764 (S.D.N.Y. Nov. 15, 2013) ...................................................................11

*Becher v. Long Island Lighting Co.*,
  64 F. Supp. 2d 174 (E.D.N.Y. 1999) ...........................................................................15

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
  258 F. Supp. 2d 254 (S.D.N.Y. 2003) ..........................................................................15

*Cassese v. Williams*,
  503 Fed. App'x 55 (2d Cir. 2012) .................................................................................16

*Cholakyan v. Mercedes-Benz USA, LLC*,
  281 F.R.D. 534 (C.D. Cal. 2012) ..................................................................................12

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013) ........................................................................................................12

*CourAcevedo v. Workfit Med. LLC*,
  187 F. Supp. 3d 370 (W.D.N.Y. May 20, 2016) ...........................................................15

*Daigle v. Ford Motor Co.*,
  2012 WL 3113854 (D. Minn. July 31, 2012) ...............................................................12

*deMunecas v. Bold Food, LLC*,
  2010 WL 3322580 (S.D.N.Y. Aug. 23, 2010) .........................................................15, 17

*Dornberger v. Metropolitan Life Insurance Co.*,
  203 F.R.D. 118 (S.D.N.Y. 2001) ..................................................................................21

*Edwards v. N. Am. Power & Gas, LLC*,
  2018 WL 3715273 (D. Conn. Aug. 3, 2018) ......................................................8, 12, 17, 21

*Ellman v. Grandma Lee's Inc.*,
  1986 WL 53400 (E.D.N.Y. May 28, 1986) ..................................................................17

*Farbotko v. Clinton Cty.*,
  433 F.3d 204 (2d Cir. 2005).........................................................................................19

*In re Fine Paper Antitrust Litig.*,
  751 F.2d 562 (3d Cir. 1984)..........................................................................................18

*Fleisher v. Phoenix Life Ins. Co.*,
  2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015).............................................................19

*In re Ford Motor Co. E-350 Van Prods. Liab. Litig.*,
  2012 WL 379944 (D.N.J. Feb. 6, 2012) .............................................................12

*Fox v. Vice*,
  563 U.S. 826 (2011)..........................................................................................7

*Frank v. Eastman Kodak Co.*,
  228 F.R.D. 174 (W.D.N.Y. 2005)........................................................................15

*Gisbrecht v. Barnhart*,
  535 U.S. 789 (2002)..........................................................................................8

*In re Glob. Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) .........................................................................14

*Goldberger v. Integrated Resources, Inc.*,
  209 F.3d 43 (2d Cir. 2000)...................................................................... *passim*

*Hensley v. Eckherhard*,
  461 U.S. 424 (1983)..........................................................................................8

*Hughes v. The Ester C Co., NBTY, Inc.*,
  320 F.R.D. 337 (E.D.N.Y. 2017) ........................................................................12

*Jermyn v. Best Buy Stores, L.P.*,
  2012 WL 2505644 (S.D.N.Y. June 27, 2012) .........................................8, 18, 20

*Kemp-Delisser v. Saint Francis Hosp. & Med. Ctr*,
  2016 WL 6542707 (D. Conn. Nov. 3, 2016) ................................................ *passim*

*Kiefer v. Moran Foods, LLC*,
  2014 WL 3882504 (D. Conn. July 31, 2014) .................................................15, 20

*LeBlanc-Sternberg v. Fletcher*,
  143 F.3d 748 (2d Cir. 1998)...............................................................................20

*Luppino v. Mercedes Benz USA*,
  718 F. App'x 143 (3d Cir. 2017) ........................................................................12

*Malchman v. Davis*,
  761 F.2d 893 (2d Cir. 1985)................................................................................8

*Maley v. Del Global Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002)..............................................................15, 17

*McBean v. City of New York*,
  233 F.R.D. 377 (S.D.N.Y. 2006) ..........................................................................8

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F. 3d 454 (9th Cir. 2000) ............................................22

*Missouri v. Jenkins*,
   491 U.S. 274 (1989)............................................................19

*Nat. Res. Def. Council, Inc. v. Fox*,
   2001 WL 815531 (S.D.N.Y. July 19, 2001) ..........................8

*Nguyen v. Nissan N. Am., Inc.*,
   2018 WL 1831857 (N.D. Cal. Apr. 9, 2018) .......................12

*In re Nissan Radiator/Transmission Cooler Litig.*,
   2013 WL 4080946 (S.D.N.Y. May 30, 2013) ......................10

*Oscar v. BMW of N. Am., LLC*,
   2012 WL 2359964 (S.D.N.Y. June 19, 2012) ......................12

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
   985 F. Supp. 410 (S.D.N.Y. 1997) ....................................16

*Rodriguez v. City of New York*,
   721 F. Supp. 2d 148 (E.D.N.Y. 2010) .................................7

*Singleton v. Fifth Generation, Inc.*,
   2017 WL 5001444 (N.D.N.Y. Sept. 27, 2017) ...................12

*Spann v. AOL Time Warner*,
   2005 WL 1330937 (S.D.N.Y. June 7, 2005) .......................17

*Spence v. Ellis*,
   2012 WL 7660124 (E.D.N.Y. Dec. 19, 2012) ......................18

*In re Sturm, Ruger, & Co., Inc. Sec. Litig.*,
   2012 WL 3589610 (D. Conn. Aug. 20, 2012) ......................18

*Tomassini v. FCA US LLC*,
   326 F.R.D. 375 (N.D.N.Y. 2018) .......................................12

*In re Warner Communications Sec. Litig.*,
   618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986)..................................15

*Warren v. Xerox Corp.*,
   2008 WL 4371367 (E.D.N.Y. Sept. 19, 2008) ...................15

## Other Authorities

Federal Rule of Civil Procedure 23(h)...................................................1, 7, 20

Rule 9(b) ....................................................................................................................................4

Rule 26(f) ..................................................................................................................................4

Plaintiffs[1] respectfully submit this memorandum of law in support of their motion, pursuant to Federal Rule of Civil Procedure 23(h), for an award of attorneys' fees in the amount of $6,500,000; for reimbursement of $370,972.29 in unreimbursed litigation expenses that were reasonably and necessarily incurred in prosecuting and resolving the Action; and for $2,500 to be awarded to the Class Representatives[2] in this action in recognition of their contributions to the successful prosecution of this case. Defendants Toyota Motor Corporation ("TMC"), Toyota Motor North America, Inc. ("TMNA"), Toyota Motor Sales, USA, Inc. ("TMS"), Toyota Motor Engineering & Manufacturing North America, Inc. ("TEMA") and Toyota Motor Manufacturing, Indiana, Inc. ("TMMI") ("Toyota" or "Defendants") do not oppose the Motion.

## I.      INTRODUCTION

The proposed Settlement represents a very favorable result for the Class. The Settlement establishes a "Customer Confidence Program" under which Class Members are entitled to a free inspection of their Subject Vehicles' sliding doors by an authorized Toyota dealer within one year of the final approval of the Settlement. If the inspection uncovers a problem with the vehicles' sliding doors' cable sub-assembly, center hinge assembly, fuel door pin and fuel door hinge, or front or rear lock assemblies (the "Covered Components"), Toyota will provide a repair free of charge. Class Members are also entitled to prospective coverage for such repairs for a period of ten years from the first use of the vehicle. Class Members may also submit claims to recover out-of-pocket expenses for repairs done on the Covered Components prior to the Initial Notice Date.

---

[1] Plaintiffs are: Ned Simerlein, James Eckhoff, Maricel Lopez, Craig Kaiser, John Prendergast, Raymond and Rosario Alvarez, Karen Eason, Jennifer Sowers, Jennifer Franklin, Jordan Amrani, Crystal Gillespie, Melissa Stalker, Dillen Steeby, Paula McMillin, Joseph C. Harp Jr., and James and Melissa Jugo Tinney. Second Amended Class Action Complaint ("Second Amended Complaint" or "SAC"), ¶¶18-68. Citations in the form of "¶__" are to the Second Amended Complaint.

[2] A copy of the Settlement Agreement (cited as "SA") was filed with the Court on December 11, 2018 together with Plaintiffs' Motion for Preliminary Approval. ECF 85. Unless otherwise indicated, capitalized terms have the meanings given to them in the Settlement Agreement. *See* SA, § II.

This significant recovery was obtained without the years of protracted litigation typical for a complex class action case, through the skill and effective advocacy of Plaintiffs' Counsel. The Settlement has been preliminarily approved, and a final fairness hearing has been scheduled by the Court for June 4, 2019. ECF 107.

In light of the recovery obtained, the time and effort devoted to this case by Plaintiffs' Counsel, the skill and expertise required, and the risks that counsel undertook, Plaintiffs' fee request is eminently appropriate. As discussed below, the $6.5 million fee was negotiated after the other material terms of the settlement had already been agreed upon by the Parties and will not reduce what Defendants must provide to Class Members. It is well within the range of fees that courts in this Circuit and others have awarded in similar class actions. The requested fee represents a reasonable multiplier of 1.68 compared to Plaintiffs' Counsel's lodestar. This request is fundamentally supported by the case law in this Circuit and analogous class actions.

In addition, Plaintiffs request reimbursement of Plaintiffs' Counsel's out-of-pocket expenses, which were reasonable and necessary to protect the interests of the Class in this litigation. Finally, Plaintiffs request a service award for the Class Representatives for their time and effort devoted to this action on behalf of the Class. As with Plaintiffs' other requests, this request is also supported by applicable case law.

## II.      BACKGROUND

### A.      Procedural History

On June 30, 2017, Plaintiff Simerlein filed this Action asserting class claims under Connecticut Unfair Trade Practices Act ("CUTPA") and the consumer protection statutes of various other states, express and implied warranty claims, a claim under the Magnuson-Moss Warranty Act on behalf of a proposed nationwide class, and unjust enrichment arising from the manufacture and sale of 2011-2016 Toyota Sienna minivans with allegedly defective doors. ECF

1. On June 23, 2017, the *Combs/Franklin* Plaintiffs filed the Related Action in the United States District Court for the Central District of California. The *Combs/Franklin* Plaintiffs asserted class claims under various states' consumer protection statutes, express and implied warranty claims, a claim under the Magnuson-Moss Warranty Act on behalf of a proposed nationwide class, fraudulent omission, and an unjust enrichment claim arising from the manufacture and sale of 2011-2017 Toyota Sienna minivans with allegedly defective doors.

In both actions, Plaintiffs alleged that the power sliding doors of the Siennas are defective and that Toyota knew of serious problems with their rear power sliding doors, yet misleadingly marketed Siennas as safe vehicles.   Both actions were filed following independent factual investigations of the case and evaluations of all pertinent legal issues conducted by the *Simerlein* and *Combs/Franklin* Plaintiffs' respective counsel.

On October 6, 2017, amended complaints were filed in both the *Simerlein* and *Combs/Franklin* actions.   The *Simerlein* amended complaint added named plaintiffs James Eckhoff, Maricel Lopez, Craig Kaiser, and John F. Prendergast, added allegations about the nature and extent of the problems with the sliding power doors and the state law claims of the additional plaintiffs, and extended the proposed class to include owners of model year 2017 Siennas (ECF 36).  The *Combs/Franklin* amended complaint added Jennifer Franklin, Jordan Amrani, Dillen Steeby, and Paula McMillin as plaintiffs.

On December 4, 2017, the *Simerlein* Defendants filed their motion to dismiss the amended complaint, contending this Court lacked jurisdiction over any claims brought on behalf of non-Connecticut Plaintiffs Eckhoff, Lopez, Kaiser and Prendergast. The *Simerlein* Defendants also argued that Plaintiff Simerlein's CUTPA claim did not meet the requisite pleading standards and that his other state law claims were not well-pled. Plaintiffs filed their opposition to the motion to

dismiss on January 22, 2018, and, on February 21, 2018, the *Simerlein* Defendants filed their reply in further support of their motion. Plaintiffs subsequently moved to strike portions of the *Simerlein* Defendants' reply or, in the alternative, leave to file a sur-reply. The *Simerlein* Defendants opposed the motion. The Court granted the *Simerlein* Plaintiffs' motion to file a sur-reply on August 1, 2018, and the *Simerlein* Plaintiffs filed their sur-reply the same day. The *Simerlein* Defendants' motion to dismiss is fully briefed.

On December 20, 2017, the *Simerlein* parties submitted a joint Rule 26(f) Report. ECF 46. On January 12, 2018, the Court entered a Scheduling Order governing this Action. ECF 51.

On January 16, 2018, the *Combs/Franklin* Plaintiffs filed their second amended complaint naming Raymond and Rosario Alvarez, Karen Eason, and Jennifer Sowers as additional plaintiffs and removing Tonya Combs as a plaintiff. Each of the amended complaints asserted state law claims on behalf of the new plaintiffs and included additional detailed factual allegations.  On February 20, 2018, the *Combs/Franklin* Defendants filed a motion to dismiss the second amended complaint, arguing that: the *Combs/Franklin* Plaintiffs had not met the pleading requirements of Rule 9(b) for claims, including their statutory consumer claims, that sounded in fraud; that the warranty claims failed to allege a breach and were time-barred; and that all other claims alleged in the action lacked necessary factual and/or legal foundation. The *Combs/Franklin* Plaintiffs filed their opposition to that motion to dismiss on April 20, 2018, and on May 25, 2018, Toyota filed its reply in further support of the motion. The motion is fully briefed.

Plaintiffs, with the goal of obtaining immediate benefits for the Class, and Defendants began to explore the possibility of a potential settlement during motion practice. As settlement negotiations advanced, the Parties in both this Action and the Related Action sought and were granted adjournments of the scheduled hearings on the pending motions to dismiss in their actions.

4

On December 11, 2018, the Plaintiffs filed the Second Amended Complaint adding the *Combs/Franklin* Plaintiffs as additional plaintiffs and asserting all Plaintiffs' claims for relief.[3]

### B.     Informal and Confirmatory Discovery

Shortly after the filing of the two actions, the Parties began to engage in what turned out to be extensive informal and confirmatory discovery. Toyota produced over 100,000 pages of internal Toyota documents on a rolling basis, which Class Counsel reviewed and analyzed. Class Counsel consulted with their own engineering experts about the technical information in these documents. As part of their informal and confirmatory discovery, Class Counsel also interviewed a Toyota engineer who is knowledgeable about the Sienna vehicles and the Covered Components. In order to evaluate and supplement the discovery received from Toyota, Class Counsel conducted their own contemporaneous investigation of the potential defects of the sliding doors, consulted with their experts, and purchased two exemplar Siennas whose doors were thoroughly inspected by independent automotive engineers. The information Class Counsel obtained during this rigorous investigation allowed them to meaningfully assess Toyota's proposals for addressing the problems with the operations of the Subject Vehicles' sliding doors.

### C.     Settlement

Armed with the informal discovery that was being conducted, the Parties conferred and agreed to attempt to reach early resolution of Plaintiffs' claims even while Toyota's motions to dismiss were being vigorously litigated. These discussions were prompted by the Parties' desire to avoid the burden, expense, and uncertainty of continued litigation and to settle any and all claims that have been or could have been asserted against Defendants arising out of the allegedly defective power sliding doors. In the initial stages of the discussions, the Parties retained Patrick A. Juneau

---

[3] On December 18, 2018, the court in the Related Action pending in the United States District Court for the Central District of California, stayed the action pending final approval of the proposed Settlement.

to serve as a neutral third-party mediator. Subsequently, during the course of the negotiations among Counsel, Class Counsel, in consultation with their independent automotive engineering experts, were able to meaningfully assess the reasons for the reported malfunctioning of the doors. Class Counsel and Toyota's counsel had multiple in-person meetings, which often required long distance travel by counsel for the *Combs/Franklin* Plaintiffs, and, as negotiations intensified, frequent lengthy conference calls for the Parties to exchange their views concerning the settlement terms then under discussion. Numerous drafts of the Settlement Agreement were exchanged, with alterations being painstakingly negotiated and refined before a final agreement could be reached. Notably, the Parties did not negotiate fees, expenses, or Class Representative service awards until agreement on the substantive terms of the Settlement had already been reached.

The Parties finalized all of the terms and conditions of the Settlement, which was executed on December 10, 2018 and submitted to this Court the day after on December 11, 2018 along with a Motion for Preliminary Approval. ECF 84. The Court granted Preliminary Approval on January 12, 2019. ECF 107. This Order gave preliminary approval to the Settlement, preliminarily certified the Class, appointed Plaintiffs as Class Representatives and Class Counsel as counsel for the Settlement Class, approved the form and method of providing notice to the Class, and set a date for the final approval hearing.

In accordance with the Preliminary Approval Order, notice of the Settlement was distributed in several different ways pursuant to the court-approved Notice Program. The approved Direct Mail Notice was sent by first-class mail on a rolling basis beginning on March 1, 2019 to each person within the Settlement Class who could be identified based on data provided by IHS Automotive, Driven by Polk. Declaration of Jeanne C. Finegan, ¶¶ 13-19 (submitted contemporaneously herewith in connection with Plaintiffs' motion for final approval of settlement).

6

Notice of the ~~s~~Settlement was also distributed via a number of publication, social media, and Internet channels. *Id.* at ¶¶ 21-37. In addition, the Long Form Notice of the Settlement and other key documents from this litigation, including the Motion for Preliminary Approval and supporting materials, were published on the official settlement website at www.toyotasiennadoorsettlement.com. *Id.* at ¶¶ 38-39. The Long Form Notice specifically described the provisions of the Settlement related to this motion:

> The law firms that worked on this Action and the Related Action will ask the Court for an award of attorneys' fees in the amount of $6,500,000.00 and for reimbursement of their out-of-pocket costs and expenses in an amount not to exceed $500,000.00.
>
> Class Counsel will also ask the Court to award each of the Class Representatives incentive awards in the amount of $2,500.00 for the time and effort each spent representing Class Members. This amount will be included in the attorneys' out-of-pocket costs and expenses.

Long Form Notice, ECF 110-1, at 15-16. The May 3, 2019 deadline for filing objections has passed; two objections were filed, only one of which objected to the proposed award of attorneys' fees. ECF 120 at 5-7.

## III.    ARGUMENT

### A.    The Proposed Fee Request Is Fair and Reasonable.

Federal Rule of Civil Procedure 23(h) specifically provides that a court may award reasonable attorney's fees and nontaxable costs in a class action that are authorized by law or by the parties' agreement. *Rodriguez v. City of New York*, 721 F. Supp. 2d 148, 151 (E.D.N.Y. 2010). As the Supreme Court has repeatedly emphasized, the determination of fees "should not result in a second major litigation." *Fox v. Vice*, 563 U.S. 826, 838 (2011) (quoting *Hensley v. Eckherhard*, 461 U.S. 424, 437 (1983)). To avoid this result, the parties themselves are encouraged to reach agreement on the amount of a fee. *See, e.g.*, *Hensley*, 461 U.S. at 437 ("Ideally, . . . litigants will settle the amount of a fee."); *Gisbrecht v. Barnhart*, 535 U.S. 789, 801-02 (2002) (same); *see also*

*Nat. Res. Def. Council, Inc. v. Fox*, 2001 WL 815531, at *4 (S.D.N.Y. July 19, 2001) (citing *Hensley* and stating, "[n]eedless to say, such an approach has been encouraged by and met with the approval of the courts."). As the Second Circuit has noted, "with the increasingly heavy burden upon the courts, settlements of disputes must be encouraged. Absent special circumstances . . . the negotiation of attorneys' fees cannot be excluded from this principle." *Malchman v. Davis*, 761 F.2d 893, 905 (2d Cir. 1985).

Where, as here, the agreed fee is to be paid by the defendants rather than from a common settlement fund, and will not reduce the benefit of the Settlement to Class Members, "'the Court's fiduciary role in overseeing the award is greatly reduced'" because "'the danger of conflicts of interest between attorneys and class members is diminished.'" *Kemp-Delisser v. Saint Francis Hosp. & Med. Ctr*, 2016 WL 6542707, at *14 (D. Conn. Nov. 3, 2016) (Bolden, J.) (quoting *Jermyn v. Best Buy Stores, L.P.*, 2012 WL 2505644, at *9 (S.D.N.Y. June 27, 2012) (internal quotations omitted)); *see also McBean v. City of New York*, 233 F.R.D. 377, 392 (S.D.N.Y. 2006)). This is especially true where attorneys' fees were not negotiated until after the material terms of the settlement were already agreed, as also happened here. *See Kemp-Delisser*, 2016 WL 6542707, at *14 (citing *Blessing v. Sirius XM Radio Inc.*, 507 F. App'x 1, 4 (2d Cir. 2012)).

In assessing the reasonableness of agreed fees, courts in this Circuit have looked to the factors laid out in *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 (2d Cir. 2000). *See, Edwards v. N. Am. Power & Gas, LLC,* 2018 WL 3715273, at *14 (D. Conn. Aug. 3, 2018) (Bolden, J.); *Kemp-Delisser*, 2016 WL 6542707, at *14; *Jermyn*, 2012 WL 2505644, at *9; *Sony SXRD*, 2008 WL 1956267, at *16; *Thompson*, 216 F.R.D. at 71. These factors are: (1) The time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement;

and (6) public policy considerations. *Goldberger*, 209 F.3d at 50. A review of those factors clearly demonstrates that the requested award of $6,500,000 in attorneys' fees is fair and reasonable.

### 1.      The Time and Labor Expended by Counsel

The first *Goldberger* factor requires consideration of the time and labor expended by Plaintiffs' Counsel in this case. *Goldberger*, 209 F.3d at 50. Given the significant time and resources expended by Plaintiffs' Counsel in litigating this matter, this factor strongly supports approval of the fee request.

As described above and in the Joint Declaration of Demet Basar, W. Daniel "Dee" Miles III, and Adam J. Levitt, ECF 86 ¶¶ 9-31, Class Counsel dedicated considerable time and effort into investigating the claims at issue in the case, crafting the complaints, analyzing the arguments presented in Defendants' motions to dismiss, reviewing numerous relevant documents, retaining and working with engineering experts, and negotiating the Settlement Agreement. While Class Counsel worked efficiently and resolved the case at an early stage, this extremely favorable resolution would not have been possible without the careful work that went into the case at the outset. In total, Plaintiffs' Counsel have devoted over 6,000 hours to this case through April 30, 2019.

Indeed, it is important to note that even if the Court grants final approval of the Settlement, Class Counsel will continue to expend time and resources overseeing the Settlement administration, assisting Class Members, and tending to any other issues that may arise related to the Settlement. *See Kemp-Delisser*, 2016 WL 6542707, at *15 ("'Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward'") (quoting *deMunecas v. Bold Food, LLC*, 2010 WL 3322580, at *10 (S.D.N.Y. Aug. 23, 2010)).

In view of the time and labor expended on this case by Class Counsel to date, and the additional time that will be spent shepherding the administration of the Settlement in the future, the requested fee is fair and reasonable.

### 2.     The Magnitude and Complexities of the Litigation

The second *Goldberger* factor requires consideration of the magnitude and complexities Class Counsel faced in litigating this case. *Goldberger*, 209 F.3d at 50. This factor also supports the approval of Plaintiff's fee request.

By its very nature, automotive defect litigation presents complex factual and legal issues which must be navigated by the parties.  Counsel for all Parties engaged in extensive briefing consisting of 160 pages for Toyota's motions to dismiss covering 61 causes of action on behalf of 18 Plaintiffs from 13 states seeking to represent both nationwide and statewide classes. The *Simerlein* Defendants' motion to dismiss most of the claims in this Action on jurisdictional grounds required extensive research and briefing by the *Simerlein* Plaintiffs involving complex legal analysis against a backdrop of a rapidly evolving body of law. *See, e.g.*, ECF 45, 53, 58, 59, 60, 64.  *See Kemp-Delisser*, 2016 WL 6542707, at *16 (case was "complex and risky to litigate, given that it concerns an unsettled question of law…").  The Parties also engaged in highly technical discovery and expert work concerning the alleged defects in the Sienna power doors. Thus, this case presented a myriad of challenges rarely confronted in a typical consumer case. *See In re Nissan Radiator/Transmission Cooler Litig.*, 2013 WL 4080946 (S.D.N.Y. May 30, 2013) (finding in a "nationwide class action involving an alleged [automotive] defect" that "[t]he complexity and magnitude of the litigation weigh in favor of the reasonableness of the award sought").

All Parties spent significant time and resources presenting such complex issues to the Court in advocating their clients' interests. The quality of the proposed Settlement reflects Class

Counsel's ability to effectively frame and present difficult and complex issues, as well as Class Counsel's vigorous prosecution of the case.

### 3.    The Risks of the Litigation

*Goldberger* factor number three analyzes the risk of litigation, and is "perhaps the foremost factor to be considered in determining the award of appropriate attorneys' fees." *Asare v. Change Grp. N.Y., Inc.*, 2013 WL 6144764, at *20 (S.D.N.Y. Nov. 15, 2013) (internal quotation omitted). "After all, 'despite the most vigorous and competent of efforts, success is never guaranteed.'" *Kemp-Delisser*, 2016 WL 6542707, at *16 (quoting *Grinnell*, 495 F.2d at 471).   In considering this factor, "litigation risk must be measured as of when the case is filed." *Goldberger*, 209 F.3d at 55. A review of the significant risk taken on by Class Counsel in this matter clearly satisfies this factor.

The hurdles that Plaintiffs faced at the time of filing were significant, as demonstrated by the hard-fought litigation on the still-pending motions to dismiss in this and the Related Action. While Plaintiffs are confident in their positions, the motions have yet to be decided, and Toyota may succeed in securing the dismissal of some or all of Plaintiffs' claims.  Moreover, allegations of product defects like those asserted here would have required expert showings on whether the doors or some of their parts are defective, whether the alleged defects are present in all of the Subject Vehicles, whether the defects pose an unreasonable risk of harm, and the existence and quantum of damages.  As this Court has recognized, reliance on expert testimony "often increases the risk that a jury may not find liability or would limit damages." *Edwards*, 2018 WL 3715273, at *14 (granting final approval).

Plaintiffs also faced significant risk in securing certification of a nationwide class or state-wide classes. There would surely have been a battle of the experts with respect to Plaintiffs' damages theories and methodologies under *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013). While

Plaintiffs are confident that they will be able to provide a viable damages model, this has proved an impossible hurdle for many proposed consumer classes. *See, e.g., Singleton v. Fifth Generation, Inc.*, 2017 WL 5001444, at *20-22 (N.D.N.Y. Sept. 27, 2017); *Hughes v. The Ester C Co., NBTY, Inc.*, 320 F.R.D. 337, 344 (E.D.N.Y. 2017). For claims where reliance is at issue, Toyota can be expected to present vigorous arguments as to differences in Class Members' exposure to and reliance on alleged misrepresentations and omissions. Moreover, bringing an array of state law claims may present serious manageability issues due to what Toyota can be expected to argue are insurmountable conflicts between the laws of different states.

The risks of securing and maintaining class status are also evidenced by the many decisions denying class certification in automobile defect cases. *See, e.g., Luppino v. Mercedes Benz USA*, 718 F. App'x 143, 148 (3d Cir. 2017); *Tomassini v. FCA US LLC*, 326 F.R.D. 375, 391 (N.D.N.Y. 2018); *Oscar v. BMW of N. Am., LLC*, 2012 WL 2359964 (S.D.N.Y. June 19, 2012); *Nguyen v. Nissan N. Am., Inc.*, 2018 WL 1831857 (N.D. Cal. Apr. 9, 2018); *Daigle v. Ford Motor Co.*, 2012 WL 3113854 (D. Minn. July 31, 2012); *Cholakyan v. Mercedes-Benz USA, LLC*, 281 F.R.D. 534 (C.D. Cal. 2012); *In re Ford Motor Co. E-350 Van Prods. Liab. Litig.*, 2012 WL 379944 (D.N.J. Feb. 6, 2012). Furthermore, even if a nationwide or any state-wide classes were to be certified, they are subject to decertification, and, even after class certification, Toyota would have continued to zealously contest Plaintiffs' claims through summary judgment, trial, and appeal.

It was with full knowledge of these inherent risks that Plaintiffs' Counsel accepted this case on a contingent basis and chose to file and litigate this matter. Additionally, Plaintiffs' Counsel also accepted the risks of litigating against formidable, and well-funded, defense counsel. Because Plaintiffs' Counsel accepted all of the significant risks inherent in this case, this factor is satisfied and supports approval of Plaintiffs' Counsel's fee request.

### 4.      The Quality of Representation

*Goldberger* factor number four requires an analysis of the quality of the representation provided by Class Counsel in this litigation. *Goldberger*, 209 F.3d at 50. "[T]he quality of the representation is best measured by the results." *Id.* at 55. In this case, the result is very favorable for the Class, and, therefore, the quality of representation by Class Counsel more than satisfies this factor.

As an initial matter, Class Counsel in this case is comprised of attorneys and law firms that are national leaders in class action litigation generally, and automotive defect matters in particular. Each of the three firms appointed Class Counsel – Wolf Haldenstein Adler Freeman & Herz LLP, Beasley, Allen, Crow, Methvin, Portis & Miles, P.C., and DiCello Levitt Gutzler LLC – has been recognized by both federal and state courts across the country as being highly skilled and experienced in complex litigation, including successfully leading a multitude of consumer class actions concerning fraud, misrepresentation and unfair practices. These firms' performance in representative litigation has repeatedly garnered outstanding results. *See* firm resumes attached to Exs. 1-3; *see also Kemp-DeLisser*, 2016 WL 6542707, at *16 ("Class Counsel in this case is comprised of attorneys and law firms that are national leaders in class action litigation"). The quality of Class Counsel's representation is also evident when considering the equally high-quality defense attorneys against whom they successfully litigated this case. *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 467 (S.D.N.Y. 2004) (noting that "the quality of opposing counsel is also important in evaluating the quality of plaintiff's counsels' work") (citation omitted). From the outset, Defendants have been represented by highly capable attorneys from several leading international law firms, including King & Spalding LLP (over 1,000 attorneys) and Sidley Austin LLP (about 2,000 attorneys), both recognized leaders in class defense litigation.

Class Counsel both possesses and utilized the necessary skill to ably provide the legal services which led to a favorable settlement. Class Counsel's ability to obtain a favorable settlement for the Class Members despite all the risks and complexity discussed above, and in the face of formidable legal opposition speaks to the quality of Class Counsel. This *Goldberger* factor is clearly satisfied.

### 5.     The Requested Fee in Relation to the Settlement

This factor requires the Court to compare the requested fee to the benefits of the settlement. *Goldberger*, 209 F.3d at 50. In the context of a "common fund" settlement, this factor is used to assess the percentage of the fund that the class should be paid to class counsel, as a matter of equity, to compensate for the benefit class counsel obtained for the class as a whole. In this case, however, the proposed fee, if approved, will not be paid by the Class, but rather by Defendants, and will not reduce the benefits to the Class. Nonetheless, it is important to consider this factor to assess whether the requested fee is disproportionate to the totality of benefits the Settlement provides to the Class. By any measure, the fees requested by Class Counsel here are extremely modest relative to the value the Settlement provides to the Class.

"Traditionally, courts in this Circuit and elsewhere have awarded fees in the 20%-50% range in class actions." *In re Warner Communications Sec. Litig.*, 618 F. Supp. 735, 749 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986). Indeed, common fund recoveries of one-third or higher have been routinely approved in class action cases within the Second Circuit. *See Kiefer v. Moran Foods, LLC*, 2014 WL 3882504, at *8 (D. Conn. July 31, 2014) ("Class Counsel's request for one-third of the Fund is reasonable and consistent with the norms of class litigation in this circuit.") (internal quotation omitted); *CourAcevedo v. Workfit Med. LLC*, 187 F. Supp. 3d 370, 382-83 (W.D.N.Y. May 20, 2016) (approving fee request of one-third of total settlement fund); *deMunecas*, 2010 WL 3322580, at *19 ("Class Counsel's request for 33 percent of the Fund is

reasonable under the circumstances of this case and is consistent with the norms of class litigation in this circuit."); *Warren v. Xerox Corp.*, 2008 WL 4371367, at *7 (E.D.N.Y. Sept. 19, 2008) (awarding class counsel attorneys' fees and expenses of $4 million, which "constitutes approximately 33.33% of the total settlement, and is comparable to sums allowed in similar cases"); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 189 (W.D.N.Y. 2005) (awarding 38.26%); *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003) (awarding 33-1/3% of common fund); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 370 (S.D.N.Y. 2002) (awarding 33-1/3%); *Becher v. Long Island Lighting Co.*, 64 F. Supp. 2d 174, 182 (E.D.N.Y. 1999) (awarding 33-1/3% of common fund).

The proposed Settlement here provides substantial benefits whose valuation represents at least several times the requested fee award. The Settlement will provide free inspection and repair services, reimbursement of costs for previous covered repairs, and prospective coverage for repairs for 10 years from the first use of the vehicle. This can cost as much as several hundred to over two thousand dollars, per vehicle,[4] for an estimated 1.2 million vehicles in the class. For the requested fee award to represent just 20 percent of the value of the Settlement (the low end of the range discussed above), the Settlement need only be valued at less than $22 per vehicle – an extremely conservative valuation in light of the costs that it covers. Thus, this *Goldberger* factor strongly supports approval of Class Counsel's request.

### 6.    Reaction of the Class

The May 3, 2019 deadline for filing objections has passed, and of the two objections that were filed, only one objected to the proposed award of attorneys' fees. ECF 120 at 5-7. This

---

[4] For example, Objector Jennifer Lyons tallies the total costs of sliding door repairs to her vehicle to be approximately $2,150.  ECF 120-1 ¶ 7.

extremely low rate of objections (one out of over one million vehicles in the Settlement) also supports Class Counsel's request. *See, e.g.*, *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 985 F. Supp. 410, 416 (S.D.N.Y. 1997) ("In determining the reasonableness of a requested fee, numerous courts have recognized that 'the lack of objection from members of the class is one of the most important reasons'") (citation omitted).

Moreover, the one objection that has been filed does not necessarily oppose the substance of Class Counsel's request, but rather argues that there was "insufficient information" to justify the request at the time the objection was filed. ECF 120 at 5.[5] Class Counsel respectfully submit, however, that this Motion provides whatever information had been lacking to support their request. Plaintiffs will address this aspect of the objection, to the extent necessary, in their reply brief to be filed with the Court on May 24, 2019.

### 7.   Public Policy Considerations

The final *Goldberger* factor requires an analysis of all public policy considerations when determining the fees to be awarded to Class Counsel. *Goldberger*, 209 F.3d at 50. Here, public policy strongly supports approval of Class Counsel's fee request. Courts in the Second Circuit have routinely stressed the importance of reasonable fee awards in encouraging private attorneys to bring contingency fee class actions representing the public interest. "Class Counsel's fees 'should reflect the important public policy goal of providing lawyers with sufficient incentive to bring common fund cases that serve the public interest.'" *Edwards*, 2018 WL 3715273, at *15 (quoting *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 352) (S.D.N.Y. 2014)). *See also deMunecas*, 2010 WL 3322580, at *8 ("Where relatively small claims can only be

---

[5] As the objection acknowledges, this Court's scheduling of the filing of the present Motion after objections were due accords with due process, *see Cassese v. Williams*, 503 Fed. App'x 55, 57 (2d Cir. 2012) (cited at ECF 120 at 5), and provides the Court with better information insofar as it can evaluate Class Counsel's request with the knowledge of how many objections were made to it.

prosecuted through aggregate litigation, and the law relies on prosecution by 'private attorneys general,' attorneys who fill the private attorney general role must be adequately compensated for their efforts") (internal citations omitted); *Maley*, 186 F. Supp. 2d at 373 (S.D.N.Y. 2002) ("Courts have recognized the importance that fair and reasonable fee awards have in encouraging private attorneys to prosecute class actions on a contingent basis . . . on behalf of those who otherwise could not afford to prosecute."); *Spann v. AOL Time Warner*, 2005 WL 1330937, at *8 (S.D.N.Y. June 7, 2005) (awarding 33-1/3% fee and noting that lawyers are unlikely to pursue this type of litigation "without resort to the class action device"); *Ellman v. Grandma Lee's Inc.*, 1986 WL 53400, at *9 (E.D.N.Y. May 28, 1986) ("To make certain that the public [interest] is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding").

Thus, public policy concerns support the fee award requested in this case.

**B.    The Fee Request Is Reasonable ~~W~~when "Cross Checked" ~~A~~against Class Counsel's Lodestar.**

Where, as here, the Parties have negotiated the fee that Defendants shall pay and the amount to be paid to the Class will not be in any way diminished, "trial courts need not, and indeed should not, become green-eyeshade accountants." *Spence v. Ellis*, 2012 WL 7660124, at *2 (E.D.N.Y. Dec. 19, 2012), *report and recommendation adopted*, 2013 WL 867533 (E.D.N.Y. Mar. 7, 2013). "In cases where settlements of fee requests are made with the defendants after prior approval of damage claim settlements, the court can, in most instances, assume that the defendants closely scrutinized the fee requests, and agreed to pay no more than was reasonable." *In re Fine Paper Antitrust Litig.*, 751 F.2d 562, 582 (3d Cir. 1984). Rather, as in common fund case, it is appropriate to look to counsel's lodestar as a cross-check to ensure that the negotiated fee does not result in a windfall to class counsel. *See, e.g.*, *Sony SXRD*, 2008 WL 1956267, at *16 ("the reasonableness of the requested fee award can be tested by using the lodestar method of calculating

17

reasonable attorneys' fees in common fund cases"); *Jermyn*, 2012 WL 2505644, at *9 (employing

lodestar cross-check).   "Where [the lodestar method is] used as a mere cross-check, the hours

documented by counsel need not be exhaustively scrutinized by the district court."   *In re Sturm,*

*Ruger, & Co., Inc. Sec. Litig.*, 2012 WL 3589610, at *13 (D. Conn. Aug. 20, 2012) (internal

quotation omitted).

When courts employ the lodestar analysis to cross-check the reasonableness of the

percentage of recovery award, counsel may be entitled to a multiplier:

> "Courts regularly award lodestar multipliers from 2 to 6 times lodestar" in this
> Circuit, *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 623-24 (S.D.N.Y.
> 2012), and have been known to award lodestar multipliers significantly greater than
> the 4.87 multiplier sought here. *See, e.g.*, *Maley*, 186 F. Supp. 2d at 369 (awarding
> percentage method with cross-check lodestar multiplier of 4.65, which was "well
> within the range awarded by courts in this Circuit and courts throughout the
> country," and citing cases with a 7.7 multiplier and 5.5 multiplier); *see also In re
> Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 590 (S.D.N.Y. 2008) ("In contingent
> litigation, lodestar multiples of over 4 are routinely awarded by courts, including
> this Court" (citing *Maley*)); *In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
> No. 05 Civ. 10240 (CM), 2007 WL 2230177, at *17 n.7 (S.D.N.Y. July 27, 2007)
> ("Lodestar multipliers of nearly 5 have been deemed 'common' by courts in this
> District."). The multiplier is on the higher end, but that is entirely appropriate, given
> the fact that counsel were ready to go to trial when they settled. Class Counsel's
> hourly rates are reasonable. The rates for Class Counsel who billed meaningful time
> to this case (ranging from $225 to $675 per hour) are comparable to peer plaintiffs
> and defense-side law firms litigating matters of similar magnitude.

*Fleisher v. Phoenix Life Ins. Co.*, 2015 WL 10847814, at *18 (S.D.N.Y. Sept. 9, 2015); *see also*

*Kemp-Delisser*, 2016 WL 6542707, at *17 (approving 2.77 multiplier as "well within the range of

lodestar multipliers that are regularly approved by district courts in the Second Circuit.").

The lodestar analysis is simply a function of multiplying the number of hours Plaintiffs'

Counsel spent litigating this matter times the applicable hourly billable rate. *Goldberger*, 209 F.3d

at 47. In this case, Plaintiffs' Counsel's lodestar amount of $3,863,845.25 results from 6,008.35

hours[6] devoted to prosecuting this matter.[7] A fee award of $6,500,000, therefore, yields a lodestar multiple of 1.68. Thus, the lodestar cross-check confirms that Class Counsel's fee request is fair and reasonable.

**C.     The Court Should Grant Class Counsel's Request for Reimbursement of Expenses.**

It is axiomatic that counsel should be reimbursed for all expenses that are reasonable and necessarily incurred. Fed. R. Civ. P. 23(h); *see also Kemp--Delisser*, 2016 WL 6542707, at *18; *Kiefer*, 2014 WL 3882504, at *10; *Jermyn*, 2012 WL 2505644, at *9 ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were incidental and necessary to the representation of those clients.") (quoting *Miltland Releigh–Durham v. Myers*, 840 F. Supp. 235, 239 (S.D.N.Y 1993)).

---

[6] The lodestar and hour figures break down by firm as follows:

| Firm | Hours | Lodestar | Reference |
|---|---|---|---|
| Wolf Haldenstein Adler Freeman & Herz LLP | 2,766.95 | $1,758,591.25 | Ex. 1, Basar Decl. ¶ 16 |
| Beasley, Allen, Crow, Methvin, Portis & Miles, P.C. | 1,637 | $1,177,260.00 | Ex. 2, Miles Decl. ¶ 6 |
| DiCello Levitt Gutzler LLC | 718.9 | $597,254.00 | Ex. 3, Levitt Decl. ¶ 7 |
| Hurwitz Sagarin Slossberg & Knuff, LLC | 188.2 | $97,460.00 | Ex. 4, Slossberg Decl. ¶ 7 |
| Cohen and Malad, LLP | 36.5 | $18,644.50 | Ex. 5, Cutshaw Decl. ¶ 7 |
| Forchelli Deegan Terrana LLP | 70.9 | $33,323.00 | Ex. 6, Nasis Decl. ¶ 7 |
| Hendrickson & Long, PLLC | 356.4 | $99,797.50 | Ex. 7, Long Decl. Ex. 1 |
| Williams Dirks Dameron LLC | 130 | $58,975.00 | Ex. 8, Dirks Decl. ¶¶ 4,8 |
| Monteleone & McCrory, LLP | 39.5 | $12,590.00 | Ex. 9, Hurst Decl. ¶ 11 |
| Gary C. Johnson, PSC | 64 | $9,950.00 | Ex. 10, Owens Decl. ¶ 7 |
| *Totals* | **6,008.35** | **$3,863,845.25** | |

[7] Plaintiffs' Counsel's use of current rates in calculating their lodestar has been approved by the Supreme Court and courts in the Second Circuit as a means of compensating for the delay in receiving payment and the loss of interest. *See Missouri v. Jenkins*, 491 U.S. 274, 284 (1989); *Farbotko v. Clinton Cty.*, 433 F.3d 204, 210 n.11 (2d Cir. 2005) (applying "current rather than historic hourly rates." (quoting *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998); *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998) ("[C]urrent rates, rather than historical rates, should be applied in order to compensate for the delay in payment.").

In prosecuting this action, Plaintiffs' Counsel incurred $370,972.29 for which it respectfully requests reimbursement.[8] All of the expenses were reasonable and necessary to the prosecution of this matter, and represent standard litigation costs and expenses such as expert, mediation and travel expenses, as well as court costs. Among other expenses, the Plaintiffs in each of the Actions purchased exemplar vehicles whose doors were thoroughly inspected by their independent automotive engineering consultants.  The expenses are itemized in further detail in the Declarations submitted herewith. All expenses for which Plaintiffs' Counsel now seeks reimbursement were necessary to the successful outcome of this case. Moreover, the total amount of expenses for which Plaintiffs' Counsel seeks reimbursement are approximately 74 percent of the $500,000 limit agreed to in Section VIII.B. of the Settlement Agreement and included in the notice to the Class.

### D.   The Court Should Approve the Requested Service Awards to the Class Representatives.

Plaintiff requests that the Court approve the Class Representative service awards of $2,500.00 for the Class Representatives. Awards like the ones requested here promote the important public policy of encouraging individuals to undertake the responsibility of representative

---

[8] These expenses break down by firm as follows:

| Firm | Expenses | Reference |
|------|----------|-----------|
| Wolf Haldenstein Adler Freeman & Herz LLP | $135,447.06 | Ex. 1, Basar Decl. ¶ 19 |
| Beasley, Allen, Crow, Methvin, Portis & Miles, P.C. | $120,128.43 | Ex. 2, Miles Decl. ¶ 9 |
| DiCello Levitt Gutzler LLC | $105,696.97 | Ex. 3, Levitt Decl. ¶ 10 |
| Hurwitz Sagarin Slossberg & Knuff, LLC | $3,281.06 | Ex. 4, Slossberg Decl. ¶ 10 |
| Hendrickson & Long, PLLC | $2,094.10 | Ex. 7, Long Decl. ¶ 10 |
| Williams Dirks Dameron LLC | $1,040.29 | Ex. 8, Dirks Decl. ¶ 11 |
| Monteleone & McCrory, LLP | $3,284.38 | Ex. 9, Hurst Decl. ¶ 11 |
| *Total* | **$370,972.29** | |

lawsuits. The favorable result achieved by Class Counsel in this case would likely not have been possible without the assistance of the Class Representatives. Plaintiff remained fully informed of the details of the litigation, and provided invaluable input, information, and assistance at every stage.

In this Circuit and others, incentive awards may be awarded by the court as compensation to named plaintiffs for their efforts on behalf of a class which has benefitted from them. The $2,500.00 amount sought in this case is at or below case contribution awards in other class actions. *See*, *e.g.*, *Edwards*, 2018 WL 3715273, at *13 (approving service awards of $5,000 to each representative plaintiff).  *See also Dornberger v. Metropolitan Life Insurance Co.*, 203 F.R.D. 118, 124-25 (S.D.N.Y. 2001) (discusses cases supporting awards from $2,500.00 to $85,000.00). Moreover, the relief to the Settlement Class is significant in light of their claims and actual damages, and the award of service payments will not reduce the relief available to Settlement Class members. Modest and fair service payments promote public policy by encouraging individuals to participate as class representatives in class actions and by compensating them for their service to the class. *See, e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F. 3d 454, 463 (9th Cir. 2000); *see also* Manual for Complex Litig., § 21.62 n.971 (4th ed. 2004). Thus, each of the 20 Plaintiffs who served in this capacity should be awarded $2,500.00 for their service to reach the proposed settlement.

## IV.    CONCLUSION

For all of these reasons, Plaintiffs respectfully request that the Court award the full $6,500,000 million in requested attorneys' fees based upon the excellent value of the Settlement to Class Members. Plaintiffs' Counsel has effectively worked this case for their clients to reach this result and should be compensated accordingly. In addition, the Court should award $370,972.29 to Plaintiffs' Counsel to compensate them for out-of-pocket, unreimbursed expenses

incurred in prosecuting the case, as well as a $2,500 service payment to each of the Class Representatives.

Dated: May 10, 2019

Respectfully submitted,

PLAINTIFFS

By:   /s/ David A. Slossberg

**HURWITZ SAGARIN SLOSSBERG & KNUFF, LLC**
David A. Slossberg (ct13116)
Jeffrey P. Nichols (ct29547)
147 North Broad Street
Milford, Connecticut 06460
Tel: (203) 877-8000
Fax: (203) 878-9800
dslossberg@hssklaw.com
jnichols@hssklaw.com

*Liaison Counsel for Plaintiffs*

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
Demet Basar
Kate McGuire
Lydia Keaney Reynolds
270 Madison Avenue
New York, New York 10016
Tel.: (212) 545-4600
Fax: (212) 686-0114
basar@whafh.com
mcguire@whafh.com
reynolds@whafh.com

**BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.**
W. Daniel "Dee" Miles III
H. Clay Barnett, III
272 Commerce Street
Montgomery, Alabama 36104
Tel: (334) 269-2343
Dee.Miles@Beasleyallen.com
Clay.Barnett@Beasleyallen.com

**DICELLO LEVITT GUTZLER LLC**
Adam J. Levitt
John E. Tangren
Daniel R. Ferri
Ten North Dearborn Street, Eleventh Floor
Chicago, Illinois 60602
Tel: (312) 214-7900
alevitt@dicellolevitt.com
jtangren@dicellolevitt.com
dferri@dicellolevitt.com

*Class Counsel*

*Additional Plaintiffs' Counsel:*

**COHEN & MALAD, LLP**
David Cutshaw
Kelley Johnson
Vess Miller
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
Tel: (317) 636-6481
Fax: (317) 636-2593
dcutshaw@cohenandmalad.com
kjohnson@cohenandmalad.com
vmiller@cohenandmalad.com

**FORCHELLI DEEGAN
  TERRANA LLP**
Elbert F. Nasis
The Omni
333 Earle Ovington Boulevard, Suite 1010
Uniondale, New York 11553
Tel: (516) 248-1700
Fax: (866) 644-6119
enasis@forchellilaw.com

**HENDRICKSON & LONG, PLLC**
R. Scott Long
Guy R. Bucci
John H. Tinney, Jr.
John K. Cecil
214 Capitol Street
Charleston, West Virginia 25301
Tel: (304) 346-5500
scott@handl.com
gbucci@handl.com
jtinney@handl.com
jcecil@handl.com

**WILLIAMS DIRKS DAMERON LLC**
Eric L. Dirks
Amy R. Jackson
1100 Main Street, Suite 2600
Kansas City, Missouri 64105
Tel: (816) 945-7110
dirks@williamsdirks.com
amy@williamsdirks.com

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on May 10, 2019, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

<u>/s/ David A. Slossberg</u>