# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

NED SIMERLEIN, JAMES ECKHOFF, MARICEL LOPEZ, CRAIG KAISER, JOHN F. PRENDERGAST, RAYMOND ALVAREZ, ROSARIO ALVAREZ, KAREN EASON, JENNIFER SOWERS, JENNIFER FRANKLIN, JORDAN AMRANI, CRYSTAL GILLESPIE, MELISSA STALKER, DILLEN STEEBY, PAULA MCMILLIN, JOSEPH C. HARP JR., JAMES TINNEY, AND MELISSA JUGO TINNEY, *individually and on behalf of all others similarly situated*,
    *Plaintiffs*,

v.

TOYOTA MOTOR CORPORATION, TOYOTA MOTOR NORTH AMERICA INC., TOYOTA MOTOR SALES U.S.A., INC., TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA, INC., and TOYOTA MOTOR MANUFACTURING, INDIANA, INC.,
    *Defendants*.

No. 3:17-cv-1091 (VAB)

## RULING AND ORDER ON MOTION FOR FINAL APPROVAL AND CERTIFICATION OF SETTLEMENT CLASS AND MOTION FOR ATTORNEY'S FEES, EXPENSES, AND SERVICE AWARDS

    The parties in this consumer class action, *Simerlein v. Toyota Motor Corp. et al.*, originally filed in this District on June 30, 2017, and *Combs v. Toyota Motor Corp. et al.*, originally filed in the Central District of California on June 23, 2017, No. 2:17-cv-4633 (VAP)(AFM), have reached an agreement to resolve the product defect and consumer protection claims raised by the plaintiffs in both cases. *See* Settlement Agreement, filed Dec. 11, 2018 ("Agrmt."), ECF No. 85.

On January 14, 2019, the Court conditionally certified the proposed Settlement Class in this case, preliminarily approved the parties' proposed settlement agreement, approved proposed notices to the proposed Settlement Class, and appointed Class Representatives, Class Counsel, Settlement Claims Administrators, and a Settlement Notice Administrator. *See* Ruling and Order on Motion for Preliminary Approval, dated Jan. 14, 2019 ("Ruling and Order"), ECF No. 107.

Ned Simerlein, James Eckhoff, Maricel Lopez, Craig Kaiser, and John F. Prendergast (the "*Simerlein* Plaintiffs") and Raymond Alvarez, Rosario Alvarez, Karen Eason, Jennifer Sowers, Jennifer Franklin, Jordan Amrani, Crystal Gillespie, Melissa Stalker, Dillen Steeby, Paula McMillin, Joseph C. Harp Jr., James Tinney, and Melissa Jugo Tinney (the "*Combs* Plaintiffs") (collectively, "Plaintiffs" or "Class Representatives") now move, *inter alia*, for final approval of the Settlement Agreement and certification of the Settlement Class. Unopposed Motion for Final Approval of Class Settlement and Certification of Settlement Class, dated May 10, 2019 ("Mot."), ECF No. 122; *see also* Plaintiffs' Memorandum of Law in Support of Mot., dated May 10, 2019 ("Pls.' Mem."), ECF No. 122-1.

Defendants fully support this motion. *See* Defendants' Memorandum of Law in Support of Mot., dated May 10, 2019 ("Defs.' Mem."), ECF No. 126.

Plaintiffs also move for awards of $6,500,000 in attorney's fees, $370,972.29 in litigation costs, and for service awards of $2,500 for each Class Representative. Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards to the Class Representatives, dated May 10, 2019 ("Fee Mot."), ECF No. 125; Plaintiffs' Memorandum of Law in Support of Fee Mot., dated May 10, 2019 ("Fee Mem."), ECF No. 125-1.

Upon reviewing the Settlement Agreement, all the filings submitted in connection with the motion, and after conducting a fairness hearing on June 4, 2019, Plaintiffs' motions are **GRANTED**, and the Court **FINDS, CONCLUDES,** and **ORDERS** as follows.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  The Parties

#### 1.  The *Simerlein* Plaintiffs

The *Simerlein* Plaintiffs are all owners of Toyota Sienna minivans with power sliding rear passenger doors.[1] *See* Amended Complaint, dated Oct. 6, 2017 ("*Simerlein* Am. Compl."), ECF No. 36, ¶¶ 18–51; *see also* Second Amended Complaint, dated Dec. 11, 2018 (the "Operative Complaint" or "Op. Compl."), ECF No. 80. The *Simerlein* Plaintiffs reside in five different states: Connecticut, New York, Florida, Indiana, and Maine. *See Simerlein* Am. Compl. ¶¶ 18, 27, 32, 38, 44.

Ned Simerlein, a resident of Cheshire, Connecticut, owns a "2013 Toyota Sienna XLE, which he purchased used in or around September 30, 2016 from a Toyota dealership located in New Jersey." Op. Compl. ¶¶ 18–19.

James Eckhoff, a resident of North Babylon, New York, owns a 2013 Toyota Sienna XLE, which he purchased new in 2003 in Islip, New York. *Id.* ¶¶ 76–77.

Maricel Lopez, a resident of Port St. Lucie, Florida, owns a 2011 Toyota Sienna LE, which she purchased new in 2011 at Toyota of Vero Beach in Vero Beach, Florida. *Id.* ¶¶ 41–42.

Craig Kaiser, a resident of Noblesville, Indiana, owns a 2015 Toyota Sienna LE, which he purchased new in January 2015 in Chicago, Illinois. *Id.* ¶¶ 50–51.

---

[1] As the basic facts of all the *Simerlein* Plaintiffs' standing as owners are not disputed, the Court treats these factual allegations as true.

John F. Prendergast, a resident of Camden, Maine, owns a 2015 Toyota Sienna XLE, which he purchased in March 2016 in Saco, Maine.

### 2. The *Combs* Plaintiffs

The *Combs* Plaintiffs are all owners of Toyota Sienna minivans with power sliding rear passenger doors.[2] *See* Second Amended Complaint ¶¶ 9–47 *Combs v. Toyota Motor Corp. et al.*, No. 2:17-cv-4633 (VAP)(AFM) (C.D. Cal. Jan. 16, 2018), ECF No. 51 (hereafter, "*Combs* Am. Compl."); *see also* Op. Compl. The *Combs* Plaintiffs reside in eight different states: California, Alabama, Illinois, Kentucky, Missouri, Nevada, Pennsylvania, and West Virginia.[3] *See Combs* Am. Compl. ¶¶ 9, 13, 16, 19, 23, 26, 34, 38, 42, 45.

Raymond Alvarez and Rosario Alvarez, residents of Rancho Cucamonga, California, own a 2011 Toyota Sienna, which they purchased new from Power Toyota Cerritos. Op. Compl. ¶¶ 31–32.

Karen Eason, a resident of Jurupa Valley, California, owns a 2011 Toyota Sienna, which she purchased new from Larry Miller Toyota in Corona, California. *Id.* ¶¶ 35–36.

Jennifer Sowers, a resident of Lodi, California, owns a 2013 Toyota Sienna, which she purchased new from Geweke Toyota in Lodi, California. *Id.* ¶¶ 38–39.

Jennifer Franklin, a resident of Woodstock, Alabama, owns a 2014 Toyota Sienna XLE, which she purchased used from Moore Nissan in Bessemer, Alabama. *Id.* ¶¶ 27–28.

Jordan Amrani, a resident of Skokie, Illinois, owns a 2013 Toyota Sienna, which he purchased new in Schaumburg, Illinois. *Id.* ¶¶ 47–48.

---

[2] As the basic facts of all the *Combs* Plaintiffs' standing as owners are not disputed, the Court treats these factual allegations as true.

[3] While the California action is still captioned on that court's docket as *Combs v. Toyota Motor Corp. et al.*, Tonya Combs ceased being a Plaintiff in this action upon the filing of the Second Amended Complaint on January 16, 2018. *See* Second Am. Compl. ¶¶ 9–47 (listing *Combs* Plaintiffs).

Crystal Gillespie, a resident of Ulysses, Kentucky, owns a 2013 Toyota Sienna, which she purchased used from Pop's Chevrolet Buick in Prestonsburg, Kentucky. *Id.* ¶¶ 56–57.

Melissa Stalker, a resident of Van Lear, Kentucky, owns a 2017 Toyota Sienna, which she purchased new from Walters Toyota in Pikeville, Kentucky. *Id.* ¶¶ 60–61.

Dillen Steeby, a resident of Lee's Summit, Missouri, owns a 2015 Toyota Sienna, which he purchased new from Jay Wolfe Toyota in Kansas City, Missouri. *Id.* ¶¶ 72–73.

Paula McMillin, a resident of Las Vegas, Nevada, owns a 2013 Toyota Sienna, which she purchased new from Beaverton Toyota in Beaverton, Oregon. *Id.* ¶¶ 59–60.

Joseph C. Harp Jr., a resident of Fort Washington, Pennsylvania, owns a 2015 Toyota Sienna, which he purchased new from Thompson Toyota in Doylestown, Pennsylvania. *Id.* ¶¶ 63–64.

James Tinney and Melissa Jugo Tinney, residents of Charleston, West Virginia, own a 2016 Toyota Sienna, which they purchased new from Bert Wolfe Toyota in Charleston, West Virginia. *Id.* ¶¶ 45–46.

### 3. Defendants

Toyota Motor Corporation, Toyota Motor North America, Inc., Toyota Motor Sales U.S.A., Inc., Toyota Motor Engineering & Manufacturing North America, Inc., and Toyota Motor Manufacturing, Indiana, Inc. (collectively, the "*Simerlein* Defendants") are the named defendants in the *Simerlein* class action, and have been since its inception. *See* Complaint, dated June 30, 2017, ECF No. 1. Toyota Motor Corporation, Toyota Motor Sales U.S.A., Inc., and Toyota Motor Engineering & Manufacturing North America, Inc. (the "*Combs* Defendants") are also named defendants in the *Combs* class action. *See* Complaint, *Combs v. Toyota Motor Corp. et al.*, No. 2:17-cv-4633 (VAP)(AFM) (C.D. Cal. Jun. 23, 2017), ECF No. 1.

Toyota Motor Corporation is a Japanese corporation with headquarters at 1 Toyota-Cho, Toyota City, Aichi Prefecture, 471-8571, Japan. Op. Compl. ¶ 69. Toyota Motor Corporation is the parent corporation of Toyota Motor Sales, U.S.A., Inc. *Id.* Toyota Motor Corporation designs, manufactures, markets, distributes, and sells Toyota automobiles through its various entities throughout the United States. *Id.* ¶ 70.

Toyota Motor North America, Inc. ("Toyota Motor North America") is a California corporation with headquarters at 6565 Headquarters Drive, Plano, Texas. *Id.* ¶ 71. Toyota Motor North America is "a holding company for sales, manufacturing, engineering, and research and development subsidiaries of Toyota Motor Corporation located in the United States." *Id.* Toyota Technical Center, a division of Toyota Motor North America, Inc., is alleged to be the driving force behind Toyota's North America engineering and research and development activities. *Id.* ¶ 72. According to Defendants, Toyota Motor North America, Inc. is a subsidiary of TMC. Corporate Disclosure Statement, dated July 28, 2017, ECF No. 1, ¶ 2.

Toyota Motor Sales, U.S.A., Inc. ("Toyota Motor Sales") is a California corporation with headquarters at 6565 Headquarters Drive, Plano, Texas. *Id.* ¶ 73. It is alleged to be the sales and marketing division for Toyota Motor Corporation in the United States, overseeing sales and other operations across the United States and distributing vehicles such as the Sienna minivan through its network of dealerships. *Id.* ¶ 74. Toyota Motor Sales also allegedly issues the express repair warranties for the Sienna minivan. *Id.* ¶ 75. According to Defendants, Toyota Motor Sales is a subsidiary of Toyota Motor North America, Inc.. Corporate Disclosure Statement, dated July 28, 2017, ECF No. 1, ¶ 2.

Toyota Motor Engineering & Manufacturing North America, Inc. ("Toyota Motor Engineering & Manufacturing North America") is a Kentucky corporation with headquarters at

6565 Headquarters Drive, Plano, Texas. Op. Compl. ¶ 76. Toyota Motor Engineering & Manufacturing North America is allegedly responsible for much of Toyota's engineering design and development, research and development, and manufacturing activity in North America. *Id.* ¶ 77. According to Defendants, Toyota Motor Engineering & Manufacturing North America is a subsidiary of Toyota Motor North America. Corporate Disclosure Statement, dated July 28, 2017, ECF No. 1, ¶ 2.

Toyota Motor Manufacturing, Indiana, Inc. ("Toyota Motor Manufacturing, Indiana") is an Indiana corporation with headquarters at 4000 Tulip Tree Drive, Princeton, Indiana. Op. Compl. ¶ 78. Toyota Motor Manufacturing, Indiana is the manufacturer of the Sienna minivan. *Id.* According to Defendants, Toyota Motor Manufacturing, Indiana is a wholly-owned subsidiary of Toyota Motor Engineering & Manufacturing North America. Corporate Disclosure Statement, dated July 28, 2017, ECF No. 1, ¶ 1.

### B. Factual Allegations

#### 1. The Sienna Minivan

Defendants have allegedly designed, manufactured, marketed, and sold Toyota Sienna minivans (hereafter the "Sienna" or "Siennas") since 1998. *Id.* ¶ 80. Since 2003, Siennas have allegedly been manufactured by Toyota Motor Manufacturing, Indiana. *Id.* ¶ 81.

The Siennas, the subject of this lawsuit, are allegedly the third-generation of this vehicle, *id.* ¶ 82, and allegedly were engineered by the Toyota Technical Center (a division of Toyota Motor North America) and Toyota Motor Corporation. *Id.*

Power sliding rear passenger doors have allegedly been an optional feature in all but the most basic model of the Sienna since 1998. *Id.* ¶ 83. In 2011, however, the power sliding rear

passenger door became a standard feature in three Sienna models (the LE, XLE, and Limited) and an optional feature in the most basic models (the "Sienna" or "Sienna L"). *Id.*

Several Plaintiffs allege that the power sliding doors were a key factor in their decision to purchase the Sienna. *See id.* ¶¶ 20 (Mr. Simerlein), 43 (Ms. Lopez), 52 (Mr. Kaiser), 78 (Mr. Eckhoff).

### 2. The Power Sliding Rear Passenger Door Defect

Plaintiffs allege that the power sliding rear passenger doors of the Sienna are unsafe "because they can open independently while on the road, close independently, freeze in position, and otherwise malfunction, thereby exposing passengers to the risk of injury." Pls.' Mem. at 4; *see also* Op. Compl. ¶ 6. Plaintiffs allege that this defect has been revealed to Toyota through many complaints to the National Highway and Transportation Safety Administration (NHTSA) as well as hundreds of direct reports through warranty claims and field reports. Op. Compl. ¶ 7. Plaintiffs allege, *inter alia*, that Defendants were aware of the defect for many years but "continued to manufacture, market, sell, lease, and warrant its Siennas in order to reap profits, without disclosing that the power sliding doors were inherently defective, dangerous and created a grave risk of bodily harm and death." *Id.*

Plaintiffs commissioned an independent automotive engineering consultant, who allegedly identified numerous flaws in the design of the power sliding rear passenger doors. *See* Op. Compl. ¶¶ 92–125. Plaintiffs allege that "[t]he overall design defect results in, among other things: (a) the doors opening independently, posing risk of passengers falling out while the vehicles are in motion and risk of accident due to driver distraction; (b) closing independently, potentially trapping any object in their path, including the arms and legs of young passengers; (c) freezing in a partially open position, sometimes resulting in consumers having to drive the car

from the place at which their door froze to, at a minimum, home or a dealer with the door partially open; (d) freezing in a partially or fully closed position, which poses the risk of passengers being unable to exit or be unloaded from the vehicle in a dangerous situation; (e) failing to latch/lock, enabling small children to push open the door easily, thereby defeating and bypassing the child lock feature of the doors; (f) failing fuel door assemblies that prevent driver side door operation; and (g) failing to consistently and reliably detect objects or people on its path to prevent injury or door malfunction." *Id.* ¶ 95.

### 3. Defendants' Notices

On December 23, 2016, Defendants issued an interim safety recall notice for model year 2011 through 2016 Toyota Siennas, recognizing some issues in the power sliding rear passenger doors. *See* Interim Notice of NHTSA Recall No. 16V-858, dated Dec. 23, 2016 ("Interim Notice"), annexed as Ex. A to Op. Compl., Ex. A. According to that notice, Defendants found "a possibility that if the sliding door opening operation is impeded, the sliding door motor circuit could be overloaded, opening the fuse for the motor. If this occurs when the door latch is in an unlatched position, the door could open while driving, increasing the risk of injury to a vehicle occupant." Op. Compl. ¶ 1 (quoting Interim Notice). The recall notice did not, however, identify an immediate remedy. *See* Interim Notice.

On July 12, 2017, Toyota Motor North America issued a Remedy Notice to Dealer Principals, General Managers, Service Managers, and Parts Managers. *See* Remedy Notice of NHTSA Recall No. 16V-858, dated July 12, 2017 ("Remedy Notice"), annexed as Ex. B to Op. Compl. That notice explained that, for most of the 744,400 vehicles covered by the recall, Defendants would replace the instrument panel junction block and install new wire harnesses connecting them to the power sliding doors. *Id.*

Plaintiffs allege that Defendants' proposed remedy was insufficient, as the "problem of doors closing, jamming, and freezing is not addressed at all." Op. Compl. ¶ 10. According to Plaintiffs, "this purported fix does not cure all of the defects in the power sliding doors, because the root of the problem is not solely the junction box or the harnesses, but a uniform fundamental design flaw that pervades the entire power sliding door system, including other components such as the lock assemblies/latches, hinges and fuel doors." *Id.*

### C. This Class Action Lawsuit

On June 30, 2017, Mr. Simerlein, individually and on behalf of all others similarly situated, filed a class action Complaint against the *Simerlein* Defendants. *See* Complaint, dated June 30, 2017 ("Compl."), ECF No. 1. Mr. Simerlein asserted claims on behalf of a nationwide class, a Connecticut class, and a multi-state consumer protection class under, *inter alia*, the Magnusson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*, the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a *et seq.*, and other relevant state consumer protection statutes. *Id.* ¶¶ 183, 196–251.

In July 2017, Mr. Simerlein served this lawsuit on Toyota Motor Sales, Toyota Motor Manufacturing, Indiana, Toyota Motor North America, and Toyota Motor Engineering and Manufacturing North America. *See* Affidavits of Service, filed July 21, 2017 and July 24, 2017, ECF Nos. 13–16. On July 28, 2017, counsel for Toyota Motor Sales, Toyota Motor Engineering and Manufacturing North America, and Toyota Motor Manufacturing, Indiana appeared. *See* Notice of Appearance, dated July 28, 2017, ECF No. 23.

On September 18, 2017, Toyota Motor Corporation and Mr. Simerlein agreed to forego the formalities of the Hague Service Convention and for Toyota Motor Corporation to be deemed served in exchange for additional time for Toyota Motor Corporation to answer or respond to the

Complaint, as well as additional time to respond to discovery requests and certain additional conditions for a Rule 30(b)(6) deposition. *See* Stipulation Regarding Service on Toyota Motor Corporation, dated Sept. 18, 2017, ECF No. 35.

On October 6, 2017, with the *Simerlein* Defendants' consent, Mr. Simerlein filed an Amended Complaint naming Mr. Eckhoff, Ms. Lopez, Mr. Kaiser, and Mr. Prendergast as additional Plaintiffs. Amended Compl., dated Oct. 6, 2017 ("Am. *Simerlein* Compl."), ECF No. 36.

In the Amended Complaint, the *Simerlein* Plaintiffs asserted claims on behalf of a nationwide class, consisting of "all persons who purchased or leased, anywhere in the United States, including the District of Columbia, Puerto Rico, and all U.S. territories, one or more 2011 through 2017 model year Toyota Sienna vehicles with power sliding doors." *Id.* ¶ 258. The *Simerlein* Plaintiffs also asserted claims on behalf of a multi-state consumer protection class, consisting of "all persons who purchased or leased in, or purchased or lease while residing in, one of the following states one or more 2011 through 2017 model year Toyota Sienna vehicles with power sliding doors: Alaska, Arkansas, California, Connecticut, Delaware, Florida, Hawaii, Illinois, Massachusetts, Michigan, Missouri, New Jersey, New York, Rhode Island, Vermont, Washington, Wisconsin, and the District of [Columbia], [and] any additional states which the Court determines to have sufficiently similar law to Connecticut without creating manageability issues." *Id.* Finally, the *Simerlein* Plaintiffs asserted claims on behalf of five state-specific classes: a Connecticut Class, a New York Class, a Florida Class, an Indiana Class, and a Maine Class. *Id.*

The *Simerlein* Plaintiffs asserted the following causes of action against the *Simerlein* Defendants: (1) violations of the Connecticut Unfair Trade Practices Act and materially identical

state consumer protection statutes, on behalf of the Multi-State Consumer Protection Class (Count One); (2) violations of the Connecticut Unfair Trade Practices Act, on behalf of the Connecticut Class (Count Two); (3) breach of express warranty, on behalf of the Connecticut Class (Count Three); (4) breach of implied warranty, on behalf of the Connecticut Class (Count Four); (5) unjust enrichment on behalf of the Connecticut Class (Count Five); (6) violation of New York General Business Law Section 349, on behalf of the New York class (Count Six); (7) breach of express warranty on behalf of the New York Class (Count Seven); (8) breach of implied warranty on behalf of the New York Class (Count Eight); (9) unjust enrichment on behalf of the New York Class (Count Nine); (10) violation of the Florida Deceptive and Unfair Trade Practices Act, FLA. STAT. § 501.201 *et seq.*, on behalf of the Florida Class (Count Ten); (11) breach of express warranty on behalf of the Florida Class (Count Eleven); (12) breach of implied warranty, on behalf of the Florida Class (Count Twelve); (13) unjust enrichment, on behalf of the Florida Class (Count Thirteen); (14) violations of the Indiana Deceptive Consumer Sales Act, IND. CODE § 24-5-0.5 *et seq.*, on behalf of the Indiana Class (Count Fourteen); (15) breach of express warranty, on behalf of the Indiana Class (Count Fifteen); (16) breach of implied warranty, on behalf of the Indiana Class (Count Sixteen); (17) unjust enrichment, on behalf of the Indiana Class (Count Seventeen); (18) violations of the Maine Unfair Trade Practices Act, MAINE REV. STAT. ANN. tit. 5, § 205-A *et seq.*, on behalf of the Maine Class (Count Eighteen); (19) breach of express warranty, on behalf of the Maine Class (Count Nineteen); (20) breach of implied warranty, on behalf of the Maine Class (Count Twenty); (21) unjust enrichment, on behalf of the Maine Class (Count Twenty-One); (22) violation of Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*, on behalf of the Nationwide Class (Count Twenty-Two). *See id.* at 76–132.

On November 30, 2017, additional counsel appeared on behalf of Toyota Motor North America, Toyota Motor Corporation, and the other *Simerlein* Defendants. *See* Motions for *Pro Hac Vice* Admission, dated Nov. 30, 2017, ECF Nos. 39–41.

On December 4, 2017, the *Simerlein* Defendants moved to dismiss the action. Motion to Dismiss, dated Dec. 4, 2017, ECF No. 45. Toyota argued that the out-of-state *Simerlein* Plaintiffs' claims failed for lack of personal jurisdiction. *Id.* at 5–10. Toyota also argued that Mr. Simerlein's claims failed to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6). *Id.* at 10–25.

On January 22, 2018, the *Simerlein* Plaintiffs opposed the motion to dismiss. Opp. to Mot. to Dismiss, ECF No. 53. Several months of additional briefing followed, *see* ECF Nos. 55–64, and the Court scheduled oral argument for September 26, 2018, *see* Notice of E-Filed Calendar, dated Aug. 24, 2018, ECF No. 67.

On September 24, 2018, the parties filed a joint status report, seeking to adjourn the oral argument and re-convene for a telephonic status conference in November. Joint Status Report, dated Sept. 24, 2018, ECF No. 69.

On September 25, 2018, the Court granted the motion to adjourn and set a telephonic status conference for November 15, 2018. Order, dated Sept. 25, 2018, ECF No. 70; Scheduling Order, dated Sept. 25, 2018, ECF No. 71. The Court also denied the motion to dismiss without prejudice to refiling it after the telephonic status conference. Order, dated Sept. 25, 2018, ECF No. 70.

On November 6, 2018, the parties reported substantial progress in the matter and requested to continue the status conference to December. Joint Motion, dated Nov. 6, 2018, ECF No. 74.

On November 7, 2018, the Court granted the motion and continued the telephonic status conference to December 12, 2018. Order, dated Nov. 7, 2018, ECF No. 75.

### D. The Proposed Settlement Agreement

On December 11, 2018, the *Simerlein* Plaintiffs filed a Second Amended Complaint, with the consent of Defendants but without leave of the Court. *See* Op. Compl. The Second Amended Complaint names the *Combs* Plaintiffs as Plaintiffs in the *Simerlein* action. *Id.* It also incorporates the specific state-level causes of action alleged in the *Combs* action.

That same day, the *Simerlein* and *Combs* Plaintiffs filed a proposed Settlement Agreement, executed on December 10, 2018 by W. Daniel "Dee" Miles III of Beasley, Allen, Crow, Methvin, Portis & Miles, P.C. (who has represented the *Combs* Plaintiffs), Adam Levitt of DiCello Levitt & Casey LLC (who has represented the *Combs* Plaintiffs), Demet Basar of Wolf Haldenstein Adler Freeman & Herz LLP (who has represented the *Simerlein* Plaintiffs), John P. Hooper of King & Spalding LLP (who represents all Defendants), and Toyota Motor North America Group Vice President, General Counsel and Chief Legal Officer Sandra Phillips Rogers. *See* Agrmt. at 50–51.

The proposed settlement sought relief on behalf of the following proposed nationwide Settlement Class:

> All persons, entities or organizations who, at any time as of the entry of the Initial Notice Date [the date on which the first notice is disseminated to the Class], own or owned, purchase(d) or lease(d) Subject Vehicles [2011 through 2018 model year Toyota Sienna vehicles] distributed for sale or lease in any of the fifty States, the District of Columbia, Puerto Rico and all other United States territories and/or possessions.

Agrmt. ¶ II.J. This proposed Settlement Class excluded:

> (a) Toyota [the *Simerlein* Defendants], its officers, directors and employees; its affiliates and affiliates' officers, directors and

employees; its distributors and distributors' officers, directors and
employees; and Toyota Dealers and Toyota Dealers' officers and
directors; (b) Plaintiffs' Counsel; (c) judicial officers and their
immediate family members and associated court staff assigned to
this case; and (d) persons or entities who or which timely and
properly exclude themselves from the Class as provided in the
Settlement Agreement.

*Id.*

The Agreement, as written, provides two distinct types of relief to Class Members.

First, Defendants will establish a forward-looking Customer Confidence Program. Agrmt.

¶ III.A.1. Class Members will be entitled to several forms of prospective relief through this

program. For example, within one year of the Court's final approval of a settlement, all Class

Members with a Subject Vehicle may take their vehicle to an authorized Toyota Dealer and

receive a free Sienna Sliding Door Functional Inspection. This is a "use it or lose it" benefit.

Defendants will also provide prospective coverage for all Class Members, who will be

able to bring their vehicle into authorized Toyota Dealers for repairs for up to ten years after the

date the vehicle was originally sold or leased, provided that their vehicles are not salvaged,

inoperable, or flood-damaged (according to the vehicle title). The Program will cover repairs to

specific sliding door parts that are related to internal functional concerns of specified parts that

impede the closing and opening operations of the sliding door in manual and power modes:

sliding door cable sub-assembly, sliding door center hinge assembly, fuel door pin and fuel door

hinge, sliding door front lock assembly, and the sliding door rear lock assembly. *Id.* ¶ III.A.1(i)–

(v).

The repair benefits generally will be available from the date on which the Court enters a

Final Order and Final Judgment approving the Settlement and run for ten years from the date of

First Use of the Subject Vehicle. *See id.* For certain parts—the sliding door front lock assembly

and rear lock assembly on 2011 through 2015 model year Subject Vehicles and some 2016 Subject Vehicles—which are already be covered by Defendants' Warranty Enhancement Programs ZH4 and ZH5, the warranty benefits for those parts will be extended by an additional year. *See id.* ¶ III.A.1(iv)–(v). Finally, Class Members, who have already had a G04 Recall Remedy performed on their vehicle, will receive an additional year of warranty coverage for the replacement parts provided by that Remedy. *See id.* ¶ III.A.1(vi). Defendants also will provide eligible Class Members undergoing repairs under the Program with a Loaner Vehicle upon request. *Id.* ¶ III.A.2.

Second, the Agreement will provide retrospective relief by establishing an out-of-pocket claims process to reimburse Class Members for previously incurred out-of-pocket expenses to repair a condition covered by the Customer Confidence Program, but not otherwise reimbursed and that incurred before the Initial Notice Date. *Id.* ¶ III.B. Those claims may be submitted at any time during the Claim Period—i.e., beginning on the Initial Notice Date and ending sixty days after the Court's issuance of a Final Order and Final Judgment. *Id.* ¶ II.H. The parties propose that the Court appoint Patrick A. Juneau and Thomas Juneau of Juneau David, APLC, at Defendants' expense, to administer the out-of-pocket claims process. *Id.* ¶ II.LL.

As part of the Settlement, Class Counsel agreed to cap their application for attorneys' fees and costs—which will be made prior to the final approval hearing—at $6,500,000 in attorneys' fees and $500,000 in costs and expenses (including payment of Class Representative service awards), subject to the review and approval of this Court. *Id.* ¶ VIII.B. Class Counsel also planned to apply for Class Representatives to receive service awards of up to $2,500 each, subject to the Court's approval. *Id.* ¶ VIII.C.

In return for this relief, "Class Representatives, and each Class Member, on behalf of

themselves and any other legal or natural persons who may claim by, through, or under them, agree to fully, finally, and forever release, relinquish, acquit, and discharge the Released Parties from any and all claims, demands, suits, petitions, liabilities, causes of action, rights, and damages of any kind and/or type regarding the subject matter of the Action and the Related Action, including, but not limited to, compensatory, exemplary, punitive, expert and/or attorneys' fees or by multipliers, whether past, present, or future, mature, or not yet mature, known or unknown, suspected or unsuspected, contingent or non-contingent, derivative or direct, asserted or un-asserted, whether based on federal, state or local law, statute, ordinance, regulation, code, contract, common law, violations of any state's deceptive, unlawful, or unfair business or trade practices, false, misleading or fraudulent advertising, consumer fraud or consumer protection statutes, any breaches of express, implied or any other warranties, RICO, or the Magnuson-Moss Warranty Act, or any other source, or any claim of any kind arising from, related to, connected with, and/or in any way involving the Action, the Related Action, the Subject Vehicles' sliding doors, and/or associated parts that are, or could have been, defined, alleged, or described in the Class Action Complaint, the Action, the Related Action or any amendments of the Action or the Related Action." *Id.* ¶ VII.B.

Class Representatives and Class Members are not, however, releasing claims "for personal injury, wrongful death[,] or actual physical property damage arising from an accident involving a Subject Vehicle." *Id.* While Class Representatives "acknowledge that they and other Class Members may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those that they now know or believe to be true concerning the subject matter of the Action or the Related Action and/or the Release herein," "it is the intention of Class Counsel and Class Representatives in executing this Settlement Agreement to fully,

finally, and forever settle, release, discharge, and hold harmless all such matters, and all claims relating thereto which exist, hereafter may exist, or might have existed (whether or not previously or currently asserted in any action or proceeding) with respect to the Action and the Related Action." *Id.* ¶ VII.G.

### E. Preliminary Certification and Approval

On December 11, 2018, the *Simerlein* and *Combs* Plaintiffs moved for an order under Federal Rule of Civil Procedure 23: (1) preliminarily approving the proposed Settlement Agreement as fair, reasonable and adequate; (2) preliminarily certifying the proposed Class for settlement purposes only; (3) appointing the proposed Class Representatives as Class Representatives; (4) appointing the proposed Class Counsel as Class Counsel; (5) ordering Notice to be disseminated to the Class; (6) appointing Jeanne C. Finegan of Heffler Claims Group as the Settlement Notice Administrator; (7) appointing Patrick A. Juneau and Thomas Juneau of Juneau David, APLC as the Settlement Claims Administrator; (8) setting a date and procedures for a final Settlement Fairness Hearing and related deadlines; and (9) issuing related relief, as appropriate. Unopposed Motion for Entry of an Order Preliminarily Approving Class Settlement, Directing Notice to the Class, and Scheduling Fairness Hearing, dated Dec. 11, 2018, ECF No. 84; Plaintiffs' Memorandum of Law in Support of Mot., dated Dec. 11, 2018 ("Pls.' Mem."), ECF No. 84-1.

The *Simerlein* and *Combs* Plaintiffs also filed several additional submissions in support of the motion: (1) a memorandum of law in support of the motion, Pls.' Mem.; (2) a joint declaration from the proposed Class Counsel in support of the motion, outlining the details of their efforts in pursuing this litigation and negotiating the Settlement as well as their qualifications to serve as Class Counsel, Joint Declaration, dated Dec. 11, 2018, ECF No. 86;

and (3) an affidavit from Patrick A. Juneau outlining his qualifications to serve as Settlement Claims Administrator, Affidavit of Patrick A. Juneau, dated Dec. 10, 2018, ECF No. 87.

That same day, the *Simerlein* Defendants also filed a memorandum of law in support of the motion. Defendants' Memorandum in Support of Preliminary Approval, dated Dec. 11, 2018, ECF No. 88.

On December 12, 2018, the Court held a telephonic status conference with the parties. Minute Entry, dated Dec. 12, 2018, ECF No. 94. The Court granted the *Simerlein* Defendants' oral motion to continue all discovery deadlines and scheduled a hearing on the motion for preliminary approval. *Id.*; Notice of E-Filed Calendar, dated Dec. 12, 2018, ECF No. 95.

On January 7, 2019, the Court held a telephonic motion hearing on the motion for preliminary approval. *See* Minute Entry, dated Jan. 8, 2019, ECF No. 103. The Court granted the *Simerlein* Plaintiffs' oral motion for leave to amend the complaint; thus the Second Amended Complaint is now the Operative Complaint. *See id.*; Oral Motion, dated Jan. 7, 2019, ECF No. 102.

On January 9, 2019, Plaintiffs filed an amended memorandum of law in support of their motion. Amended Memorandum of Law, dated Jan. 9, 2019, ECF No. 105.

On January 14, 2019, the Court granted Plaintiffs' motion and ordered the following: (1) the conditional certification of the proposed Settlement Class; (2) the appointment of Ned Simerlein, James Eckhoff, Maricel Lopez, Craig Kaiser, John F. Prendergast, Raymond Alvarez, Rosario Alvarez, Karen Eason, Jennifer Sowers, Jennifer Franklin, Jordan Amrani, Crystal Gillespie, Melissa Stalker, Dillen Steeby, Paula McMillin, Joseph C. Harp Jr., James Tinney, and Melissa Jugo Tinney as Class Representatives; (3) the appointment of W. Daniel "Dee" Miles III of Beasley, Allen, Crow, Methvin, Portis & Miles, P.C., Adam Levitt of DiCello Levitt & Casey

LLC, and Demet Basar of Wolf Haldenstein Adler Freeman & Herz LLP as Class Counsel; (4) the preliminary approval of the proposed Settlement Agreement; (5) the approval of the proposed Direct Mail Notice and Long Form Notice; (6) the appointment of Jeanne C. Finegan of Heffler Claims Group as the Settlement Notice Administrator, and Notice to be disseminated to the Class beginning on March 1, 2019; (7) the appointment of Patrick A. Juneau and Thomas Juneau of Juneau David, APLC as Settlement Claims Administrators to administer the out-of-pocket claims reimbursement process; (8) the adoption of the proposed opt-out procedure and ordered that all requests for exclusion from the class be submitted by May 3, 2019; (9) that any objections by Class Members to the Settlement be filed by May 3, 2019; (10) the scheduling of a Final Approval Hearing for June 4, 2019 at 11:00 a.m.; (11) the establishment of a briefing schedule for, *inter alia*, the motions for final approval, attorney's fees, and service awards; and (12) the enjoining of potential class members from challenging in any action or proceeding any matter covered by this Settlement Agreement, except for proceedings in this Court to determine whether the Settlement Agreement will be given final approval. *See* Ruling & Order. at 38–40.

On February 7, 2019, the parties jointly moved for approval of the formatted long form notice. Joint Stipulation Regarding Formatted Long Form Notice, dated Feb. 7, 2018, ECF No. 110.

On February 8, 2019, the Court entered an order approving that notice. Order Approving Formatted Long Form Notice, dated Feb. 8, 2019, ECF No. 111.

### F.  Notice to the Class

To ensure proper notice, the Court appointed Jeanne C. Finegan of Heffler Claims Group as Settlement Notice Administrator, with all the responsibilities and obligations set forth in the Settlement Agreement, and ordered that notice be disseminated to the proposed class members

beginning on March 1, 2019. *See* Ruling & Order at 30. In support of the motion for final

approval, Ms. Finegan submitted a detailed submission regarding her efforts. Declaration of

Jeanne C. Finegan, APR Concerning Implementation of Class Member Notification, dated May

9, 2019 ("Finegan Decl."), ECF No. 122-2.

    As Ms. Finegan explains, her team received files from Toyota containing 1,691,245

unique Vehicle Identification Numbers (VINs) for Subject Vehicles. Finegan Decl. ¶ 13. Using

data provided by HIS Automotive, Driven by Polk, Ms. Finegan and her team identified the

names and addresses of 1,299,946 Class Members, all of whom were sent Direct Mail Notices—

i.e., the short-form postcard notice approved by the Court, *see* Ex. B to Finegan Decl.—by U.S.

First Class postage prepaid mail. *Id.* ¶ 14–15. Ms. Finegan and her team were also able to obtain

updated information and re-send approximately 30,169 of the 45,414 notices that were

undeliverable as originally addressed. *Id.* ¶¶ 18–19.

    Ms. Finegan also published the Publication Notice approved by the Court in *People*

*Magazine*, as well as multiple print and online news outlets in the U.S. Territories of Guam, the

U.S. Virgin Islands, the Northern Mariana Islands, American Samoa, and Puerto Rico. Finegan

Decl. ¶¶ 22–26; *see also* Exs. D & E to Finegan Decl. In addition, Ms. Finegan issued a press

release in both English and Spanish, which Ms. Finegan's staff believes subsequently reached

more than 300 media outlets. Finegan Decl. ¶ 37.

    On February 26, 2019, Ms. Finegan published a dedicated website available to the public

at www.toyotasiennadoorsettlement.com, which provided Class Members with many relevant

documents and information about the Settlement and allowed them to submit claims online.

Finegan Decl. ¶¶ 38–39. Ms. Finegan and her team also conducted an extensive online outreach

strategy using banner advertising, Google AdWords, and social media. *Id.* ¶¶ 27–36. As Ms.

Finegan explains, they sought both to engage users who did not receive (or read) the postcard notice as well as to re-engage users who visited the Settlement Website. *See id.*

On March 1, 2019, Ms. Finegan also set up a 24-hour toll-free number for callers to obtain information about the Settlement and the litigation. *Id.* ¶ 40.

Ms. Finegan estimates that 97% of targeted Class Members were reached by this notice program, and that on average Members were reached more than five times. *Id.* ¶ 42.

### G. Objections and Opt-Outs

On April 22, 2019, the Court received an objection from Jeananne H. Shultz, a member of the proposed Settlement Class and owner of a 2011 Toyota Sienna. Notice of Objection, filed Apr. 22, 2019 ("Shultz Obj."), ECF No. 119. Ms. Shultz argued that she had multiple problems with the mechanics of both her sliding doors, but that the repairs "that would be covered under the current settlement are not ones that were relevant" to the problems she faced. *Id.* She therefore requested "that the settlement be broadened to allow for any repairs necessary to repair the unusable doors" on her vehicle. *Id.*

On May 1, 2019, the Court received an objection and notice of intent to appear and speak at the Fairness Hearing from Jennifer Lyons, a member of the proposed Settlement Class and co-owner of a 2011 Toyota Sienna. Objection to Final Approval of Proposed Settlement and Notice of Intent to Appear at Final Approval Hearing, dated May 1, 2019 ("Lyons Obj."), ECF No. 120. Ms. Lyons raised a number of concerns: (1) that the Court has insufficient information to determine if the Class Representatives adequately represent the entire class; (2) that attorney's fees for Class Counsel were unjustified; (3) that the out-of-pocket claims process is unduly burdensome and does not provide adequate review of any claims that may be denied; (4) that the Customer Confidence program is unfair and inadequate because of its lack of reminder notices

and other detailed procedures; (5) that the structure of the settlement is unfair because it does not provide reimbursement for a subset of Class Members (including Ms. Lyons) in need of repairs from independent mechanics on or after March 1, 2019; and (6) that it would be unfair for Class Representatives who jointly own a single Sienna to receive two service awards. *See id.*

On May 20, 2019, Ms. Shultz withdrew her objection to the settlement. Notice of Withdrawal, dated May 20, 2019, ECF No. 127.

On May 23, 2019, Ms. Finegan filed a supplemental declaration explaining that, as of May 14, 2019, she had received a total of sixty-eight requests for exclusion ("opt-outs") from Class Members. Supplemental Declaration of Jeanne C. Finegan, APR, dated May 23, 2019 ("Supp. Finegan Decl."), ECF No. 128.

On May 24, 2019, Defendants filed a reply memorandum in further support of the motion for final approval, arguing: (1) that the low opt-out rate (0.0052%) further supports approval of the settlement; and (2) that the Court should overrule Ms. Lyons's objection and approve the settlement as fair, reasonable, and adequate. *See* Defendants' Reply Memorandum of Law in Further Support of Mot., dated May 24, 2019 ("Defs.' Reply"), ECF No. 129, at 1–3.

On May 30, 2019, Ms. Lyons moved to withdraw her objection to the settlement, stating that "Class Counsel reached out to me and worked diligently to address the concerns outlined in my filing and to ensure Toyota is preparing to implement the program outlined in Section III.A of the Settlement Agreement." Motion to Withdraw Objection, dated May 30, 2019, ECF No. 131. Ms. Lyons noted that those efforts "culminated in Toyota completing covered repairs on my fuel door and both of my power sliding doors on May 29, 2019." *Id.* She further indicated that Toyota "has represented that it will accept my claim form and pay the listed amounts for past repairs." *Id.* As a result, she is "satisfied that the Settlement Agreement can and will be

implemented in a manner that provides valuable relief to Sienna owners and, thus, reflects a fair and adequate resolution for the entire Class." *Id.*

On June 3, 2019, the Court granted Ms. Lyons's motion to withdraw her objection. Order, dated Jun. 3, 2019, ECF No. 132.

### H.  Motions for Final Approval and for Fees, Costs, and Service Awards

On May 10, 2019, Plaintiffs moved for final approval of the Settlement Agreement and certification of the Settlement Class. *See* Mot.; Pls.' Mem.

That same day, Defendants filed a memorandum of law indicating their support for final approval. *See* Defs.' Mem.

Plaintiffs also moved for awards of attorney's fees, costs, and service awards. *See* Fee Mot.; Pls.' Fee Mem. In support of their requests for attorney's fees and costs, Plaintiffs submitted declarations from the various firms involved in this litigation detailing both the lodestar calculations and the expenses incurred in prosecuting the action. *See* Declaration of Demet Basar in Support of Fee Mot., dated May 10, 2019 ("Basar Decl."), ECF No. 125-2 (detailing work of Wolf Haldenstein) Declaration of W. Daniel "Dee" Miles, III in Support of Fee Mot., dated May 10, 2019 ("Miles Decl.") (detailing work of Beasley Allen), ECF No. 125-3; Declaration of Adam J. Levitt in Support of Fee Mot., dated May 10, 2019 ("Levitt Decl."), ECF No. 125-4 (detailing work of DiCello Levitt); Declaration of David A. Slossberg in Support of Fee Mot., dated May 10, 2019 ("Slossberg Decl."), ECF No. 125-5 (detailing work of HSSK); Declaration of David J. Cutshaw in Support of Fee Mot., dated May 10, 2019 ("Cutshaw Decl."), ECF No. 125-6 (detailing work of Cohen and Malad); Declaration of Elbert F. Nasis in Support of Fee Mot., dated May 9, 2019 ("Nasis Decl."), ECF No. 125-7 (detailing work of Forchelli Deegan Terrana LLP); Declaration of R. Scott Long in Support of Fee Mot., dated May 10, 2019

("Long Decl."), ECF No. 125-8 (detailing work of Hendrickson & Long); Declaration of Eric L.

Dirks in Support of Fee Mot., dated May 8, 2019 ("Dirks Decl."), ECF No. 125-9 (detailing

work of Williams Dirks Dameron LLC); Declaration of Jeffrey S. Hurst in Support of Fee Mot.,

dated May 10, 2019 ("Hurst Decl."), ECF No. 125-10 (detailing work of Monteleone & McCrory

LLP); Declaration of Angela Owens in Support of Fee Mot., dated May 10, 2019 ("Owens

Decl."), ECF No. 125-11 (detailing work of Gary C. Johnson, PSC).

On May 24, 2019, Plaintiffs filed a reply memorandum in further support of the motions

for final approval and for attorney's fees, expenses, and service awards. Plaintiffs' Reply in

Support of Mot. & Fee Mot., dated May 24, 2019 ("Pls.' Reply"), ECF No. 130. Plaintiffs also

submitted a detailed declaration from a litigation consultant, Gary Olsen of Glass Ratner. *See*

Declaration of Gary Olsen, CPA/ABV, dated May 24, 2019 ("Olsen Decl."), ECF No. 130-1. In

his declaration, Mr. Olsen estimates the settlement's value to be approximately $33.6 million.

*See* Olsen Decl. ¶ 20. Plaintiffs thus argue that the total amount of the fee award they seek

represents 16.2 percent of the total settlement value, placing their request for fees "well under the

low end of the 20-50 percent range" that have been approved by courts in the Second Circuit.

Pls.' Reply at 3.

On June 4, 2019, the Court held a final fairness hearing on the motions and reserved

decision. Minute Entry, dated June 4, 2019, ECF No. 133.

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 23(e) requires that "[t]he claims, issues, or defenses of a

certified class—or a class proposed to be certified for purposes of settlement—may be settled,

voluntarily dismissed, or compromised only with the court's approval." FED. R. CIV. P. 23(e); *see*

*D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("Under Federal Rule of Civil

Procedure 23, a class action cannot be settled without the approval of the District Court.") (citing FED. R. CIV. P. 23(e)).

Thus, "[b]efore reaching the merits of the proposed settlement," this Court "must first ensure that the settlement class, as defined by the parties, is certifiable under the standards of Rule 23(a) and (b)." *Bourlas v. Davis Law Assocs.*, 237 F.R.D. 345, 349 (E.D.N.Y. 2006); *see also Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006) (holding that Rule 23(a) and (b) analysis is independent of Rule 23(e) fairness review).

"Rule 23(a) states four threshold requirements applicable to all class actions: (1) numerosity (a 'class [so large] that joinder of all members is impracticable'); (2) commonality ('questions of law or fact common to the class'); (3) typicality (named parties' claims or defenses 'are typical ... of the class'); and (4) adequacy of representation (representatives 'will fairly and adequately protect the interests of the class')." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 613 (1997) (quoting FED. R. CIV. P. 23(a)). "In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Id*. at 614.

"Certification of a class for settlement purposes only is permissible and appropriate, provided these [Rule 23(a) and (b) ] standards are met." *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C*., 237 F.R.D. 26, 31 (E.D.N.Y. 2006). The settlement-only class certification inquiry requires this Court to "demand undiluted, even heightened, attention in the settlement context" to Rule 23's "specifications . . . designed to protect absentees by blocking unwarranted or overbroad class definitions." *Amchem Prod., Inc.*, 521 U.S. at 620. "Such attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Id.*

"Final approval of a proposed settlement may only be granted 'after a hearing and on finding that it is fair, reasonable, and adequate.'" *Menkes v. Stolt-Nielsen S.A.*, No. 3:03-CV-409 (DJS), 2011 WL 13234815, at *2 (D. Conn. Jan. 25, 2011) (quoting Fed. R. Civ. P. 23(e)(2)) (citations omitted). "A court determines a settlement's fairness by looking at both the settlement's terms and the negotiating process leading to settlement." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (citing *D'Amato*, 236 F.3d at 85.

## III.    DISCUSSION

Plaintiffs move for final approval of a Settlement Agreement, reached and entered into with the Defendants, on behalf of a proposed class of Toyota Sienna owners and lessors located throughout the United States. Defendants support Plaintiffs' motion.

As outlined below, the Court finds that the proposed settlement is fair, reasonable, adequate, and in the best interest of the class. The Court further finds the Settlement Agreement to be the product of extensive arm's length negotiations conducted by highly experienced counsel.

The Court therefore certifies the Settlement Class and approves the proposed Settlement Agreement.

### A.  Certification of Class for Settlement Purposes

Plaintiffs now move to certify a settlement class of "all persons, entities or organizations who, at any time as of the entry of the Initial Notice Date, own or owned, purchase(d) or lease(d) Subject Vehicles distributed for sale or lease in any of the fifty States, the District of Columbia, Puerto Rico, and all other United States territories and/or possessions." Agrmt. ¶ II.J. "Subject Vehicles" are defined as "2011 through 2018 model year Toyota Sienna vehicles." Agrmt. ¶ II.OO.

The Court makes the following findings on ascertainability, numerosity, commonality, typicality, adequacy of representation, and predominance.

### 1. Ascertainability

The Second Circuit has recognized that Rule 23 contains an "'implied requirement of ascertainability.'" *Brecher v. Republic of Argentina*, 806 F.3d 22, 24 (2d Cir. 2015) (quoting *In re Initial Public Offerings Sec. Litig.*, 471 F.3d 24, 30 (2d Cir. 2006)). The Second Circuit has clarified that this is not a "freestanding administrative feasibility requirement," but simply requires "only that a class be defined using objective criteria that establish a membership with definite boundaries." *In re Petrobas Sec.*, 862 F.3d 250, 264 (2d Cir. 2017); *see also id.* at 265–267 ("a class must be 'sufficiently definite *so that* it is administratively feasible for the court to determine whether a particular individual is a member'; a class must be 'defined by objective criteria' *so that* it will not be necessary to hold 'a mini-hearing on the merits of each case.'") (internal citations omitted).

This class is defined solely by objective criteria: class members must, at any time as of March 1, 2019 (the date on which notices were first mailed), own or have owned, purchase or have purchased, or lease or have leased a 2011 through 2018 model year Toyota Sienna. Using this definition, Defendants generated a list of VIN numbers for the relevant vehicles. Finegan Decl. ¶ 13. The Settlement Notice Administrator then used this list to obtain information from a reputable automotive data provider, R.L. Polk & Co., to identify a total of 1,299,946 Class Members. Finegan Decl. ¶¶ 14–15. As a result, it is administratively feasible to determine class membership during the Class Period.

The proposed Settlement Class therefore is ascertainable.

### 2. Numerosity

Federal Rule of Civil Procedure 23(a)(1) requires that any putative class be "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). While courts "have not required evidence of exact class size or identity of class members to satisfy the numerosity requirement," *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993), the Second Circuit has recognized that "numerosity is presumed at a level of 40 members," *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (citation omitted).

The proposed Settlement Class is "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). Here, 1,299,946 Class Members have been identified. The numerosity requirement therefore is satisfied.

### 3. Commonality

Federal Rule of Civil Procedure 23(a)(2) requires the existence of "questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ("That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.").

This class action presents questions of both law and fact that are common to the class. While a number of different state statues are implicated in this class action, there are common questions of fact that are capable of class-wide resolution, regardless of where a proposed Class Member is located , including: (1) whether the Subject Vehicles' rear sliding doors were defective; (2) whether and for how long Defendants knew about the defect; (3) whether Defendants misrepresented or omitted information about the defect to consumers; (4) whether those misrepresentations or omissions were material; (5) whether proposed Class Members were

damaged by those misrepresentations or omissions; (6) whether proposed Class Members were damaged by the defect; and (7) whether equitable relief is warranted for proposed Class Members' claims.

In addition, all Class Members have federal claims under the Magnusson-Moss Warranty Act presenting common questions of law that are capable of class-wide resolution.

The commonality requirement therefore is satisfied.

### 4. Typicality

Federal Rule of Civil Procedure 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). "Typicality requires that 'the disputed issue[s] of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class.'" *Mazzei v. Money Store*, 829 F.3d 260, 272 (2d Cir. 2016) (quoting *Caridad v. Metro-N. Commuter R.R.*, 191 F.3d 283, 293 (2d Cir. 1999)).

The proposed representative parties and their claims and defenses are typical of the class as a whole. Each proposed representative party is a member of the proposed Settlement Class and allege to have been damaged by the same conduct as the class more broadly—i.e., defects in the Toyota Sienna and alleged misrepresentations and omissions about those defects by Defendants. Additionally, the claims of the class and class representatives share corresponding legal theories. Finally, the proposed representative parties will receive the same benefits as the other proposed Class Members, including access to the Customer Confidence Program, which covers all Subject Vehicles, and reimbursement by Defendants' of all out-of-pocket cost of covered repairs.

The typicality requirement therefore is satisfied.

## 5. Adequacy of Representation

Federal Rule of Civil Procedure 23(a)(4) requires that the representative parties "will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4).

The Court is not aware of any conflicts between the Representative Parties, Class Counsel, and the claims of the proposed Class Members.

Additionally, Class Counsel, W. Daniel "Dee" Miles III of Beasley, Allen, Crow, Methvin, Portis & Miles, P.C. (who has represented the *Combs* Plaintiffs), Adam Levitt of DiCello Levitt & Casey LLC (who has represented the *Combs* Plaintiffs), and Demet Basar of Wolf Haldenstein Adler Freeman & Herz LLP (who has represented the *Simerlein* Plaintiffs) all have litigated complex class actions in the past.[4]

The Representative Parties therefore will fairly and adequately protect the interest of the proposed Settlement Class.

## 6. Predominance

Federal Rule of Civil Procedure 23(b)(3) requires that, before certifying an opt-out class, a court must find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other

---

[4] Mr. Miles is a named principal of Beasley, Allen, Crow, Methvin, Portis & Miles, a law firm located in Montgomery, Alabama and Atlanta, Georgia that specializes, *inter alia*, in products liability and class action litigation. He has nearly thirty years of experience in litigating complex class action. Over the past decade, he has worked on a number of other major, multi-district vehicle defect class actions, *See* Joint Decl. ¶ 42; Firm Resume, annexed to Joint Decl. as Ex. B, ECF No. 86-2.

Mr. Levitt is a founding partner of DiCello Levitt & Casey, a law firm located in Chicago, Illinois and Cleveland, Ohio that specializes, *inter alia*, in products liability and consumer class actions. He has nearly twenty-five years of experience in litigating nationwide class action lawsuits. Over that period, he has had a substantial focus on vehicle defect cases. *See* Joint Decl. ¶ 43; Firm Resume, annexed to Joint Decl. as Ex. C, ECF No. 86-3.

Ms. Basar is a partner of Wolf Haldenstein Adler Freeman & Herz LLP, a law firm located in New York, New York, Chicago, Illinois, and San Diego, California that specializes in complex class actions and other representative litigation. She has more than twenty-five years of experience in litigating complex class actions. *See* Joint Decl. ¶ 41; Firm Resume, annexed to Joint Decl. as Ex. A, ECF No. 86-1.

available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "This predominance requirement 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.' *Langan v. Johnson & Johnson Consumer Cos.*, 897 F.3d 88, 96–97 (2d Cir. 2018) (quoting *Mazzei*, 829 F.3d at 272). "The predominance requirement is satisfied if 'resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof,' and 'these particular issues are more substantial than the issues subject only to individualized proof.'" *Id.* at 97 (quoting *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015)).

Here, the common questions of law and fact predominate over any question affecting only individual members of the proposed Settlement Class. There do not appear to be any significant differences between the claims of proposed Settlement Class members, apart from where they are located and the specific state consumer protection statutes applicable to them.

Additionally, a class action is superior to other available methods for the fair and efficient adjudication of this controversy. Class certification promotes efficiency and uniformity of judgment because the many class members will not be forced to separately pursue claims or execute settlements in various courts around the country.

Based on these findings, the Court certifies the proposed Settlement Class (hereafter, "the Settlement Class") for settlement purposes under Federal Rules of Civil Procedure 23(c) and 23(e), comprised of all persons, entities or organizations who, at any time as of March 1, 2019, own or owned, purchase(d) or lease(d) a 2011 through 2018 model year Toyota Sienna vehicle that was distributed for sale or lease in any of the fifty States, the District of Columbia, Puerto Rico, and all other United States territories and/or possessions.

The following are excluded from the Settlement Class: (a) Toyota, its officers, directors

and employees; its affiliates and affiliates' officers, directors, and employees; its distributors and distributors' officers, directors, and employees; and Toyota Dealers and Toyota Dealers' officers and directors; (b) Plaintiffs' counsel; (c) judicial officers and their immediate family members and associated court staff assigned to this case; and (d) persons or entities who or which timely and properly excluded themselves from the Settlement Class as provided in the Settlement Agreement.

Accordingly, the Court confirms its prior appointment of Ned Simerlein, James Eckhoff, Maricel Lopez, Craig Kaiser, John F. Prendergast, Raymond Alvarez, Rosario Alvarez, Karen Eason, Jennifer Sowers, Jennifer Franklin, Jordan Amrani, Crystal Gillespie, Melissa Stalker, Dillen Steeby, Paula McMillin, Joseph C. Harp Jr., James Tinney, and Melissa Jugo Tinney. as Class Representatives, as well as its prior appointment of W. Daniel "Dee" Miles III of Beasley, Allen, Crow, Methvin, Portis & Miles, P.C., Adam Levitt of DiCello Levitt & Casey LLC, and Demet Basar of Wolf Haldenstein Adler Freeman & Herz LLP as Class Counsel. *See* Ruling & Order at 26.

### B. Notice

"For any class certified under Rule 23(b)(3)--or upon ordering notice under Rule 23(e)(1) to a class proposed to be certified for purposes of settlement under Rule 23(b)(3)--the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." FED. R. CIV. P. 23(c)(2)(B).

To satisfy due process, class notice should be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *In re Prudential Sec. Inc. Ltd. Partnerships Litig.*, 164

F.R.D. 362, 368 (S.D.N.Y. 1996) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339

U.S. 306, 314 (1950)), *aff'd*, 107 F.3d 3 (2d Cir. 1996). In the Second Circuit, a settlement notice

must also "fairly apprise the prospective members of the class of the terms of the proposed

settlement and of the options that are open to them in connection with the proceedings." *Visa*

*U.S.A.*, 396 F.3d at 114 (quotation marks omitted).

Accordingly, when the Court ordered notice to the proposed Settlement Class, it directed

Notice be disseminated to the Class beginning on March 1, 2019, and approved the proposed

Direct Mail Notice and Long Form Notice, as well as the comprehensive notice program agreed

to by the parties and proposed by Ms. Finegan. Ruling & Order at 29–30.

The Court finds that Ms. Finegan implemented the Notice program, consistent with the

terms of the Court's Ruling & Order. Indeed, the Notice program's results exceeded expectations

and reached approximately 97% of the Settlement Class, with an average of five contacts each.

This Notice program therefore both satisfied the requirements of Rule 23 of the Federal

Rules of Civil Procedure and due process, and provided the best notice practicable under the

circumstances.

The Court further finds that Defendants, through the Settlement Notice Administrator,

provided notice of the settlement to the appropriate state and federal government officials under

the Class Action Fairness Act, 28 U.S.C. § 1715. Furthermore, the Court has given the

appropriate state and federal government officials the requisite ninety (90) day time period to

comment or object to the Settlement Agreement before entering this Ruling and Order and the

associated Judgment.

### C.  Final Approval of the Terms of the Settlement

"In determining whether a settlement is fair, reasonable, and adequate, the District Court examines the 'negotiating process leading up to the settlement[, *i.e.,* procedural fairness,] as well as the settlement's substantive terms[, *i.e.,* substantive fairness].'" *McReynolds, v. Richards-Cantave*, 588 F.3d 790, 803–04 (2d Cir. 2009) (quoting *D'Amato*, 236 F.3d at 85) (alterations in *McReynolds*).

First, the Court "must review the negotiating process leading up to the settlement for procedural fairness, to ensure that the settlement resulted from an arm's-length, good faith negotiation between experienced and skilled litigators." *Charron v. Wiener*, 731 F.3d 241, 247 (2d Cir. 2013) (citing *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803–04 (2d Cir. 2009); *D'Amato*, 236 F.3d at 85 (2d Cir. 2001)). "A 'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'" *Visa U.S.A.*, 396 F.3d at 116 (quoting MANUAL FOR COMPLEX LITIGATION, THIRD § 30.42 (1995)).

Here, the Court finds that presumption is met.

As the Court noted in its preliminary approval order, "[t]he parties have vigorously litigated this case, and were engaged in extensive, arms-length settlement discussions in this matter and the *Combs* action for more than a year." Ruling & Order at 27. In those negotiations, Plaintiffs were represented by counsel who are qualified and have extensive class action experience. *See supra* at n.4 (detailing experience of Plaintiffs' counsel). "Furthermore, the Court is not aware of any evidence or indicia suggesting that the negotiations were collusive." Ruling & Order at 27.

While the parties did not conduct a period of formal discovery, as Plaintiffs have explained:

> During the course of the negotiations, Class Counsel conducted extensive informal and confirmatory discovery. Toyota produced over 100,000 pages of internal Toyota documents on a rolling basis, which Class Counsel reviewed and analyzed. Class Counsel consulted with their own engineering experts about the technical information in these documents. As part of their informal and confirmatory discovery, Class Counsel also interviewed a Toyota engineer who is knowledgeable about the Sienna vehicles and the Covered Components. In order to evaluate and supplement the discovery received from Toyota, Class Counsel conducted their own contemporaneous investigation of the potential defects of the sliding doors, consulted with their experts, and purchased two exemplar Siennas whose doors were thoroughly inspected by independent automotive engineers. The information Class Counsel obtained during this rigorous investigation allowed them to meaningfully assess Toyota's proposals for addressing the problems with the operations of the Subject Vehicles' sliding doors.

Pls.' Mem. at 9. Plaintiffs therefore have "engaged in the discovery, necessary to effective representation of the class's interests." *Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982), investigating a substantial body of evidence produced by Defendants that allowed them to assess meaningfully both the reasons for the alleged malfunctioning of the doors as well as Defendants' proposed solutions.[5]

---

[5] One recent case, *Elisa W. v. City of New York*, illustrates the absence of "meaningful discovery." In that case, plaintiffs "made no showing that they investigated the particular circumstances of the Named Plaintiff Children, the State's compliance with the Constitution and federal and state law, or the allegations of abuse and systemic deficiencies in the Amended Complaint." *Elisa W. v. City of New York*, No. 15 CV 5273 (LTS)(HBP), 2016 WL 4367969, at *7 (S.D.N.Y. Aug. 12, 2016). The court thus held that "[i]n the absence of any 'meaningful discovery' into the merits of the claims asserted against the settling defendants by the Named Plaintiff Children, the settlement is not entitled to a presumption of procedural fairness." *Id.* at *6 (footnote omitted). Significantly, the court pointedly distinguished an automobile defects case cited by the plaintiffs as evidence that they were entitled to a presumption of procedural fairness, noting that the automobile defects plaintiffs' had—like the Plaintiffs before this Court—"'conducted an investigation prior to commencing the action, retained experts, and engaged in confirmatory discovery . . . .'" *Id.* (quoting *In re Nissan Radiator/Transmission Cooler Litig.*, No. 10 CV 7493 (VB), 2013 WL 4080946, at *5 (S.D.N.Y. May 30, 2013)).

Accordingly, "meaningful" discovery has occurred and the presumption of procedural fairness has been met. *See, e.g.*, *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000) ("[W]hile no formal discovery was conducted in this case, plaintiffs were afforded several opportunities to extensively review records provided by the Austrian Banks . . . . Therefore the Settlement enjoys a presumption of [procedural] fairness."), *aff'd sub nom. D'Amato*, 236 F.3d at 85–86 (rejecting appellants' argument that counsel misrepresented the importance of the Austrian Banks' agreement to provide access to documents, and finding that "the District Court in this case examined the negotiation process with appropriate scrutiny."); *Ferrick v. Spotify USA Inc.*, No. 16-cv-8412 (AJN), 2018 WL 2324076, at *3 (S.D.N.Y. May 22, 2018) (settlement entitled to presumption of procedural fairness where "settlement negotiations included the exchange of tens of millions of rows of Spotify's data and work by experts on both sides to evaluate the settlement value of the case."); *cf. Plummer v. Chem. Bank*, 668 F.2d 654, 658 (2d Cir. 1982) ("Although negotiations in the instant case were conducted by undesignated class representatives without formal pretrial discovery, this, standing alone, did not preclude judicial approval.").

"The court must also evaluate substantive fairness considering the nine *Grinnell* factors set forth in *Detroit v. Grinnell Corp.*: '(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.'" *Id.* (quoting *Detroit v.*

*Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974); citing *McReynolds*, 588 F.3d at 804). "A court need not find that every factor militates in favor of a finding of fairness; rather, a court 'consider[s] the totality of these factors in light of the particular circumstances.'" *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 246 F.R.D. 156, 167 (S.D.N.Y. 2007) (quoting *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004)).

The Court makes the following findings and concludes that the balance of the *Grinnell* factors weighs in favor of approving the Settlement Agreement.

### 1. Complexity, Expense, and Likely Duration of the Litigation

The first *Grinnell* factor requires the Court to consider the complexity, expense and likely duration of the litigation. *Visa U.S.A.*, 396 F.3d at 117. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them" and courts therefore favor class action settlements. *In re Holocaust Litig.*, 80 F. Supp. 2d at 174.

Plaintiffs argue that the litigation "is unquestionably complex." Pls.' Mem. at 18. Plaintiffs note that the Second Amended Complaint stated sixty causes of action, including claims on behalf of twelve statewide classes, as well as multistate and nationwide classes. Absent settlement, Plaintiffs argue that they would have been required to litigate multiple motions to dismiss that were pending in both the *Simerlein* and *Combs* actions and "to conduct full discovery, brief and argue class certification and summary judgment, conduct a trial, and litigate appeals." Pls.' Mem. at 18.

The Court agrees.

As the Court explained in granting preliminary approval, it is likely that "extremely costly litigation would have ensued over the many different state jurisdictions involved here."

Ruling & Order at 28 (citing *Langan*, 897 F.3d at 97). In addition, "the heavy reliance on expert testimony that would have been required to prove liability and damages at trial would have been extremely costly to Plaintiffs." *Id.* Class Counsel has already spent several thousand hours collectively in litigating the *Simerlein* and *Combs* actions. Pls.' Mem. at 18. Those costs "will only escalate as a result of discovery proceedings, motion practice, trials, and likely appeals." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y.), *aff'd.*, 117 F.3d 721 (2d Cir. 1997) (per curiam).

Accordingly, the first *Grinnell* factor supports approval of the settlement.

### 2. Reaction of the Class to the Settlement

"One of the factors most courts consider is the reaction of the absent class members, specifically the quality and quantity of any objections and the quantity of class members who opt out." 4 NEWBERG ON CLASS ACTIONS § 13:54 (5th ed.). Courts may consider two reactions: opt-outs and objections. *Id.* "If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement." *Visa U.S.A.*, 396 F.3d at 118 (quoting 4 NEWBERG § 11.41); *see also In re AOL Time Warner*, No. MDL 1500, 02 Civ. 5575 (SWK), 2006 WL 903236, at *9 (S.D.N.Y. Apr. 6, 2006) ("The reaction of the class is generally gauged by reference to the extent of objection to the settlement.").

Here, there were only two objections to the settlement—both of which have since been withdrawn—and only sixty-eight of the 1,299,946 Class Members have opted out. *See* Plaintiffs' Notice of Supplemental Information, dated June 3, 2019, ECF No. 133; Supplemental Declaration of Jeanne C. Finegan, APR, dated May 23, 2019, ECF No. 128. This reaction strongly supports approval. *See Visa U.S.A.*, 396 F.3d at 118 (noting eighteen objections out of five million individuals notified of settlement and stating that "[i]f only a small number of

objections are received, that fact can be viewed as indicative of the adequacy of the settlement.") (quoting 4 NEWBERG § 11.41); *see also AOL Time Warner*, 2006 WL 903236, at *10 (finding an opt-out rate of less than 0.2% of 4.7 million class members favored settlement);

Accordingly, the second *Grinnell* factor supports approval of the settlement.

### 3. The Stage of the Proceedings and the Amount of Discovery Completed

"The stage of the proceedings and the amount of discovery completed at the time a Settlement is reached is relevant to the parties' knowledge of the strengths and weaknesses of the various claims in the case, and consequently affects the determination of the settlement's fairness." *In re PaineWebber*, 171 F.R.D. at 126 (citing *In re Milken & Assocs. Sec. Litig.*, 150 F.R.D. 46, 55–56 (S.D.N.Y. 1993)). However, "[t]o approve a proposed settlement, the Court need not find that the parties have engaged in extensive discovery." *In re Holocaust Litig.*, 80 F. Supp. 2d at 176 (citing *Plummer v. Chem. Bank*, 668 F.2d 654, 658 (2d Cir. 1982)). "Instead, it is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to 'intelligently make . . . an appraisal' of the Settlement." *Id.* (quoting *Plummer*, 668 F.2d at 660; citing *Klein v. PDG Remediation, Inc.*, No. 95 Civ. 4954, 1999 WL 38179, at *2 (S.D.N.Y. Jan. 28, 1999)); *see also AOL Time Warner*, 2006 WL 903236, at *10 ("The relevant inquiry for this factor is whether the plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement.").

While Class Counsel only completed informal and confirmatory discovery and had not yet adjudicated pending motions to dismiss in both the *Simerlein* and *Combs* actions, Plaintiffs' investigation resulted in the production of more than 100,000 documents from Defendants, which were reviewed by numerous experts whom Plaintiffs would likely have deposed as expert witnesses had the litigation continued. Thus, Plaintiffs have gained a sufficient understanding of

their case such that they have had an opportunity to evaluate the strengths and weaknesses of their claims as well as the adequacy of settlement. *See D'Amato*, 236 F.3d at 87 ("[T]he district court properly recognized that, although no formal discovery had taken place, the parties had engaged in an extensive exchange of documents and other information. Thus, the 'stage of proceedings' factor also weighed in favor of settlement approval.").

Accordingly, the Court finds the third *Grinnell* factor weighs in favor of approval.

### 4. The Risks of Establishing Liability and Damages

"One of the Court's central inquiries when appraising a settlement is the likelihood that the class would prevail at trial in the face of the risks presented by further litigation." *AOL Time Warner*, 2006 WL 903236, at *11. In determining the risks of establishing liability and damages, courts need not "adjudicate the disputed issues or decide unsettled questions; rather, [courts] need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *In re Global Crossing.*, 225 F.R.D. at 459 (citing *In re Holocaust Litig.*, 80 F. Supp. 2d at 177).

Plaintiffs argue that if they were to continue prosecuting their claims, they would "have to face several substantial hurdles with respect to establishing liability and damages, at great cost and risk to Plaintiffs and the Class." Pls.' Mem. at 21. These hurdles include overcoming motions to dismiss filed by Defendants "based on an array of jurisdictional and merits issues." *Id.*

Plaintiffs also contend that there are significant factual issues with respect to Defendants' knowledge of any defects before Plaintiffs' purchase of the Toyota Siennas, as well as difficult issues regarding the measurement of damages on a classwide basis. *Id.* at 21–22. Finally,

Plaintiffs argue that "further proceedings would necessarily entail a battle of the experts." *Id.* at 22.

The Court recognizes the merit to these arguments, as it did in granting preliminary approval. *See* Ruling && Order at 28 (noting that "there were significant litigation risks involved in proceeding with this action."). Regardless of the merits of the motion to dismiss that was pending before this Court before the execution of the Settlement Agreement, "[l]itigation inherently involves risks." *In re PaineWebber*, 171 F.R.D. at 126. Moreover, as the Court noted in granting preliminary approval, "heavy reliance on expert testimony 'often increases the risk that a jury may not find liability or would limit damages.'" Ruling & Order at 28–29 (quoting *Edwards v. N.A. Power & Gas, LLC*, No. 3:14-cv-1714 (VAB), 2018 WL 3715273, at *14 (D. Conn. Aug. 3, 2018)).

Accordingly, the fourth and fifth *Grinnell* factors weigh in favor of approval.

### 5. The Risks of Maintaining the Class Action Through Trial

"One of the factors most courts consider is how certain the court is that the class certification requirements are met and maintainable." 4 NEWBERG § 13:51. This consideration is separate, although related, to the Court's determination that the class should be certified for settlement purposes. *Id.*

Plaintiffs argue that "securing certification of a nationwide class or statewide classes is far from certain," noting that proving a viable damages model "has proved an insurmountable hurdle for many proposed consumer classes." Pls.' Mem. at 22 (collecting cases). Plaintiffs also argue that Defendants "can be expected to argue that bringing an array of state law claims may present serious manageability issues or irreconcilable conflicts between the laws of different states." *Id.* at 22–23. Plaintiffs note the "many decisions denying class certification in automobile

defect cases" underscore the "risks of securing and maintaining class status" were this action to proceed through trial. *Id.* at 23 (collecting cases).

The Court recognizes the merit to these arguments. While Plaintiffs would no doubt vigorously contest Defendnats' arguments on this front, the Court agrees with Plaintiffs that they pose significant risks.

Accordingly, the sixth *Grinnell* factor weighs in favor of approval.

### 6. Defendants' Ability to Withstand a Greater Judgment

Plaintiffs do not argue that Defendants would not be able to withstand a greater judgment. Instead, they contend that "where the 'other Grinnell factors weigh heavily in favor of settlement, the Court may still approve of the settlement as being fair, reasonable, and adequate.'" Pls.' Mem. at 23 (quoting *Kemp-DeLisser v. Saint Francis Hosp. & Med. Ctr.*, No. 15-cv-1113 (VAB), 2016 WL 10033380, at *10 (D. Conn. Nov. 3, 2016)).

The Court agrees that this factor "standing alone, does not suggest that the settlement is unfair," especially where the "other *Grinnell* factors weigh heavily in favor of settlement[.]" *D'Amato*, 236 F.3d at 86 (2d Cir. 2001). Therefore, given the application of the other *Grinnell* factors in this case, the Court need not determine whether Defendants could have withstood a larger judgment, and may still approve the settlement agreement. *Accord Kemp-DeLisser*, 2016 WL 6542707, at *10 ("Thus, even if the Defendants here could afford to pay more than the $107 million Settlement Amount, this does not prevent the Court from approving this Settlement as fair and reasonable.").

Accordingly, this factor also weighs in favor of approval.

### 7. The Range of Reasonableness of the Settlement

The final *Grinnell* factors require examination of the "range of reasonableness" of the settlement "in light of the best possible recovery" and "in light of all the attendant risks of litigation." *Visa U.S.A.*, 396 F.3d at 117. Courts should "consider and weigh the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable." *Grinnell*, 495 F.2d at 462.

The parties have both represented that the settlement will provide Class Members with substantial benefits. Plaintiffs argue that they have been provided "relief specifically sought by the Plaintiffs in their complaints" in the form of both prospective coverage for repairs and reimbursement for past repairs. Pls.' Mem. at 24–26; *see also* Defs.' Mem. at 28–29 ("Toyota agreed to provide (1) a Customer Confidence Program that will provide prospective coverage for repairs to certain door parts that are related to internal functional concerns of those parts that impede the closing and opening operations of the sliding door in manual and power modes, a Loaner Vehicle, if requested, to eligible Class Members whose Subject Vehicles are undergoing a repair pursuant to the Customer Confidence Program, as well as one Sienna Sliding Door Functional Inspection at no cost to Class Members within a year of the Court finally approving the proposed Settlement; and (2) full reimbursement to Class Members who previously paid for reasonable out-of-pocket expenses incurred to repair a condition that is covered by the Customer Confidence Program, is not otherwise reimbursed, and is incurred prior to the Initial Notice Date. *See* Settlement Agreement § III. These are substantial benefits being provided to the Class.").

Moreover, while the parties have not agreed on a monetary value of the proposed Settlement, Plaintiffs have submitted a detailed declaration from a forensic accounting expert

who estimates the total value of the relief at $33.6 million.[6] *See* Olsen Decl. ¶ 20. While a monetary value may not be necessary to evaluate the propriety of this relief, *see* Pls.' Mem. at 25 (explaining that "while automobile repair and reimbursement-centered settlements do not provide for monetary relief, they still provide Class members with much of the relief they seek and merit approval.") (citation and internal quotation marks omitted), this valuation is instructive, indicating that the obtained relief is significant.[7] *See* Pls.' Mem. at 24 (noting that in *Grinnell*, the Second Circuit stated that there is no reason "why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery.") (quoting *Grinnell*, 495 F.2d at 455 n.2).

Accordingly, the eighth and ninth *Grinnell* factors weigh in favor of approval.

As a result, the *Grinnell* factors—taken as a whole—support finding the settlement substantively fair, reasonable, and adequate.

The Court therefore approves the Settlement Agreement.

### D. Attorney's Fees

Under Federal Rule of Civil Procedure 23(h), "the court may award reasonable attorney's fees . . . that are authorized by law or by the parties' agreement." FED. R. CIV. P. 23(h).

Courts in the Second Circuit use one of two different methods to analyze the reasonableness of attorney's fees awards in class actions that result in a common fund settlement. *Goldberger v. Integrated Res.*, 209 F.3d 43, 50 (2d Cir. 2000) ("In sum, we hold that both the lodestar and the percentage of the fund methods are available to district judges in

---

[6] Mr. Olsen calculated the cost of four specific benefits of the Settlement as follows: (1) the functional inspections ($7.9 million); (2) the extension of the warranty on Sienna door parts ($22.3 million); (3) the provision of loaner vehicles during service lasting more than four hours (immaterial); (4) the reimbursement of past repair expenses ($3.4 million). *See* Olsen Decl. ¶¶ 8–19.

[7] At the final fairness hearing, Defendants stated they had no reason to believe that this estimate—which Plaintiffs describe as being based on "very conservative assumptions," Pls.' Reply at 3—was inaccurate.

calculating attorneys' fees in common fund cases."); *see also McDaniel v. Cty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010) ("[I]t remains the law in this Circuit that courts may award attorneys' fees in common fund cases under either the 'lodestar' method or the 'percentage of the fund' method.") (internal quotation marks omitted). The first method, the "lodestar method," begins with the multiplication of "the reasonable hours billed by a reasonable hourly rate." *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 347–48 (S.D.N.Y. 2014). The district court may then "adjust the multiplier based on other factors such as the risk of the litigation or the performance of the attorneys." *Id.* at 348. The second method, the "percentage of the fund" method, sets a fee that is "a reasonable percentage of the total value of the settlement fund created for the class." *Id.* The general trend in this Circuit favors using the percentage method in common fund cases. *See Visa, U.S.A.*, 396 F.3d at 121 ("The trend in this Circuit is toward the percentage method[.]") (citations omitted).

In claims-made settlements—where "the extent of the defendant's liability is wholly dependent upon the number of claims [filed by class members], the cost of administering the settlement and such fees and expenses as are assessed by the Court," *Parker v. Time Warner*, 631 F. Supp. 2d 242, 266 (E.D.N.Y 2009), courts are more divided as to the best approach. "[A] number of courts have concluded that have concluded that utilizing the percentage method would provide plaintiffs' counsel with a percentage of a 'hypothetical recovery,' and have instead opted to use the lodestar method, finding that it 'better accommodates the policy concerns in settling class actions on a claims-made basis.'" *McLaughlin v. IDT Energy*, No. 14 CV 4107 (ENV)(RML), 2018 WL 3642627, at *15 (E.D.N.Y. Jul. 30, 2018) (quoting *Bodon v. Domino's Pizza*, No. 09 CV 2941, 2015 WL 3889577, at *5 (E.D.N.Y. Jun. 4, 2015); citing *Parker*, 631 F. Supp. 2d at 267). "Other courts, however, have continued to use the percentage method." *Id.*

(citing *Zink v. First Niagara Bank, N.A.*, No. 13-CV-1076 (JJM), 2016 WL 7473278, at *8 (W.D.N.Y. Dec. 29, 2016)).

The Second Circuit has also recognized the use of the lodestar "as a baseline even if the percentage method is eventually chosen" and "encourage[d] the practice of requiring documentation of hours as a 'cross check' on the reasonableness of the requested percentage." *Goldberger*, 209 F.3d at 50 (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 820 (3d Cir. 1995)); *see also Colgate-Palmolive*, 36 F. Supp. 3d at 353 ("The lodestar cross-check works best as a sanity check to ensure that an otherwise reasonable percentage fee would not lead to a windfall."). Accordingly, many courts adopt this combined approach. *See, e.g.*, *Ferrick*, 2018 WL 2324076, at *10 ("When the lodestar method is applied here to cross-check the reasonableness of the requested percentage, it becomes apparent that the requested award is too high."); *Kemp-DeLisser*, 2016 WL 6542707, at *17 ("That the proposed fee award represents a 2.77 multiplier compared to Class Counsel's lodestar supports the reasonableness of the award.").

"Irrespective of which method is used, the '*Goldberger* factors' ultimately determine the reasonableness" of an attorney's fee award in a class action settlement. *Visa, U.S.A.*, 396 F.3d at 121. The six factors include: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Id.* (citing *Goldberger*, 209 F.3d at 50).

Here, Plaintiffs seek an award of $6,500,000 in attorneys' fees. Pls.' Fee Mem. at 1. The Long Form Notice informed Class Members that Class Counsel "will ask the Court for an award

of attorneys' fees in the amount of $6,500,000.00[.]" *Id.* at 7. Defendants agreed not to take a position on this motion.

This Court has previously recognized that "[w]hen the parties agree to a fee that is to be paid separately by defendants rather than one that comes from, and therefore reduces, a settlement fund available to the class, 'the Court's fiduciary role in overseeing the award is greatly reduced' because 'the danger of conflicts of interest between attorneys and class members is diminished.' *Kemp-DeLisser*, 2016 WL 6542707, at *14 (quoting *Jermyn v. Best Buy Stores, L.P.*, No. 08-CIV-214 CM, 2012 WL 2505644, at *9 (S.D.N.Y. June 27, 2012)). The Court recognized there that it must still "assess the reasonableness of the fee award" where the fee does not come from a common fund, because "a defendant is interested only in disposing of the total claim asserted against it, and not in the allocation between the class payment and the attorneys' fees." *Id.* (internal quotation marks omitted); *accord In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06 Civ. 5173 (RPP), 2008 WL 1956267, at *15 (S.D.N.Y. May 1, 2008).

This settlement has not resulted in a common fund. Plaintiffs have instead provided an estimate of the value of the settlement, based on the analysis of Mr. Olsen, a forensic accounting expert, who has analyzed the components of the settlement and estimated their value to be $33.6 million. *See supra* § III.C.7. In addition to this estimated value of the settlement, unlike many claims-made settlements that arbitrarily cut off class members' recovery, the Settlement Agreement here provides that Class Members may obtain prospective benefits under the Customer Confidence Program for several components for ten years from the date of first use of the vehicle, several years, as well as reimbursement for past repair expenses within sixty days of approval.

Thus, while the settlement "does not consist of a single, predetermined, common fund from which a percentage-of-recovery can be easily calculated," *Skeen v. BMW of N. Am.*, No. 2:13-cv-1531-WHW-CLW, 2016 WL 4033969, at *18 (D.N.J. Jul. 26, 2016), the estimate provided by Mr. Olsen gives the Court a clear denominator against which the fees can be assessed in in applying the percentage method. *See Sheppard v. Consol. Edison Co. of N.Y., Inc.*, No. 94-CV-0403 (JG), 2002 WL 2003206, at *7, 5 (E.D.N.Y. Aug. 1, 2002) (applying percentage method to accept proposed fee award where total settlement consisted of both monetary relief and an "estimated" $5 million in non-monetary, injunctive relief," "thereby bringing the total calculable costs" to approximately $13 million). Moreover, based on a review of Mr. Olsen's written submission as well as the Court's follow-up inquiries at the June 4th fairness hearing, Mr. Olsen's estimates of the settlement's value, grounded in his expertise in forensic accounting, are sufficiently credible.

As a result, based on the analysis conducted by Mr. Olsen, "Class Counsel's requested fee of $6,500,000 represents just 16.2 percent of the total settlement." Pls.' Reply. at 3. This percentage puts the requested fee well within the range of awards regularly awarded within the Second Circuit. *See Edwards*, 2018 WL 3715273, at *15 (collecting cases); *Fleisher v. Phoenix Life Ins. Co.*, Nos. 11-cv-8405 (CM) & 14-cv-8714 (CM), 2015 WL 10847814, at *16 & n.11 (S.D.N.Y. Sept. 9, 2015) (collecting cases indicating fee awards of approximately 30–33% are routinely awarded in this Circuit).

Accordingly, under the percentage method, the proposed award for attorney's fees is appropriate.

Plaintiffs' lodestar calculations yield an award of $3,863,845.25. *See* Pls.' Fee Mem. at 19 n.6 (table summarizing lodestar by firm and total lodestar calculation). The proposed fee

award of $6,5000,000 thus represents a 1.68 multiplier compared to the lodestar. *Id.* at 19. That is firmly at the low end of the range of multipliers regularly approved by district courts in the Second Circuit. *See, e.g.*, *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 623–24 (S.D.N.Y. 2012) ("Courts regularly award lodestar multipliers from 2 to 6 times lodestar.") (collecting cases).

Accordingly, a review of the lodestar method confirms that the proposed fee award would not represent an improper windfall.

The Court also has assessed "whether the proposed fee award is reasonable under the *Goldberger* factors." *See McLaughlin*, 2018 WL 3642627, at *20 (citations omitted); *Fleisher*, 2015 WL 10847814, at *19. Here, the *Goldberger* factors support the reasonableness of the fee in this matter.

The first *Goldberger* factor considers the "time and labor expended by counsel." *Goldberger*, 209 F.3d at 50. Class Counsel have litigated these actions for nearly two years in both Connecticut and California, spending over 6,000 hours on them. Those efforts included many months of informal and confirmatory discovery, as well as many months of settlement negotiations.

The second Goldberger factor considers "the magnitude and complexities of the litigation." *Goldberger*, 209 F.3d at 50. As discussed above with respect to the *Grinnell* factors, this case was complex in both scale and law, sixty causes of action, as it included claims on behalf of twelve statewide classes, as well as multistate and nationwide classes.

The third *Goldberger* factor considers "the risk of the litigation." *Goldberger*, 209 F.3d at 50. The Second Circuit recognizes that the risk of success is "perhaps the foremost factor" to be considered in determining a fee award in class actions. *Id.* at 54. After all, "despite the most

vigorous and competent of efforts, success is never guaranteed." *Grinnell*, 495 F.2d at 471. As discussed above with respect to the *Grinnell* factors, this case presented considerable risks, given the heavy reliance on expert testimony necessary at the liability stage.

The fourth *Goldberger* factor considers "the quality of representation" by Class Counsel. *Goldberger*, 209 F.3d at 50. As discussed above, both the very substantial relief Plaintiffs achieved and the significant experience of Class Counsel indicate that Plaintiffs received high-quality representation.

The fifth *Goldberger* factor considers "the requested fee in relation to the settlement." *Goldberger*, 209 F.3d at 50. While the fee award in this case will be paid by Defendants and will not impact the total amount recovered through the rest of the settlement, a comparison of the requested attorneys' fee award and the total value of the settlement, as discussed above, shows that the fee represents 16.2% of the estimated value of the settlement—a percentage in line with that awarded in other cases.

The sixth *Goldberger* factor analyzes "public policy considerations." *Goldberger*, 209 F.3d at 50. Here, the substantial relief achieved by Plaintiffs promotes important consumer protection goals: namely, ensuring relief for Toyota Sienna drivers after years of complaints to the NTSB about alleged issues with the Toyota Sienna. The fee award here will provide attorneys "'sufficient incentive'" to bring further class actions "'that serve the public interest'" and aim to settle cases in an efficient manner that delivers full relief. *Kemp-DeLisser*, 2016 WL 6542707, at *17 (quoting *Colgate-Palmolive*, 36 F. Supp. 3d at 352).

For these reasons, all six *Goldberger* factors weigh in favor of approving the attorney's fee award.

Accordingly, the Court awards Plaintiffs $6,500,000 in attorney's fees.

### E. Costs

Under Federal Rule of Civil Procedure 23(h), the court may also award "nontaxable costs that are authorized by law or by the parties' agreement." FED. R. CIV. P. 23(h). "Courts may reimburse counsel for expenses reasonably and necessarily incurred in litigating a class action." *Kemp-DeLisser*, 2016 WL 6542707, at *18.

Plaintiffs seek reimbursement for $370,972.29 in litigation costs. *See* Pls.' Fee Mem. at 20 n.8 (table summarizing expenses by firm and total expenses). These fees include "standard litigation costs and expenses such as expert, mediation and travel expenses, as well as court costs," all of which Plaintiffs argue were "reasonable and necessary to protect the interests of the Class in this litigation." *Id.* at 20, 2.

The Long Form Notice informed Class Members that Class Counsel "will ask the Court for . . . reimbursement of their out-of-pocket costs and expenses in an amount not to exceed $500,000.00."

Having reviewed the breakdowns of litigation costs submitted by Class Counsel, *see* Basar Decl. ¶ 19; Miles Decl. ¶ 9; Levitt Decl. ¶ 10; Slossberg Decl. ¶ 10; Long Decl. ¶¶ 10–11; Dirks Decl. ¶ 11, the Court agrees with Plaintiffs that the costs here were reasonably and necessarily incurred in litigating this class action.

Accordingly, the Court awards Plaintiffs $370,972.29 in costs.

### F. Service Awards

Service awards (also known as "incentive awards") to representative plaintiffs in class action cases "compensate the named plaintiff for any personal risk incurred by the individual or any additional effort expended by the individual for the benefit of the lawsuit." *Dornberger v. Metro. Life Ins. Co.*, 203 F.R.D. 118, 124 (S.D.N.Y. 2001). These awards are designed to

reimburse representative plaintiffs, who "take on a variety of risks and tasks when they commence representative actions, such as complying with discovery requests and often must appear as witnesses in the action." In re *Marsh ERISA Litig.*, 265 F.R.D. 128, 150 (S.D.N.Y. 2010).

"Courts in this Circuit frequently approve incentive awards of various amounts in many types of class actions, with determinations of whether the proposed amounts are appropriate being based, somewhat, on assessments of the burdens a representative plaintiff took on by participating in the case." *Kemp-DeLisser*, 2016 WL 6542707, at *18 (collecting cases).

Here, Plaintiffs seek service awards of $2,500 per Class Representative, and argue that the "favorable result achieved by Class Counsel in this case would likely not have been possible without the assistance of the Class Representatives," who remain "fully informed of the details of the litigation, and provided invaluable input, information, and assistance at every stage." Pls.' Fee Mem. at 21. The Long Form Notice informed the Settlement Class that Plaintiffs would be seeking these service awards.

The $2,500 service awards sought by Plaintiffs fall near the low end of the typical service awards approved by courts in this Circuit. *McLaughlin*, 2018 WL 3642627, at *6 ("Courts in this circuit regularly approve service awards, ranging from as low as $1,000 to as high as $25,000, in consumer class action settlements; generally, however, awards between $1,000 and $10,000 are more typical.") (collecting cases).

Accordingly, the Court finds that the service awards merit approval, and awards Plaintiffs service awards of $2,500 per Class Representative.

## IV. CONCLUSION

For the reasons explained above, the Court **GRANTS** Plaintiffs' motion for final

approval and class certification, approves the proposed Settlement Agreement, **GRANTS**

Plaintiffs' motion for attorney's fees, costs, and service awards, and **ORDERS** as follows.

(1)     For settlement purposes, the Settlement Class is certified under Federal Rules of Civil

Procedure 23(c) and 23(e). The Settlement Class consists of:

> all persons, entities or organizations who, at any time as of the entry
> of the March 1, 2019, own or owned, purchase(d) or lease(d) 2011
> through 2018 model year Toyota Sienna vehicles distributed for sale
> or lease in any of the fifty States, the District of Columbia, Puerto
> Rico, and all other United States territories and/or possessions.
> Excluded from the Settlement Class are: (a) Toyota, its officers,
> directors and employees; its affiliates and affiliates' officers,
> directors, and employees; its distributors and distributors' officers,
> directors, and employees; and Toyota Dealers and Toyota Dealers'
> officers and directors;[8] (b) Plaintiffs' counsel; (c) judicial officers
> and their immediate family members and associated court staff
> assigned to this case; and (d) persons or entities who or which timely
> and properly excluded themselves from the Settlement Class as
> provided in the Settlement Agreement.

(2)     Only the following sixty-eight individuals, entities, or organizations identified by the

Settlement Notice Administrator as having opted-out of the Settlement Class, *see* Ex. A

to Supp. Finegan Decl, have timely and properly excluded themselves from the

Settlement Class and, therefore, are not members of the Settlement Class, and are not

bound by the terms of the Settlement Agreement, this Ruling and Order, or the associated

Judgment:

| | | | |
|---|---|---|---|
| 1. | Emily J. Sinclair | 9. | James Austin Hale |
| 2. | Jody Lynn Sanchez | 10. | Francis W. Souza, Jr |
| 3. | Carol Colquitt Morrow | 11. | Joyce Mills Brooks |
| 4. | Judy L. Ruggiero | 12. | Joseph A. Braun |
| 5. | Alison Lee Carpenter | 13. | Angel A. Vazquez-Hernandez |
| 6. | Joanne Young | 14. | Amratlal R. Patel |
| 7. | Donna Lantz | 15. | Julie Olsen |
| 8. | Isaac H. Knaus | 16. | Joseph Patrick Fields |

---

[8] The terms "Toyota" and "Toyota Dealers" have the meaning defined in the Settlement Agreement. *See* Agrmt.
¶¶ II.PP & II.QQ.

17. Catherine A. Jones
18. David B. Nurczyk
19. Harry L. Carney
20. Jitendra Keshavlal Patel
21. Aziz S. Hussain
22. Charles P. Pierce
23. Allycia M. Soule
24. Barry W. Thomas
25. Robin Linke Wilson
26. Michelle R. Vulgamott
27. Peggy A. Baker
28. Richard James Szegda
29. Mary Ann K. Gast
30. Michael Huber
31. Kimberly A. Hunter-Gallo
32. Michelle Braun
33. Louis Don Teets
34. Melanie Dawn Saalsaa
35. Weiming Ouyang
36. William Elder
37. Richard Joseph Mcgannon
38. Richard A. Baker
39. Karen Bradshaw Lyle
40. Odette Ferrer
41. Kenneth Ray Braley
42. Walter Lee Hinshaw Jr
43. Roy H. Shealy
44. Vaughn Durrell Martin
45. William Patrick Holland
46. Linda S. Martinez
47. Rex J. Lee
48. Craig A. Gill
49. Richard Arthur Schmidt
50. Andrew Rittenhouse
51. Jiaqi He
52. Mark J. Schoening
53. Nora Freiwald
54. Yu J. Zhen
55. Maria P. F. Gallardo
56. Anand Kumar Mannem
57. James L. Hoover
58. Gregory W. Stockdale
59. Amos Seth Miller
60. Kelli Ann Divito
61. Neil L. Bowen
62. Howard H. Cross
63. Traci Crockett Hanks
64. Chateau
65. Chateau Pleasant Hill Assoc LP
66. Carlton Plaza Forever Sacramento LP
67. Carlton Plaza Forever San Jose LP
68. Edwards Center

(3)     The prior appointment of Ned Simerlein, James Eckhoff, Maricel Lopez, Craig Kaiser, John F. Prendergast, Raymond Alvarez, Rosario Alvarez, Karen Eason, Jennifer Sowers, Jennifer Franklin, Jordan Amrani, Crystal Gillespie, Melissa Stalker, Dillen Steeby, Paula McMillin, Joseph C. Harp Jr., James Tinney, and Melissa Jugo Tinney as Class Representatives is confirmed.

(4)     The prior appointment of W. Daniel "Dee" Miles III of Beasley, Allen, Crow, Methvin, Portis & Miles, P.C., Adam Levitt of DiCello Levitt & Casey LLC, and Demet Basar of Wolf Haldenstein Adler Freeman & Herz LLP as Class Counsel is confirmed.

(5)     Class Representatives and Defendants are directed to implement and consummate the Settlement according to the terms and provisions of the Settlement Agreement, and are authorized to agree to and adopt such amendments and modifications to the Settlement Agreement as: (i) shall be consistent in all material respects with this Ruling and Order, and (ii) do not limit the rights of the Settlement Class.

(6)     All claims asserted against Toyota in the Action are dismissed with prejudice on the merits and without costs to any party, except as otherwise provided in this Ruling and Order, the associated Judgment, or in the Settlement Agreement. The parties are to file a stipulation of dismissal with prejudice or a substantial equivalent in the *Combs* action, under the terms of the Settlement Agreement.

(7)     As of the entry of this Ruling and Order and the associated Judgment, the Class Representatives, and each member of the Settlement Class, shall be deemed to have fully, finally, and forever released, relinquished, acquitted, and discharged the Released Parties from any and all claims, demands, suits, petitions, liabilities, causes of action, rights, and damages of any kind and/or type regarding the subject matter of the Action and the Related Action, according to the terms of Section VII.B of the Settlement Agreement, including, but not limited to, compensatory, exemplary, punitive, expert and/or attorneys' fees or by multipliers, whether past, present, or future, mature, or not yet mature, known or unknown, suspected or unsuspected, contingent or non-contingent, derivative or direct, asserted or un-asserted, whether based on federal, state or local law, statute, ordinance, regulation, code, contract, common law, violations of any state's deceptive, unlawful, or unfair business or trade practices, false, misleading or fraudulent advertising, consumer fraud or consumer protection statutes, any breaches of express, implied or any other

warranties, RICO, or the Magnuson-Moss Warranty Act, or any other source, or any claim of any kind related arising from, related to, connected with, and/or in any way involving the Action, the Related Action, the Subject Vehicles' sliding doors and/or associated parts that are, or could have been, defined, alleged or described in the Complaint, the Action, the Related Action or any amendments of the Action or the Related Action. Notwithstanding the foregoing, Class Representatives and Class Members are not releasing claims for personal injury, wrongful death or actual physical property damage arising from an accident involving a Subject Vehicle.

(8)    Notwithstanding the foregoing, Class Representatives and/or Class Member shall hold Released Parties harmless for all Released Claims that may be asserted by another legal or natural persons (including but not limited to legal guardians and estate administrators) who claim by, through, or under that Class Representative or Class Member.

(9)    By not excluding themselves from the Action and the Related Action and to the fullest extent they may lawfully waive such rights, all Class Representatives are deemed to acknowledge and waive Section 1542 of the Civil Code of the State of California and any law of any state or territory that is equivalent to Section 1542.

(10)    The Settlement Agreement is binding on all Class Members, excluding those who opted out of the class and are listed in this Ruling and Order, *see supra* at § IV, ¶ (2), and it is to be preclusive in the Action.

(11)    The Settlement Agreement shall be the exclusive remedy for all claims released in the Settlement Agreement for all Class Members, excluding those who opted out of the class and are listed in this Ruling and Order, *see supra* at § IV, ¶ (2).

(12)    The decisions of the Settlement Claims Administrator relating to the review, processing,

determination and payment of claims submitted under the Settlement Agreement are final and not appealable.

(13)     All Class Representatives, class members, and their representatives are permanently enjoined from challenging in any action or proceeding any matter covered by this Settlement Agreement, making permanent all terms of the injunction outlined in the Court's January 14, 2019 Ruling and Order, except that the only challenges that are now permitted (other than by Class Representatives) are timely proceedings in this Court before the Court's Judgment becoming final and appealable, as well as timely proceedings directly appealing this decision. Accordingly, all Class Representatives, Class Members and their representatives are hereby permanently barred and enjoined from, either directly, through their representatives, or in any other capacity instituting, commencing, filing, maintaining, continuing or prosecuting against any of the Released Parties (as that term is defined in the Settlement Agreement) any action or proceeding in any court or tribunal asserting any of the matters, claims or causes of action described. In addition, all Class Representatives, Class Members and all persons in active concert or participation with Class Members are permanently barred and enjoined from organizing Class Members who have not been excluded from the Class into a separate class for purposes of pursuing, as a purported class action, any lawsuit based on or relating to the claims and causes of action in the complaint in the Action or Related Action, or the facts and circumstances relating thereto or the release in the Settlement Agreement.

This permanent bar and injunction is necessary to protect and effectuate the Settlement Agreement, this Ruling and Order, the associated Judgment, and this Court's authority to effectuate the Settlement Agreement, and is ordered in aid of this Court's jurisdiction and

to protect its Judgment.

(14)     Plaintiffs are awarded $6,500,000 in attorney's fees, $370,972.29 in litigation costs, and
service awards of $2,500 per Class Representative, to be allocated consistent with
Plaintiffs' motion for attorney's fees, costs, and service awards.

(15)     Without affecting the finality of this Ruling and Order or the associated Judgment, the
Court retains continuing and exclusive jurisdiction over the Action and all matters
relating to the administration, consummation, enforcement and interpretation of the
Settlement Agreement, this Ruling and Order, and the associated Judgmt, to protect
and effectuate this Ruling and Order and the associated Judgment, and for any other
necessary purpose. The parties, the Class Representatives, and all Class Members,
excluding those who opted out of the class and are listed in this Ruling and Order, *see
supra* at § IV, ¶ (2) are hereby deemed to have irrevocably submitted to the exclusive
jurisdiction of this Court, for the purpose of any suit, action, proceeding or dispute arising
out of or relating to the Settlement Agreement or the applicability of the Settlement
Agreement, including the exhibits thereto, and only for such purposes.

(16)     In the event that the Final Effective Date[9] does not occur, certification of the Class shall
be automatically vacated and this Ruling and Order, the associated Judgment, and other
orders entered in connection with the Settlement Agreement and releases delivered in
connection with the Settlement Agreement, shall be vacated and rendered null and void
as provided by the Settlement Agreement.

(17)     Without further order of the Court, the Parties may agree to reasonably necessary
extensions of time to carry out any of the provisions of the Settlement Agreement.

---

[9] The term "Final Effective Date" has the meaning defined in the Settlement Agreement. *See* Agrmt. ¶ II.S.

Likewise, the Parties may, without further order of the Court, agree to and adopt such amendments to the Settlement Agreement (including exhibits) as are consistent with this Ruling and Order and the associated Judgment, and do not limit the rights of Class Members under the Settlement Agreement.

(18)   Neither this Ruling and Order, the associated Judgment, nor any document related to the Settlement Agreement, is or shall be construed as an admission by the Parties. Neither the Settlement Agreement (or its exhibits), this Ruling and Order, the associated Judgment, or any document related to the Settlement Agreement shall be offered in any proceeding as evidence against any of the Parties of any fact or legal claim; provided, however, that Toyota and the Released Parties may file any and all such documents in support of any defense that the Settlement Agreement, this Ruling and Order, the associated Judgment, and any other related document is binding on and shall have res judicata, collateral estoppel, and/or preclusive effect in any pending or future lawsuit by any person or entity who is subject to the release described above asserting a released claim against any of the Released Parties.

(19)   A copy of this Ruling and Order and the associated Judgment shall be filed in, and applies to, the *Combs* action in the Central District of California.

The Clerk of the Court is respectfully directed to enter judgment, consistent with this Ruling and Order, and to close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 10th day of June, 2019.

/s/ Victor A. Bolden
Victor A. Bolden
United States District Judge